## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
JOANNE WOLFF, Individually      :
and as Class representative     :
on behalf of others Similarly   :     CIVIL ACTION
Situated,                       :
                                :     No.  4:19-cv-01596-MWB
     Plaintiff,                 :
                                :
     v.                         :
                                :
AETNA LIFE INSURANCE COMPANY    :
and THE RAWLINGS COMPANY, LLC,  :
                                :
     Defendants                 :
                                :
```
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### PARTIES

1. The plaintiff, JOANNE WOLFF, is an adult individual, and a citizen of Pennsylvania.

2. The defendant, AETNA LIFE INSURANCE COMPANY ("AETNA"), is a citizen of the State of Connecticut and is authorized to, and actually conducts, business in the Commonwealth of Pennsylvania. The defendant, THE RAWLINGS COMPANY, LLC ("RAWLINGS"), is a citizen of the State of Kentucky and is authorized to, and actually conducts, business in the Commonwealth of Pennsylvania.

3. The defendant, AETNA, regularly and routinely conducts business in the Commonwealth of Pennsylvania and all of its counties. The defendant, RAWLINGS, regularly and routinely conducts business in the Commonwealth of Pennsylvania and all of its counties.

4.   The present action involves a claim seeking declaratory relief, return of all monies recovered and payment of extra-

contractual bad faith damages in connection with the actions of the defendant, AETNA, in the handling of long-term disability claims and the assertion of liens against the proceeds of settlement or verdicts of tort actions where no such lien exists under contract and law.

5.    The present action seeks relief on behalf of the plaintiff, JOANNE WOLFF, individually, as well as on behalf of a class of similarly situated persons.

## PLAINTIFF'S ERISA CLAIMS AGAINST DEFENDANTS AETNA AND RAWLINGS

### STATEMENT OF FACTS

6.    At all times relevant hereto, the plaintiff, JOANNE WOLFF, was insured for long-term disability benefits under an insured Group Plan issued by the defendant, AETNA, through Bank of America Corporation, the employer of the plaintiff, JOANNE WOLFF. A true and correct copy of the Plan documents are attached hereto as Exhibit "A".

7.    On or about September 30, 2015, the plaintiff, JOANNE WOLFF, sustained injury as a result of a motor vehicle accident which rendered him temporarily disabled.

8.    As a result of her disability, the plaintiff, JOANNE WOLFF, submitted a claim for long-term disability benefits to the defendant, AETNA, under the policy in question.

9.    The defendant, AETNA, paid long-term disability benefits to the plaintiff, JOANNE WOLFF, in the amount of

$50,164.50.

10.   As a result of the injuries sustained in the motor vehicle accident, the plaintiff, JOANNE WOLFF, made a claim for recovery of damages against the tortfeasor.

11.   The insurer for the tortfeasor did resolve, settle and make payment to the plaintiff, JOANNE WOLFF, in compensation for the personal injuries sustained by the Plaintiff in the motor vehicle accident.

12.   The defendants, AETNA and RAWLINGS, then asserted a claim for reimbursement of the long-term disability benefits paid to the plaintiff, JOANNE WOLFF, from the proceeds of the settlement of the tort action.

13.   The defendants, AETNA and RAWLINGS, are seeking reimbursement from the proceeds of the tort settlement payment to plaintiff JOANNE WOLFF pursuant to the Plan. See Exhibit "A".

14.   The demand of the defendants is improper as a matter of law and as a matter of policy as the Right of Recovery provision of the Group Plan is not enforceable and forms no basis for any right of reimbursement under Pennsylvania law or under contract.

15.   Nonetheless, the defendants, AETNA and RAWLINGS, are seeking reimbursement from plaintiff, JOANNE WOLFF, for $50,164.50 from the proceeds of her tort settlement.

16.   The defendants, AETNA and RAWLINGS, have continued to assert a claim for reimbursement of the long-term disability benefits paid to the plaintiff, JOANNE WOLFF, from the proceeds

of her tort settlement of her motor vehicle accident despite the policy and despite the law in Pennsylvania eliminating any such right.

17.   The defendants, AETNA and RAWLINGS, have refused to withdraw their claim for reimbursement of long-term disability benefits despite the request from the plaintiff, JOANNE WOLFF, to do so.

18.   As a result of defendants' demand, counsel for Plaintiff was forced to refuse to distribute to WOLFF the money in dispute. Counsel is ethically bound to refuse to provide the funds to WOLFF. Further, the policy leaves WOLFF subject to suit and loss of benefits based on the dispute over the subject funds. Accordingly, WOLFF is denied the payment, ownership and use of the dispute funds.

19.   In consequence of the above, counsel for Plaintiff has refused WOLFF the payment, ownership and use of her funds by paying those funds to Defendants.

20.   The plaintiff, JOANNE WOLFF, has been deprived of the ownership, possession and use of the from the proceeds of the tort settlement by reason of the illegal assertion of the claim for reimbursement of the defendants, AETNA and RAWLINGS. The plaintiff, JOANNE WOLFF, is further subject to suit and loss of future benefits as a result of the defendant's illegal assertion and claim for reimbursement.

21.  It is believed, and therefore averred, that the defendants, AETNA and RAWLINGS, have illegally asserted liens and claims for reimbursement or further collected monies from the tort settlement or verdicts recovered in tort claims against not only the plaintiff, JOANNE WOLFF, but also against other persons.

22.  The defendants, AETNA and RAWLINGS, have wrongfully asserted claims and continues to assert claims for reimbursement from the proceeds of settlement or verdict of tort claims contrary to the policy and contrary to the dictates of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

23. Furthermore, the defendants, AETNA and RAWLINGS, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from WOLFF and class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries contrary to the policies and law.

24. Furthermore, the defendants, AETNA and RAWLINGS, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from WOLFF and class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the

disability benefits it had paid to insureds from the insureds'
tort recoveries wherein the defendant did not comply with the
policy to not seek reimbursement against the class plaintiff
insureds' personal injury recovery for pain and suffering.

25. Furthermore, the defendants, AETNA and RAWLINGS,
wrongfully asserted claims for reimbursement, continue to
wrongfully assert claims for reimbursement or have wrongfully
secured payment in reimbursement from WOLFF and class plaintiffs
who were injured and received long-term disability benefits from
the defendant as a result of an injury causing event for the
disability benefits it had paid to insureds from the insureds'
tort recoveries wherein the defendant did not comply with the
policy or states' laws to not seek reimbursement against the
class plaintiff insureds' personal injury recovery for future
medical care.

26. Furthermore, the defendants, AETNA and RAWLINGS,
wrongfully asserted claims for reimbursement, continue to
wrongfully assert claims for reimbursement or have wrongfully
secured payment in reimbursement from WOLFF and class plaintiffs
who were injured and received disability benefits from the
defendant as a result of an injury causing event for the long-
term disability benefits it had paid to insureds from the
insureds' tort recoveries without reducing its reimbursement
demand or recovery by the pro-rata share attorney fees and
expenses that the class plaintiff insureds incurred in their

underlying litigation contrary to the policies and law.

27. Furthermore, the defendants, AETNA and RAWLINGS, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from WOLFF and class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the disability benefits it had paid to insureds from the insureds' tort recoveries before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to the policies and law.

28. Furthermore, the defendants, AETNA and RAWLINGS, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from WOLFF and class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the disability benefits it had paid to insureds from the insureds' tort recoveries wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation.

29. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on

money, the loss of possession of their funds; the loss  enjoyment

of their funds, their losses in having to free their funds from

defendants' encumbrances and payment of money from their tort

recoveries to Defendants.

## STATUTORY PROVISIONS

30.  The present matter arises under the Pennsylvania Motor

Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

31.  Section 1720 of the Pennsylvania Motor Vehicle

Financial Responsibility Law eliminates all rights of subrogation

or reimbursement by all group plans, programs or other

arrangements for payment of benefits in connection with injuries

sustained in motor vehicle accidents.

32.  Specifically, § 1720 of the Pennsylvania Motor Vehicle

Financial Responsibility Law provides:

> In actions arising out of the maintenance or use of a
> motor vehicle, there shall be no right of subrogation
> or reimbursement from a claimant's tort recovery with
> respect to workers' compensation benefits, benefits
> available under section 1711 (relating to required
> benefits), 1712 (relating to availability of benefits)
> or 1715 (relating to availability of adequate limits)
> or benefits paid or payable by a program, group
> contract or other arrangement whether primary or excess
> under section 1719 (relating to coordination of
> benefits).

33.  The defendants, AETNA and RAWLINGS, have illegally

asserted liens and claims for reimbursement against the proceeds

of the pain and suffering settlement or verdict of injury causing

events against WOLFF and the class members that are in violation
of the policy and in violation of the Pennsylvania Motor Vehicle
Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

### POLICY PROVISIONS

34.   The present matter also arises under the terms of the
long-term disability benefits plan.

35. The long-term disability benefits plan provides in
relevant part as follows:

"Recovery of Overpayments

Long Term Disability Coverage

If payments are made in amounts greater than the
benefits that you are entitled to receive, Aetna has the
right to do any one or all of the following:

• Require you to return the overpayment on request;

• Stop payment of benefits until the overpayment is
recovered;

• Take any legal action needed to recover the
overpayment; and

• Place a lien, if not prohibited by law, in the amount
of the overpayment on the proceeds of any other income,
whether on a periodic or lump sum basis.

If the overpayment:

• Occurs as a result of your receipt of "other income
benefits" for the same period for which you have
received a benefit under this plan; and

• To obtain such "other income benefits", advocate or
legal fees were incurred.

Aetna will exclude from the amount to be recovered,
such advocate or legal fees; provided you return the
overpayment to Aetna within 30 days of Aetna's written
request for the overpayment. If you do not return the
overpayment to Aetna within such 30 days, such fees will not

be excluded; you will remain responsible for repayment of the total overpaid amount."

36. The long-term disability benefits plan further provides in relevant part as follows:

"Other income benefits can affect the monthly benefit described in the long term disability coverage section. When calculating the benefit payable, other income benefits that you, your spouse, your children or your dependents are eligible for because of your disability or retirement are taken into consideration.

The other income benefits considered when your benefits payable are calculated are:

• 50% of any award given under The Jones Act or The Maritime Doctrine of Maintenance, Wages and Cure.

• Disability, retirement or unemployment benefits required or provided for by government law. This includes (but is not limited to):

    - Unemployment compensation benefits.

    - Temporary or permanent, partial or total, disability benefits under any workers' compensation law or similar law meant to compensate a worker for:

        - Loss of past and future wages;

        - Impaired earning capacity;

        - A lessened ability to compete for jobs;

        - Any permanent impairment; and

        - Any loss of bodily function or capacity.

    - Benefits under the Federal Society Security Act, Railroad Retirement Act, Canada Pension Plan and Quebec Pension Plan.

    - Veteran's benefits.

• Statutory disability benefits

• Disability or unemployment benefits payable by either insured and uninsured plans:

- As a result of employment by or association with your employer; or
- As a result of your membership in, or association with, any group, association, union or other organization.

This includes both plans that are insured and those that are not.

• Unreduced retirement benefits for which you are (or may become) eligible under a group pension plan at age 62 or the plan's normal retirement age, whichever comes later. This applies only to the amount of the benefit that was paid by an employer.

• Retirement benefits you elect and receive under any group pension plan. This applies only to the amount of the benefit that was paid by an employer.

• Disability benefits from an accumulated sick time or salary continuation program, provided they are part of an established group plan maintained by your Employer for the benefit of its employees."

37. Pursuant to the long-term disability benefits plan, Plaintiff is only required to repay the Plan any disability benefits received during a period which the Plaintiff also received "Other Income Benefits".

38. The terms of the long-term disability benefits plan do not include personal injury recoveries as "Other Income Benefits".

39. The terms of the long-term disability benefits plan do not include any language permitting Aetna to demand and secure reimbursement of disability benefits paid from personal injury recoveries.

40. However, despite the lack of any Plan language, Defendants asserted liens and demanded repayment of long-term

disability benefits paid to Plaintiff directly against
Plaintiff's personal injury recovery.

### CLASS ACTION ALLEGATIONS REGARDING PLAINTIFF'S ERISA CLAIMS AGAINST DEFENDANTS AETNA AND RAWLINGS

41.  The plaintiff, JOANNE WOLFF, brings this action
individually and on behalf of a class of similarly situated
persons as a class action pursuant to the Federal Rules of Civil
Procedure.

42.  The defendants, AETNA and RAWLINGS, have continuously,
systematically and wrongfully asserted claims for reimbursement
of long-term disability benefits or recovered monies from
settlements or verdicts of motor vehicle claims where all such
claims for reimbursement and recovery are improper under the
policy and as a matter of law insofar as the reimbursement
provisions of the Group Plan have been abrogated by the
Pennsylvania Motor Vehicle Financial Responsibility Law, 75
Pa.C.S.A. § 1701 et seq. as recognized by the Supreme Court of
Pennsylvania in *Tannenbaum v. Nationwide*, 992 A.2d 859 (Pa.
2010).

43.  The defendants, AETNA and RAWLINGS, have continuously,
systematically and wrongfully acted against all class plaintiff
insureds by wrongfully asserting claims for reimbursement,
continuing to wrongfully assert claims for reimbursement or
wrongfully securing payment in reimbursement from class
plaintiffs who were injured and received long-term disability
benefits from the defendant as a result of an injury causing

event for the disability benefits it had paid to insureds from the insureds' tort recoveries contrary to the policies and law.

44.  The defendants, AETNA and RAWLINGS, have continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement or wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the disability benefits it had paid to insureds from the insureds' tort recoveries wherein the defendant did not comply with the policy to not seek reimbursement against the class plaintiff insureds' personal injury recovery.

45.  The defendants, AETNA and RAWLINGS, have continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement or wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the disability benefits it had paid to insureds from the insureds' tort recoveries without reducing its reimbursement demand or recovery  by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to the policy and law.

46.  The defendants, AETNA and RAWLINGS, have continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement or wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the disability benefits it had paid to insureds from the insureds' tort recoveries before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to law.

47.  The defendants, AETNA and RAWLINGS, have continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement or wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the disability benefits it had paid to insureds from the insureds' tort recoveries wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation contrary to the policies.

48. As a result of AETNA and RAWLINGS' actions as aforementioned, Plaintiff, JOANNE WOLFF, seeks to represent the class of persons:

A. Injured in motor vehicle accidents against the defendant, AETNA, which has asserted a claim for reimbursement of long-term disability benefits depriving those persons of the monies where such claims for reimbursement recovery are improper under the policy and as a matter of law as the Right of Recovery provisions of the Group Plan have been abrogated by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. as recognized by the Supreme Court of Pennsylvania in *Tannenbaum v. Nationwide*, 992 A.2d 859 (Pa. 2010) and who suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to the defendant as a result of defendants' wrongful reimbursement demands and actions.

B.   Injured in motor vehicle accidents against the defendant, AETNA, which has recovered long-term disability benefits from the proceeds of tort settlement or verdict of motor vehicle accident claims where such claims for reimbursement recovery are improper under the policy and as a matter of law as the Right of Recovery provisions of the Group Plan have been abrogated by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. as recognized by the Supreme Court of Pennsylvania in *Tannenbaum v. Nationwide*, 992 A.2d 859 (Pa. 2010) and who suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to the defendant as a result of defendants' wrongful reimbursement demands and actions.

C.  Who were injured and received long-term disability
benefits from the defendant as a result of an injury
causing event and as against whom defendant sought or
recovered reimbursement of long-term disability
benefits it had paid to insureds from the insureds'
tort recoveries and who suffered harm and damages which
include, by way of exemplification and not in
limitation, the loss of use of money, the loss of
interest on money, the loss of possession of their
funds; the loss  enjoyment of their funds, their losses
in having to free their funds from defendants'
encumbrances and payment of money from their tort
recoveries to the defendant as a result of defendants'
wrongful reimbursement demands and actions.

D.  Who were injured and received long-term disability
benefits from the defendant as a result of an injury
causing event and as against whom defendant sought or
recovered reimbursement of long-term disability
benefits it had paid to insureds from the insureds'
tort recoveries wherein the defendant did not comply
with the policy to not subrogate against the insureds'
personal injury recovery for pain and suffering and who
suffered harm and damages which include, by way of
exemplification and not in limitation, the loss of use
of money, the loss of interest on money, the loss of
possession of their funds; the loss  enjoyment of their
funds, their losses in having to free their funds from
defendants' encumbrances and payment of money from
their tort recoveries to the defendant as a result of
defendants' wrongful reimbursement demands and actions.

E. Who were injured and received long-term disability
benefits from the defendant as a result of an injury
causing event and as against whom defendant sought or
recovered reimbursement of long-term disability
benefits it had paid to insureds from the insureds'
tort recoveries without reducing its reimbursement
demand or recovery  by the pro-rata share attorney fees
and expenses that the insureds incurred in their
underlying litigation and who suffered harm and damages
which include, by way of exemplification and not in

limitation, the loss of use of money, the loss of
interest on money, the loss of possession of their
funds; the loss  enjoyment of their funds, their losses
in having to free their funds from defendants'
encumbrances and payment of money from their tort
recoveries to the defendant as a result of defendants'
wrongful reimbursement demands and actions.

F. Who were injured and received long-term disability
benefits from the defendant as a result of an injury
causing event and as against whom defendant sought or
recovered reimbursement of long-term disability
benefits it had paid to insureds from the insureds'
tort recoveries before the insured had first been made
whole and fully compensated for all of their damages
and losses and who suffered harm and damages which
include, by way of exemplification and not in
limitation, the loss of use of money, the loss of
interest on money, the loss of possession of their
funds; the loss  enjoyment of their funds, their losses
in having to free their funds from defendants'
encumbrances and payment of money from their tort
recoveries to the defendant as a result of defendants'
wrongful reimbursement demands and actions.

G. Who were injured and received long-term disability
benefits from the defendant as a result of an injury
causing event and as against whom defendant sought or
recovered reimbursement of long-term disability
benefits it had paid to insureds from the insureds'
tort recoveries wherein the class plaintiff insureds
had not recovered disability losses or disability
payments in their underlying litigation and who
suffered harm and damages which include, by way of
exemplification and not in limitation, the loss of use
of money, the loss of interest on money, the loss of
possession of their funds; the loss of enjoyment of
their funds, their losses in having to free their funds
from defendants' encumbrances and payment of money from
their tort recoveries to the defendant as a result of
defendants' wrongful reimbursement demands and actions.

49.   The plaintiff, JOANNE WOLFF, reserves the right to amend the definition and/or identify subclasses upon completion of class discovery and/or certification.

50.   It is believed, and therefore averred, that the class is so numerous as to allow certification.

51.   It is believed and therefore averred that the total amount in dispute on behalf of the claims of similarly situated individuals does not exceed $5,000,000.00.

52.   It is believed, and therefore averred, that the members of the putative class are so numerous that joinder of all members is impracticable.

53.   Identification of the members of the class can be ascertained in and through discovery of the files and/or computer data base of the defendants, AETNA and RAWLINGS.

54.   A class action is the only practicable means available for the members of the class to pursue the appropriate remedies under the policies of insurance in question and the law.

55.   A class action is the only practicable means available to prevent the defendants, AETNA and RAWLINGS, from engaging in the continuous and systematic illegal and unlawful conduct concerning benefits under the policy and under the Pennsylvania Motor Vehicle Financial Responsibility Law and to remedy the harm created by this illegal and unlawful conduct.

56.   The questions of law and fact are common to the members of the class which the plaintiff, JOANNE WOLFF, seeks to

represent.

57.  The questions of law and fact common to the members of the class predominate over questions that may affect only individual members.

58.  The common questions of law and fact which control this litigation predominate over any individual issues include, but are not limited to:

(a)  Each member of the class was insured under a long-term disability benefits policy issued by the defendant;

(b)  Each member of the class was injured in an injury causing event;

(c)  Each member of the class was paid long-term disability benefits by the defendant, AETNA, as a result of injuries sustained in the injury causing event;

(d)  Each member of the class made a tort recovery arising from the injury causing event;

(e)  For each member of the class, the defendant, AETNA, made claim for reimbursement of long-term disability benefits paid as a result of injuries sustained in the injury causing event;

(f)  For each member of the class, defendants AETNA and RAWLINGS' claims for reimbursement are improper under the policy and as a matter of law as:

•    the reimbursement provisions of the Group Plan have been abrogated by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.;

•    the defendant did not comply with the policy to not subrogate against the insureds' personal injury recovery;

- the defendant did not reduce its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the insureds incurred in their underlying litigation;
- the defendant did demanded and secured reimbursement before the insured had first been made whole and fully compensated for all of their damages and losses;
- the defend demanded and secured reimbursement even wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation;

59. As a result of Defendants' wrongful reimbursement demands and actions, Plaintiff and class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds, the loss enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances, and payment of money from their tort recoveries to the defendant.

60. The plaintiff, JOANNE WOLFF, is a member of the class that she seeks to represent.

61. The claims of the plaintiff, JOANNE WOLFF, are typical of the claims of other members of the class which she purports to represent.

62. The plaintiff, JOANNE WOLFF, is well qualified to act as class representative.

63.   The plaintiff, JOANNE WOLFF, will fairly and adequately protect the interests of the members of the class.

64.   The plaintiff, JOANNE WOLFF, has no interest that is adverse or antagonistic to the interests of the members of the class.

65.   The plaintiff, JOANNE WOLFF, is committed to prosecuting the class action.

66.   The plaintiff, JOANNE WOLFF, has retained competent counsel who are experienced in litigation of this nature.

67.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

68.   Joinder of all class matters is impracticable and the likelihood of individual class members prosecuting separate claims is remote due to the fact that the members of the class do not know that they are entitled to uninsured motorist coverage.

69.   The expense and burden of individual litigation makes it unlikely that a substantial member of the class members will individually seek redress for the wrongs done to them.

70.   It is desirable for all concerned to concentrate the litigation in this particular forum for adjudication.

71.   The plaintiff, JOANNE WOLFF, anticipates no difficulty in the management of this action as a class action.

72.   The class action brought by the plaintiff, JOANNE WOLFF, is a convenient and proper forum in which to litigate the claim.

73.  The prosecution of separate actions by individual class members would create the risk of bearing inconsistent determinations that could confront the defendants, AETNA and RAWLINGS, with incompatible standards of conduct and which could prejudice non-parties to any adjudication or substantially impede their ability to protect their own interests because of the overriding common questions of law and fact involved in the matter.

74.  Prosecution of these claims as a class action will result in an orderly and expeditious administration of the claims and will foster economies of time, effort and expense.

75.  Prosecution of these claims as a class action will contribute to uniformity of decisions concerning the practices of the defendants, AETNA and RAWLINGS.

### COUNT I
### (STATE LAW RULES OF DECISION)

76. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

77. 75 Pa.C.S.A §1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law was in full force and effect at the time of issue or renewal of the insurance policies issued by AETNA to Plaintiff and, as such, the policies were amended by operation of law to conform with said statute and code.

78. Pursuant to 75 Pa.C.S.A. §1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law, insurers are prohibited from asserting subrogation, liens and/or reimbursement against insureds' personal injury recoveries arising from motor vehicle claims.

79. Pursuant to 75 Pa.C.S.A §1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law, insurers are prohibited from asserting lien, subrogation and/or reimbursement claims.

80. At all times relevant hereto, AETNA and RAWLINGS asserted and continues to assert, a lien, subrogation claim and/or demand for repayment for the benefits which AETNA paid as against the proceeds of Plaintiffs' personal injury recoveries of motor vehicle accident claims.

81. Further, at all times relevant hereto, AETNA and RAWLINGS asserted and continue to assert, a lien, subrogation claim and/or demand for repayment for the benefits which AETNA paid as against the proceeds of Plaintiffs' personal injury causing event in violation of controlling applicable law which precludes reimbursement.

**COUNT II**
**(DECLARATORY RELIEF)**

82. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

83.   The defendants, AETNA and RAWLINGS, seek reimbursement of long-term disability benefits paid to the plaintiff, JOANNE WOLFF, from the proceeds of the settlement of her tort claim in connection with injuries sustained in a September 30, 2015 motor vehicle accident.

84.   The defendants, AETNA and RAWLINGS, have continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement and wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries contrary to the policies and law.

85.   The defendants, AETNA and RAWLINGS, have continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement and wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries wherein the defendant did not comply with the policy to not subrogate against the class

plaintiff insureds' personal injury recovery for pain and suffering.

86. The defendants, AETNA and RAWLINGS, have continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement and wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries without reducing its reimbursement demand or recovery  by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to the policies and law.

87. The defendants, AETNA and RAWLINGS, have continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to law.

88. The defendants, AETNA and RAWLINGS, have continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement and wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation.

89. The defendants, AETNA and RAWLINGS, have no right to reimbursement and may not assert any right of reimbursement on the actions as set forth above.

90. As a result, the plaintiff, JOANNE WOLFF, and each AETNA insured and member of the class, is entitled to a declaration that the defendants, AETNA and RAWLINGS:

    a)    have no right of reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries contrary to the policies and law.

    b)    have no right of reimbursement wherein the defendant did not comply with the policy to not subrogate against the class plaintiff insureds' personal injury recovery for pain and suffering.

    c)    have no right of reimbursement without reducing its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to the policies and law.

    d)    have no right of reimbursement before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to law.

    e)    have no right of reimbursement wherein the class plaintiff insureds had not recovered long-term disability losses or disability payments in their underlying litigation.

91.  The controversy poses an issue for judicial determination under the Declaratory Judgment Act.

92.  The controversy involves substantial rights of the parties to the action.

93.  The controversy poses an issue for judicial determination by this Court at this time.

94.  A judgment of this Court in this action will serve a useful purpose in clarifying and settling the legal relations at issue between the parties.

95.  A judgment of this Court will determine, terminate and afford relief from the uncertainty and controversy giving rise to this action.

96. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and class members suffered harm and damages  which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on

money, the loss of possession of their funds, the loss  enjoyment

of their funds, their losses in having to free their funds from

defendants' encumbrances, and payment of money from their tort

recoveries to the defendant.

97.  The plaintiff, JOANNE WOLFF, and every AETNA insured is

entitled to a declaration as to the propriety of Defendants'

actions alleged herein.

**COUNT III**
**(VIOLATION OF EMPLOYEE WELFARE BENEFIT PLAN AND POLICY)**

98. Plaintiff, on behalf of herself and other persons

similarly situated, repeats and re-alleges the allegations of the

preceding paragraphs as if fully restated herein.

99. Defendants' assertion of liens, subrogation claims

and/or repayment demands as against the proceeds of Plaintiffs'

personal recoveries is a breach of the underlying policy and of

the Employee Welfare Benefit Plan.

100. By taking the actions described above, Defendants

violated the rights of Plaintiffs. Specifically, under the Plan,

Plaintiffs have rights to insurance benefits that are not subject

to lien, subrogation claims, and/or repayment demands.

Accordingly, Defendants' demands for lien, subrogation and/or

repayment infringes upon and is in derogation of those rights

under the Plan.

101. Defendants' repudiation of the terms of the employee

welfare benefit plan is actionable in this Court under ERISA §

502, 29 U.S.C. § 1132, which allows a participant or beneficiary

to bring a civil action "to recover benefits due to him under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan."

102. Additionally, a participant suing under this provision is entitled to interest on any retroactive amounts awarded.

103. Pursuant to ERISA §502, Plaintiffs are entitled to an relief as against the defendants.

104. Furthermore, the defendants, AETNA and RAWLINGS, wrongfully asserted claims for reimbursement, continues to wrongfully assert claims for reimbursement and has wrongfully secured payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries in violation of the Employee Benefit Plan.

105. Furthermore, the defendants, AETNA and RAWLINGS, wrongfully asserted claims for reimbursement, continues to wrongfully assert claims for reimbursement and has wrongfully secured payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries wherein the defendant did not comply

with the policy to not subrogate against the class plaintiff insureds' personal injury recovery for pain and suffering in violation of the Employee Benefit Plan.

106. Furthermore, the defendants, AETNA and RAWLINGS, wrongfully asserted claims for reimbursement, continues to wrongfully assert claims for reimbursement and has wrongfully secured payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries without reducing its reimbursement demand or recovery  by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation in violation of the Employee Benefit Plan.

107. Furthermore, the defendants, AETNA and RAWLINGS, wrongfully asserted claims for reimbursement, continues to wrongfully assert claims for reimbursement and has wrongfully secured payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses.

108. Furthermore, the defendants, AETNA and RAWLINGS, wrongfully asserted claims for reimbursement, continues to wrongfully assert claims for reimbursement and has wrongfully secured payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the long-term disability benefits it had paid to insureds from the insureds' tort recoveries wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation in violation of the Employee Benefit Plan.

109. The defendants, AETNA and RAWLINGS, have continuously and systematically committed the wrongful actions above against WOLFF and other AETNA insureds.

110. The actions of the defendants are a breach of the underlying policy and of the Employee Welfare Benefit Plan which has caused the insureds to suffer damages as a result.

111. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and ERISA beneficiary class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds, the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances, and payment of money from their tort recoveries to the defendant.

## COUNT IV
### (BREACH OF FIDUCIARY DUTY - DUTY OF LOYALTY)

112. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

113. At all relevant times, Defendant AETNA was a fiduciary of the Plan, as AETNA exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

114. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on Plan fiduciaries a duty of loyalty, that is, a duty to discharge her duties with respect to a Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.

115. As a fiduciary of the Plan, Defendant AETNA was obligated to discharge its duties solely in the interests of Plaintiffs, who are Plan participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and beneficiaries.

116. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), participants and beneficiaries may sue "to enjoin any act or practice which violates any provision of this subchapter [*e.g.*, fiduciary provisions] or the terms of the plan, or . . . to

obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or the terms of the plan."

117. Instantly, AETNA exercised discretionary authority, control or responsibility in its role as Fiduciary for its own benefit, interest and advantage.

118. Further, AETNA had a conflict in that AETNA, in the exercise of its discretionary authority, control and responsibility as a Fiduciary with a fiduciary duty to the Plaintiffs, placed itself into position to make decisions and take actions, and then did make decisions and took actions, that pitted AETNA's interests against those of the Plaintiffs to whom AETNA owed a fiduciary duty.

119. Defendant AETNA breached its duty to avoid conflicts of interest by administering the Plan in a way favorable to itself and adversely to the participants and beneficiaries and by otherwise placing their own and/or AETNA's interests above the interests of the participants and beneficiaries.

120. More specifically, if AETNA pursued and secured reimbursement money from AETNA insureds, the reimbursement money AETNA received from AETNA insureds would go to AETNA. Accordingly, there was a "sum zero" scenario in which either AETNA would take money or the Plaintiffs would keep money.

121. AETNA placed itself into a position to make decisions and to take actions whether reimbursement against the AETNA

insureds was proper and then whether to pursue reimbursement against AETNA insureds.

122. In sum, in its role as a fiduciary to WOLFF, AETNA had to decide who would get money - AETNA or WOLFF - and AETNA chose AETNA.

123. Even further, AETNA not only breached its duty to avoid conflicts of interest, AETNA acted in actual conflict with ERISA beneficiaries.

124. In that regard, AETNA further breached its fiduciary duty of loyalty to WOLFF and the insured class plaintiff by exercising discretionary authority, control and responsibility through its actions to pursue and recover reimbursement from Plaintiffs when such actions were in violation of the law and in violation of the Employee Welfare Benefit Plan.

125. AETNA not only breached its duty to avoid conflicts of interest but acted in actual conflict with ERISA beneficiaries by demanding and taking money in reimbursement from ERISA beneficiaries wherein the defendant did not comply with the policy to not subrogate against the class plaintiff insureds' personal injury recovery for pain and suffering in violation of the Employee Benefit Plan.

126. AETNA not only breached its duty to avoid conflicts of interest but acted in actual conflict with ERISA beneficiaries by demanding and taking money in reimbursement from ERISA beneficiaries wherein the defendant did not comply with the

policy to not subrogate against the class plaintiff insureds'
personal injury recovery for future medical care in violation of
the Employee Benefit Plan.

127. AETNA not only breached its duty to avoid conflicts of
interest but acted in actual conflict with ERISA beneficiaries by
demanding and taking money in reimbursement from ERISA
beneficiaries without reducing its reimbursement demand or
recovery  by the pro-rata share attorney fees and expenses that
the class plaintiff insureds incurred in their underlying
litigation in violation of the Employee Benefit Plan.

128. AETNA not only breached its duty to avoid conflicts of
interest but acted in actual conflict with ERISA beneficiaries by
demanding and taking money in reimbursement from ERISA
beneficiaries before the class plaintiff insureds had first been
made whole and fully compensated for all of their damages and
losses.

129. AETNA not only breached its duty to avoid conflicts of
interest but acted in actual conflict with ERISA beneficiaries by
demanding and taking money in reimbursement from ERISA
beneficiaries wherein the class plaintiff insureds had not
recovered disability losses or disability payments in their
underlying litigation in violation of the Employee Benefit Plan.

130. AETNA's pursuit, enforcement and collection of liens
from ERISA beneficiaries as aforesaid violated its fiduciary duty
to Plaintiffs with each act constituting its own violation and

claim or cause of action in its own right.

131. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiffs have already, and will continue to, suffer actual harm in the absence of relief.

132.  Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), and ERISA §404, 29 U.S.C. §1104(a), Defendants in this Count are liable to restore the losses caused by their breaches of fiduciary duties.

133. As a result of defendant's violation of the fiduciary duty, Plaintiffs are entitled to relief as against the defendants.

134. The actions of the defendant are a breach of ERISA, the underlying policy and of the Employee Welfare Benefit Plan which has caused ERISA beneficiaries insureds to suffer losses as a result.

135. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and ERISA beneficiary class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds, the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances, and payment of money from their tort recoveries to the defendant.

## COUNT V
### (ERISA RELIEF)

136. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

137. At all relevant times, Defendant was a fiduciary of the Plan, as defendant exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

138. ERISA imposes a duty to Disclose Complete and Accurate Information and to avoid misrepresentations.

139. ERISA fiduciaries have a duty to disclose complete and accurate information about benefits to plan beneficiaries.

140. ERISA fiduciaries may not make material misrepresentations and may not strategically withhold material information.

141. Under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1), participants and beneficiaries may sue "to recover benefits due to him under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan."

142. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), participants and beneficiaries may sue "to enjoin any act or practice which violates any provision of this subchapter [*e.g.*, fiduciary provisions] or the terms of the plan, or . . . to

obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or the terms of the plan."

143. AETNA's conduct, as set forth herein, violated its fiduciary duty to Plaintiffs and the ERISA beneficiary Plaintiffs are entitled to relief under ERISA as a result.

144. The defendant, AETNA, continuously, systematically and wrongfully acted against WOLFF and all class ERISA beneficiaries by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement, and wrongfully securing payment from ERISA beneficiaries in contravention to law and the ERISA Plans.

145. The defendant, AETNA continuously, systematically, and inaccurately did not disclose to WOLFF and all class ERISA beneficiaries that AETNA was not entitled to reimbursement: wherein the defendant did not comply with the policy to not subrogate against the class plaintiff insureds' personal injury recovery in violation of the long-term disability Plan; without reducing its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation in violation of the Employee Benefit Plan; before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses and wherein the class plaintiff insureds had not recovered disability losses or disability payments in their

underlying litigation in violation of the Employee Benefit Plan.

146. AETNA's disclosures to WOLFF and the class ERISA beneficiaries were inaccurate as being both contrary to law and contrary to the Employee Welfare Benefits Plan.

147. Plaintiff WOLFF and class ERISA beneficiaries are legally entitled to enjoin AETNA's reimbursement actions and practices that violate ERISA and the Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(a).

148. Furthermore, as an ERISA fiduciary with a duty to disclose complete and accurate information to ERISA beneficiaries, AETNA is required to notify and disclose to WOLFF and all class ERISA beneficiaries against whom it asserted reimbursement or received reimbursement repayment, that AETNA was not entitled to reimbursement: wherein the defendant did not comply with the policy to not subrogate against the class plaintiff insureds' personal injury recovery in violation of the long-term disability Plan; without reducing its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation in violation of the Employee Benefit Plan; before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses; and wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation in violation of the Employee Benefit Plan.

149. Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), and ERISA §404, 29 U.S.C. §1104(a), Defendant AETNA is liable to restore the losses caused by their breaches of fiduciary duties.

150. As a result of defendant's violation of the fiduciary duty, Plaintiffs are entitled to relief as against the defendants.

151. The actions of the defendant is a breach ERISA, of the underlying policy and of the Employee Welfare Benefit Plan which has caused WOLFF and other ERISA beneficiary class members to suffer losses as a result.

152. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and ERISA beneficiary class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds, the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances, and payment of money from their tort recoveries to the defendant.

**COUNT VI**
**(STATES' LAWS RULES OF DECISION)**

153. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

154. 75 Pa.C.S.A §1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law and the laws in the District of Columbia or one of the fifty (50) states of the United States

were in full force and effect at the time of issue or renewal of the insurance policies issued by AETNA to Plaintiff and, as such, the policies were amended by operation of law to conform with said statutes and/or codes.

155. Pursuant to 75 Pa.C.S.A. §1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law and the laws in the District of Columbia or one of the fifty (50) states of the United States, insurers are prohibited from asserting subrogation, liens and/or reimbursement against insureds' personal injury recoveries arising from personal injury claims.

156. Pursuant to 75 Pa.C.S.A §1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law and the laws in the District of Columbia or one of the fifty (50) states of the United States, insurers are prohibited from asserting lien, subrogation and/or reimbursement claims.

157. At all times relevant hereto, AETNA and RAWLINGS asserted and continues to assert, a lien, subrogation claim and/or demand for repayment for the benefits which AETNA paid as against the proceeds of Plaintiffs' personal injury recoveries.

158. Further, at all times relevant hereto, AETNA and RAWLINGS asserted and continues to assert, a lien, subrogation claim and/or demand for repayment and collected reimbursement from insureds for the benefits which AETNA paid as against the proceeds of Plaintiffs' personal injury causing event in violation of controlling applicable laws which prohibit

reimbursement.

159. As a result of AETNA and RAWLINGS' actions as aforementioned, Plaintiff, JOANNE WOLFF, seeks to represent the class of persons:

A.  Who were injured and received long-term disability benefits from the defendant as a result of an injury causing event and as against whom defendant sought or recovered reimbursement of long-term disability benefits it had paid to insureds from the insureds' tort recoveries contrary to the laws of the District of Columbia or one of the fifty (50) states of the United States abrogating any claim for subrogation and/or reimbursement against the insureds' personal injury recovery and who suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to the defendant as a result of defendants' wrongful reimbursement demands and actions.

B. Who were injured and received long-term disability benefits from the defendant as a result of an injury causing event and as against whom defendant sought or recovered reimbursement of long-term disability benefits it had paid to insureds from the insureds' tort recoveries contrary to the laws of the District of Columbia or one of the fifty (50) states of the United States requiring Defendant to reduce its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the insureds incurred in their underlying litigation and who suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to the defendant as a result of defendants' wrongful reimbursement demands and actions.

C. Who were injured and received long-term disability benefits from the defendant as a result of an injury

causing event and as against whom defendant sought or
recovered reimbursement of long-term disability
benefits it had paid to insureds from the insureds'
tort recoveries contrary to the laws of the District of
Columbia or one of the fifty (50) states of the United
States abrogating any claim for subrogation and/or
reimbursement against the insureds' personal injury
recovery before the insured had first been made whole
and fully compensated for all of their damages and
losses and who suffered harm and damages which include,
by way of exemplification and not in limitation, the
loss of use of money, the loss of interest on money,
the loss of possession of their funds; the loss
enjoyment of their funds, their losses in having to
free their funds from defendants' encumbrances and
payment of money from their tort recoveries to the
defendant as a result of defendants' wrongful
reimbursement demands and actions.

160. The plaintiff, JOANNE WOLFF, reserves the right to
amend the definition and/or identify subclasses upon completion
of class discovery and/or certification.

161. It is believed, and therefore averred, that the class
is so numerous as to allow certification.

162. It is believed and therefore averred that the total
amount in dispute on behalf of the claims of similarly situated
individuals does not exceed $5,000,000.00.

163. It is believed, and therefore averred, that the members
of the putative class are so numerous that joinder of all members
is impracticable.

164. Identification of the members of the class can be
ascertained in and through discovery of the files and/or computer
data base of the defendants, AETNA and RAWLINGS.

165. A class action is the only practicable means available

for the members of the class to pursue the appropriate remedies
under the policies of insurance in question and the law.

166. A class action is the only practicable means available
to prevent the defendants, AETNA and RAWLINGS, from engaging in
the continuous and systematic illegal and unlawful conduct
concerning benefits under the policy and under the Pennsylvania
Motor Vehicle Financial Responsibility Law and to remedy the harm
created by this illegal and unlawful conduct.

167. The questions of law and fact are common to the members
of the class which the plaintiff, JOANNE WOLFF, seeks to
represent.

168. The questions of law and fact common to the members of
the class predominate over questions that may affect only
individual members.

169. The common questions of law and fact which control this
litigation predominate over any individual issues include, but
are not limited to:

(a)  Each member of the class was insured under a long-term
     disability benefits policy issued by the defendant;

(b)  Each member of the class was injured in an injury
     causing event;

(c)  Each member of the class was paid long-term disability
     benefits by the defendant, AETNA, as a result of
     injuries sustained in the injury causing event;

(d)  Each member of the class made a tort recovery arising
     from the injury causing event;

(e)  For each member of the class, the defendant, AETNA,
     made claim for reimbursement of long-term disability

benefits paid as a result of injuries sustained in the injury causing event;

(f)   For each member of the class, defendants AETNA and RAWLINGS' claims for reimbursement are improper under the policy and as a matter of law as:

- the reimbursement provisions of the Group Plan have been abrogated by the laws in the District of Columbia or one of the fifty (50) states of the United States;

- the defendant did not comply with the policy to not subrogate against the insureds' personal injury recovery;

- the defendant did not reduce its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the insureds incurred in their underlying litigation;

- the defendant did demanded and secured reimbursement before the insured had first been made whole and fully compensated for all of their damages and losses;

- the defend demanded and secured reimbursement even wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation;

170. As a result of Defendants' wrongful reimbursement demands and actions, Plaintiff and class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds, the loss  enjoyment of their funds, their losses in having to free their funds from

defendants' encumbrances, and payment of money from their tort recoveries to the defendant.

171. The plaintiff, JOANNE WOLFF, is a member of the class that she seeks to represent.

172. The claims of the plaintiff, JOANNE WOLFF, are typical of the claims of other members of the class which she purports to represent.

173. The plaintiff, JOANNE WOLFF, is well qualified to act as class representative.

174. The plaintiff, JOANNE WOLFF, will fairly and adequately protect the interests of the members of the class.

175. The plaintiff, JOANNE WOLFF, has no interest that is adverse or antagonistic to the interests of the members of the class.

176. The plaintiff, JOANNE WOLFF, is committed to prosecuting the class action.

177. The plaintiff, JOANNE WOLFF, has retained competent counsel who are experienced in litigation of this nature.

178. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

179. Joinder of all class matters is impracticable and the likelihood of individual class members prosecuting separate claims is remote due to the fact that the members of the class do not know that they are entitled to uninsured motorist coverage.

180. The expense and burden of individual litigation makes

it unlikely that a substantial member of the class members will individually seek redress for the wrongs done to them.

181. It is desirable for all concerned to concentrate the litigation in this particular forum for adjudication.

182. The plaintiff, JOANNE WOLFF, anticipates no difficulty in the management of this action as a class action.

183. The class action brought by the plaintiff, JOANNE WOLFF, is a convenient and proper forum in which to litigate the claim.

184. The prosecution of separate actions by individual class members would create the risk of bearing inconsistent determinations that could confront the defendants, AETNA and RAWLINGS, with incompatible standards of conduct and which could prejudice non-parties to any adjudication or substantially impede their ability to protect their own interests because of the overriding common questions of law and fact involved in the matter.

185. Prosecution of these claims as a class action will result in an orderly and expeditious administration of the claims and will foster economies of time, effort and expense.

186. Prosecution of these claims as a class action will contribute to uniformity of decisions concerning the practices of the defendants, AETNA and RAWLINGS.

## PLAINTIFF'S ALTERNATIVE STATE LAW CLAIMS
## AGAINST DEFENDANT RAWLINGS ONLY

### STATEMENT OF FACTS

187. The claims set forth herein are state law claims pled in the alternative against Defendant RAWLINGS only.

188. The present action involves disability benefits paid through insurance and not disability benefits paid through a self-funded plan.

189. The present action is brought to enforce Plaintiff's rights under state law only.

190. RAWLINGS is a third-party service provider that provides recovery services to AETNA.

191. The present action involves a claim seeking relief in connection with the actions of the defendant, RAWLINGS, in RAWLINGS' assertion of liens against the proceeds of Plaintiff's personal injury recovery where no such lien existed as a matter of law irrespective of any policy provision.

192. Plaintiff asserts herein state-law claims against RAWLINGS only, seeking declaratory relief, return of all monies recovered, and payment of extra-contractual bad faith damages in connection with the actions of the defendant, RAWLINGS, in asserting liens against the proceeds of Plaintiff's personal injury recovery where no such lien existed as a matter of law irrespective of any purported ERISA plan, policy, or policy provision.

193. At all times relevant hereto, the plaintiff, JOANNE WOLFF, was insured for disability benefits under a Group Disability Plan issued by AETNA.

194. The disability benefits were paid through insurance and were not paid by a self-funded plan.

195. The plaintiff, JOANNE WOLFF, sustained injury as a result of a motor vehicle accident which rendered her temporarily disabled.

196. As a result of her temporary disability, the plaintiff, JOANNE WOLFF, submitted a claim for short term disability benefits to AETNA to be paid under the fully-insured and not self-funded disability policy.

197. Pursuant to Pennsylvania law, it is unlawful to subrogate as to disability benefits paid by insurance relative to injuries sustained in motor vehicle accidents as a matter of law irrespective of any policy provision.

198. Notwithstanding the unlawfulness of subrogation for the disability benefits paid to JOANNE WOLFF was improper as a matter of law irrespective of any policy provision, Defendant RAWLINGS still asserted a claim for reimbursement of $50,164.50 as against the proceeds of WOLFF's personal injury recovery.

199. Notwithstanding the unlawfulness of subrogation for the disability benefits paid to JOANNE WOLFF being improper as a matter of law irrespective of any policy provision, Defendant RAWLINGS demanded reimbursement of $50,164.50 as against the

proceeds of WOLFF's personal injury recovery.

200. Defendant RAWLINGS intentionally, wantonly, willfully
and in reckless disregard of the legal rights of the plaintiff,
JOANNE WOLFF made a demand for reimbursement and recovery from
the proceeds of the Plaintiff's personal injury recovery of her
motor vehicle accident claim in violation of the dictates of the
Pennsylvania Motor Vehicle Financial Responsibility Law, 75
Pa.C.S.A. § 1701 et seq.

201. Defendant RAWLINGS made a claim for subrogation as
against Plaintiff's personal injury recovery from the motor
vehicle accident claim of the plaintiff, JOANNE WOLFF, with
knowledge that its assertion of the claim was in violation of
Pennsylvania law.

202. The defendant's actions for recovery and reimbursement
are part of a systemic scheme and plan of fraud designed to
illegally recover disability benefits as from the proceeds of the
personal injury recovery of motor vehicle accident claims of
insureds.

203. The defendant's actions for recovery and reimbursement
were part of a systemic plan to illegally recover disability
benefits as from the proceeds of insured's personal injury
recoveries for it own benefit, gain, and advantage.

204. Defendant RAWLINGS was compensated based on a
percentage of the amount of money Defendant RAWLINGS recovered in
subrogation from persons insured by AETNA under disability

policies.

205. Upon information and belief, it is averred that Defendant RAWLINGS was to be compensated at the rate of 20% of the money it recovered.

206. As a result, Defendant RAWLINGS had impetus and incentive to attempt to recover money through its reimbursement and recovery activities.

207. Further, Defendant RAWLINGS would be paid its commissions based on the amount recovered, irrespective of whether the amount recovered through its reimbursement and recovery activities was lawful or unlawful.

208. Every act of Defendant RAWLINGS in furtherance of its reimbursement and recovery activities was an illegal and wrongful act in and of itself and in its own right.

209. In consequence of Defendant RAWLINGS' actions in violation of Pennsylvania law, counsel for WOLFF had to refuse WOLFF the lawful payment, ownership and use of her funds by holding the disputed funds in escrow.

210. The plaintiff, JOANNE WOLFF, has been deprived or suffered impairment of the ownership, possession, and use of the proceeds of the tort settlement by reason of the illegal assertion of the claim for reimbursement of Defendant RAWLINGS in contravention of Pennsylvania law.

211. Defendant RAWLINGS has intentionally, wantonly, willfully and wrongfully asserted claims for reimbursement from

the proceeds of the personal injury recoveries of the Plaintiff from her motor vehicle accident recovery in violation of Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq as part of its systemic scheme and plan.

## STATUTORY PROVISIONS

212. Section 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law eliminates all rights of subrogation or reimbursement by all group plans, programs or other arrangements for payment of benefits in connection with injuries sustained in motor vehicle accidents.

213. Specifically, § 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law provides:

> "In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits)."

214. In addition to 75 Pa.C.S.A. §1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law, under the laws in the District of Columbia or one of the fifty (50) states of the United States, insurers are prohibited from asserting subrogation, liens and/or reimbursement against insureds' personal injury recoveries arising from personal injury claims.

215. In addition to 75 Pa.C.S.A. §1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law, under the laws in the District of Columbia or one of the fifty (50) states of the United States, insurers are prohibited from asserting lien, subrogation and/or reimbursement claims.

216. Accordingly, all claims for reimbursement or recovery from an insured's tort recovery are prohibited as a matter of law, completely irrespective of the terms of any insurance policy because any such right has been categorically abrogated by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq, the laws in the District of Columbia, or one of the fifty (50) states of the United States.

217. No interpretation of any policy or plan is necessary to determine that Defendant RAWLINGS' reimbursement demands were not permitted.

**CLASS ACTION ALLEGATIONS REGARDING PLAINTIFF'S ALTERNATIVE STATE LAW CLAIMS AGAINST DEFENDANT RAWLINGS**

218. The plaintiff, JOANNE WOLFF, brings these claims against Defendant RAWLINGS individually and on behalf of a class of similarly situated persons as a class action pursuant to the Federal Rules of Civil Procedure.

219. Defendant RAWLINGS has continuously, systematically and wrongfully asserted claims for reimbursement of long-term disability benefits or recovered monies from settlements or verdicts of motor vehicle claims where all such claims for

reimbursement and recovery are improper as a matter of law irrespective of any policy provision insofar as 75 Pa.C.S. § 1720 abrogates any claim for subrogation and/or reimbursement as recognized by the Supreme Court of Pennsylvania in *Tannenbaum v. Nationwide*, 992 A.2d 859 (Pa. 2010).

220. Further, Defendant RAWLINGS has continuously, systematically and wrongfully asserted claims for reimbursement of long-term disability benefits or recovered monies from settlements or verdicts where all such claims for reimbursement and recovery are improper as a matter of law, irrespective of any policy provision, as to each state whose law abrogates any claim for subrogation and/or reimbursement from tort recoveries.

221. Defendant RAWLINGS has continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement or wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from AETNA as a result of an injury causing event for the disability benefits AETNA had paid to insureds from the insureds' tort recoveries contrary to each state whose law abrogates any claim for subrogation and/or reimbursement from tort recoveries.

222. Defendant RAWLINGS has continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to

wrongfully assert claims for reimbursement, or wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event from the insureds' tort recoveries without reducing its reimbursement demand or recovery  by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to each state whose law abrogates any claim for subrogation and/or reimbursement from tort recoveries.

223. Defendant RAWLINGS has continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement or wrongfully securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event from the insureds' tort recoveries before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to each state whose law abrogates any claim for subrogation and/or reimbursement from tort recoveries.

224. Defendant RAWLINGS has continuously, systematically and wrongfully acted against all class plaintiff insureds by wrongfully asserting claims for reimbursement, continuing to wrongfully assert claims for reimbursement, or wrongfully

securing payment in reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event from the insureds' tort recoveries wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation.

225. As a result of Defendant RAWLINGS' actions as aforementioned, Plaintiff, JOANNE WOLFF, seeks to represent the class of persons:

A. Injured in motor vehicle accidents, received long-term disability benefits from AETNA, recovered money pursuant to a tort claim and/or settlement, were subject to Defendant RAWLINGS' claims for reimbursement and who suffered as a result harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to the defendant as a result of defendants' reimbursement demands and actions.

B. Injured in motor vehicle accidents, received long-term disability benefits from AETNA, recovered money pursuant to a tort claim and/or settlement, were subject to Defendant RAWLINGS' claims for reimbursement, paid Defendant RAWLINGS pursuant to its claims for reimbursement, and who suffered as a result harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to the defendant as a result of defendants' reimbursement demands and actions.

C.  Who were injured and received long-term disability benefits from the defendant as a result of an injury causing event and as against whom defendant sought or recovered reimbursement of long-term disability benefits it had paid to insureds from the insureds' tort recoveries contrary to

the law of each state abrogating any claim for subrogation
and/or reimbursement against the insureds' personal injury
recovery and who suffered harm and damages which include, by
way of exemplification and not in limitation, the loss of
use of money, the loss of interest on money, the loss of
possession of their funds; the loss  enjoyment of their
funds, their losses in having to free their funds from
defendants' encumbrances and payment of money from their
tort recoveries to the defendant as a result of defendants'
wrongful reimbursement demands and actions.

E. Who were injured and received long-term disability
benefits from the defendant as a result of an injury causing
event and as against whom defendant sought or recovered
reimbursement of long-term disability benefits it had paid
to insureds from the insureds' tort recoveries contrary to
the law of each state requiring Defendant to reduce its
reimbursement demand or recovery by the pro-rata share
attorney fees and expenses that the insureds incurred in
their underlying litigation and who suffered harm and
damages which include, by way of exemplification and not in
limitation, the loss of use of money, the loss of interest
on money, the loss of possession of their funds; the loss
enjoyment of their funds, their losses in having to free
their funds from defendants' encumbrances and payment of
money from their tort recoveries to the defendant as a
result of defendants' wrongful reimbursement demands and
actions.

F. Who were injured and received long-term disability
benefits from the defendant as a result of an injury causing
event and as against whom defendant sought or recovered
reimbursement of long-term disability benefits it had paid
to insureds from the insureds' tort recoveries contrary to
the law of each state abrogating any claim for subrogation
and/or reimbursement against the insureds' personal injury
recovery before the insured had first been made whole and
fully compensated for all of their damages and losses and
who suffered harm and damages which include, by way of
exemplification and not in limitation, the loss of use of
money, the loss of interest on money, the loss of possession
of their funds; the loss  enjoyment of their funds, their
losses in having to free their funds from defendants'
encumbrances and payment of money from their tort recoveries
to the defendant as a result of defendants' wrongful
reimbursement demands and actions.

226. The plaintiff, JOANNE WOLFF, reserves the right to

amend the definition and/or identify subclasses upon completion

of class discovery and/or certification.

227. It is believed, and therefore averred, that the class is so numerous as to allow certification.

228. It is believed and therefore averred that the total amount in dispute on behalf of the claims of similarly situated individuals does not exceed $5,000,000.00.

229. It is believed, and therefore averred, that the members of the putative class are so numerous that joinder of all members is impracticable.

230. Identification of the members of the class can be ascertained in and through discovery of the files and/or computer data base of Defendant RAWLINGS.

231. A class action is the only practicable means available for the members of the class to pursue the appropriate remedies under the policies of insurance in question and the law.

232. A class action is the only practicable means available to prevent Defendant RAWLINGS from engaging in the continuous and systematic illegal and unlawful conduct under state law and to remedy the harm created by this illegal and unlawful conduct.

233. The questions of law and fact are common to the members of the class which the plaintiff, JOANNE WOLFF, seeks to represent.

234. The questions of law and fact common to the members of the class predominate over questions that may affect only individual members.

235. The common questions of law and fact which control this litigation predominate over any individual issues include, but are not limited to:

(a) Each member of the class was insured under a long-term disability benefits policy issued by the defendant;

(b) Each member of the class was injured in an injury causing event;

(c) Each member of the class was paid long-term disability benefits by AETNA as a result of injuries sustained in the injury causing event;

(d) Each member of the class made a tort recovery arising from the injury causing event;

(e) For each member of the class, Defendant RAWLINGS made claim for reimbursement of long-term disability benefits paid as a result of injuries sustained in the injury causing event;

(f) For each member of the class, Defendant RAWLINGS' claims for reimbursement are improper as a matter of law as:

• state law abrogates any reimbursement or right of recovery from the class plaintiffs' tort recoveries;

• the defendant did not reduce its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the insureds incurred in their underlying litigation;

• the defendant demanded and secured reimbursement before the insured had first been made whole and fully compensated for all of their damages and losses;

• the defendant demanded and secured reimbursement even where the class plaintiff insureds had not

recovered disability losses or disability payments
in their underlying litigation;

236. As a result of Defendant RAWLINGS' wrongful
reimbursement demands and actions, Plaintiff and class members
suffered harm and damages which include, by way of
exemplification and not in limitation, the loss of use of money,
the loss of interest on money, the loss of possession of their
funds, the loss  enjoyment of their funds, their losses in having
to free their funds from defendants' encumbrances, and payment of
money from their tort recoveries to Defendant RAWLINGS.

237. The plaintiff, JOANNE WOLFF, is a member of the class
that she seeks to represent.

238. The claims of the plaintiff, JOANNE WOLFF, are typical
of the claims of other members of the class which she purports to
represent.

239. The plaintiff, JOANNE WOLFF, is well qualified to act
as class representative.

240. The plaintiff, JOANNE WOLFF, will fairly and adequately
protect the interests of the members of the class.

241. The plaintiff, JOANNE WOLFF, has no interest that is
adverse or antagonistic to the interests of the members of the
class.

242. The plaintiff, JOANNE WOLFF, is committed to
prosecuting the class action.

243. The plaintiff, JOANNE WOLFF, has retained competent

counsel who are experienced in litigation of this nature.

244. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

245. Joinder of all class matters is impracticable and the likelihood of individual class members prosecuting separate claims is remote due to the fact that the members of the class do not know that they are entitled to uninsured motorist coverage.

246. The expense and burden of individual litigation makes it unlikely that a substantial member of the class members will individually seek redress for the wrongs done to them.

247. It is desirable for all concerned to concentrate the litigation in this particular forum for adjudication.

248. The plaintiff, JOANNE WOLFF, anticipates no difficulty in the management of this action as a class action.

249. The class action brought by the plaintiff, JOANNE WOLFF, is a convenient and proper forum in which to litigate the claim.

250. The prosecution of separate actions by individual class members would create the risk of bearing inconsistent determinations that could confront the defendants, AETNA and RAWLINGS, with incompatible standards of conduct and which could prejudice non-parties to any adjudication or substantially impede their ability to protect their own interests because of the overriding common questions of law and fact involved in the matter.

251. Prosecution of these claims as a class action will result in an orderly and expeditious administration of the claims and will foster economies of time, effort and expense.

252. Prosecution of these claims as a class action will contribute to uniformity of decisions concerning the practices of Defendant RAWLINGS.

## COUNT VII
## (CONVERSION)

253. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

254. Plaintiff possessed property in the form of compensation received for injuries suffered.

255. Plaintiff had a right to immediate possession and use of the compensation they received for such injuries.

256. Defendant RAWLINGS' conduct in asserting liens and demands for repayment and in securing payment from Plaintiff's personal injury recoveries was an unlawful interference with Plaintiff's right to immediate possession and use of the compensation received.

257. As a result of Defendant RAWLINGS' unlawful interference with Plaintiff's compensation, Plaintiff is entitled to declaratory, injunctive and monetary relief as set forth hereinafter.

## COUNT VIII
### (MONEY HAD AND RECEIVED)

258. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

259. As a result of Defendant RAWLINGS' repayment demands from Plaintiff's and other insureds' personal injury settlement recoveries, Defendant RAWLINGS received money rightfully and lawfully belonging to Plaintiff and other insureds.

260. As a result of Defendant RAWLINGS having received money pursuant to their repayment demands from Plaintiff's and other insureds' personal injury settlement recoveries, Defendant RAWLINGS benefitted by retaining a portion of Plaintiff's personal injury recovery as fees for their reimbursement and recovery services.

261. Under principles of good conscience, Defendant RAWLINGS should not be allowed to retain the money that it received pursuant to its repayment demands from Plaintiff's and other injured insureds' personal injury settlement recoveries.

## COUNT IX
### (INTENTIONAL MISREPRESENTATION)

262. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

263. Defendant RAWLINGS represented to Plaintiff that it was entitled to a lien, subrogation and/or reimbursement from

Plaintiff's personal injury recovery.

264. At all times relevant hereto, Defendant RAWLINGS knew, or should have known, that Pennsylvania law prohibits liens, subrogation claims and/or reimbursement demands by health insurers.

265. Defendant RAWLINGS' wrongful assertion of a lien, subrogation claim and/or repayment demand as against Plaintiff's personal injury recovery was an intentional misrepresentation of fact.

266. Plaintiff relied to her detriment on Defendant RAWLINGS' intentional misrepresentation of fact contained in its lien notices and subrogation and repayment demands.

267. As a direct and proximate result of Defendant RAWLINGS' misrepresentations, Plaintiff has suffered injuries in the form of economic losses.

### COUNT X
### (NEGLIGENT MISREPRESENTATION)

268. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

269. Pennsylvania law's prohibition of Defendant RAWLINGS' lien, subrogation, and/or reimbursement claim was a material fact to Plaintiff at the time that Defendant RAWLINGS made its demand for reimbursement.

270. Defendant RAWLINGS, acting as aforesaid, negligently and recklessly misrepresented to Plaintiff that it was entitled to a lien, subrogation and/or reimbursement from Plaintiff's personal injury recovery.

271. As a natural and proximate result of Defendant's material misrepresentations, Plaintiff relied on said misrepresentations concerning Defendant RAWLINGS' right to reimbursement, including but not limited being manipulated into paying Defendant RAWLINGS pursuant to its demand for reimbursement.

272. Defendant RAWLINGS made such material misrepresentations with a reckless disregard of the rights of Plaintiffs.

273. Defendant RAWLINGS knew and/or should have known that its representations were false and misleading.

274. Plaintiff relied to her detriment on Defendant RAWLINGS' intentional misrepresentation of fact contained in its lien notices and subrogation and repayment demands.

275. As a direct and proximate result of Defendant RAWLINGS' misrepresentations, Plaintiff has suffered injuries in the form of economic losses.

276. Defendant RAWLINGS' negligent and reckless acts and omissions towards Plaintiff were known to management and were wanton and outrageous.

## COUNT XI
### (UNJUST ENRICHMENT)

277. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

278. As a result of the wrongful collection of monies by Defendant RAWLINGS, Defendant RAWLINGS has benefitted at the expense of Plaintiff, as well as other persons similarly situated.

279. As a result of the wrongful collection of monies by Defendant RAWLINGS, Defendant RAWLINGS has been enriched at the expense of Plaintiff as well as other persons similarly situated.

280. As a result of the wrongful collection of monies by Defendant RAWLINGS, Defendant RAWLINGS' enrichment at the expense of Plaintiff and other persons similarly situated, was unjust.

## COUNT XII
### (THEFT BY DECEPTION)

281. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

282. Defendant RAWLINGS intentionally obtained the property of the Plaintiffs by deception.

283. Defendant RAWLINGS created or reinforced a false impression, including a false impression as to law, value, intention or state of mind.

284. Defendant RAWLINGS failed to correct a false impression which it previously created or reinforced, or which Defendant RAWLINGS knew to be influencing Plaintiff.

285. Plaintiff asserts this claim as a private cause of action as a victim of the conduct that is specifically prescribed to be illegal by this Act.

286. Alternatively, Plaintiff also pleads this statute as establishing the standard of conduct owed by Defendant RAWLINGS to Plaintiff and points to this not as a private cause of action but as proof of the standard of conduct.

## COUNT XIII
## (ATTEMPTED THEFT)

287. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

288. Defendant RAWLINGS attempted, with intent to commit a crime, an act which constituted a substantial step toward the

289. Plaintiff asserts this claim as a private cause of action as a victim of the conduct that is specifically prescribed to be illegal by this Act.

290. Alternatively, Plaintiff also pleads this statute as establishing the standard of conduct owed by Defendant RAWLINGS to Plaintiff and points to this not as a private cause of action but as proof of the standard of conduct.

## COUNT XIV
### (VIOLATIONS OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW)

291. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

292. Section 3 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P. S. § 201-3, provides, in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by sub clauses (i) through (xxi) of clause (4) of section 2 of this act ... are hereby declared unlawful.

293. Section 2 of the UTPCPL, 73 P. S. § 201-2, provides, in pertinent part: "Unfair methods of competition" and "Unfair or deceptive acts or practices" mean any one or more of the following:

> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

294. Defendant RAWLINGS committed prohibited unfair and deceptive actions and practices as defined in the UTPCPL in connection with the handling of disability claims and the assertion of liens against the proceeds of Plaintiff's personal injury recovery where no such lien exists as a matter of law irrespective of any policy provision by:

> a. Engaging in deceptive acts and conduct which created a likelihood of confusion or of misunderstanding, including but not limited to, lying to Plaintiff about

the Plaintiff's obligation to repay the benefits as a
matter of Pennsylvania law;

b. Engaging in fraudulent acts and conduct which
created a likelihood of confusion or of
misunderstanding, including but not limited to, lying
to Plaintiff about the Plaintiff's obligation to repay
the benefits as a matter of Pennsylvania law.

295. Plaintiff justifiably relied upon Defendant RAWLINGS'
deceptive acts and conduct, including but not limited to, lying
to Plaintiff about the Plaintiff's obligation to repay the
benefits as a matter of Pennsylvania law.

296. As a direct and proximate result of Defendant's
prohibited acts and omissions under the UTPCPL, Plaintiff has
suffered ascertainable losses for which she may recover under the
Act.

### COUNT XV
### (PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT)

297. Plaintiff, on behalf of herself and other persons
similarly situated, repeats and re-alleges the allegations of the
preceding paragraphs as if fully restated herein.

298. Pursuant to the Pennsylvania Fair Credit Extension
Uniformity Act 73 P.S. §2270.4(a), the law provides in relevant
part that the following acts are unlawful:

A debt collector may not use any false, deceptive,
or misleading representation or means in connection
with the collection of any debt. Without limiting the
general application of the foregoing, the following
conduct is a violation of this section:

(2) The false representation of —
(A) the character, amount, or legal status of any debt;

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

299. That Plaintiff had secured her personal injury recovery at the time of certain of defendant's debt collection actions.

300. That Plaintiff's personal injury recovery was held in escrow by Plaintiff's attorney at the time Defendant RAWLINGS sent letters, made its reimbursement demands, and undertook its debt collection actions.

301. Defendant RAWLINGS committed prohibited debt collection activities as defined in the PFCEUA in connection with its reimbursement demands against the Plaintiff's personal injury recoveries where no such lien exists under Pennsylvania law, including, but not limited to:

a. Engaging in false, deceptive or misleading representations in the collection of a debt by its false representation of the amount of debt owed by

Plaintiff and by the false representation of the legal status of the debt;

b.   Using false representation or deceptive means to collect or attempt to collect a debt by its false representation that Plaintiff was obligated to reimburse AETNA and RAWLINGS on a lien that it did not lawfully have as a matter of Pennsylvania law;

302. As a direct and proximate result of Defendant's prohibited acts and omissions under the PFCEUA, Plaintiff has suffered losses for which she may recover under the Act.

**RELIEF DEMANDED**

303. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

WHEREFORE, Plaintiff, JOANNE WOLFF, individually and on behalf of a Class of Similarly Situated Persons, respectfully requests that this Court enter an Order:

A. Determining that this action is a proper class action, certifying the named Plaintiffs as class representatives for the classes alleged herein and Plaintiffs' counsel as Class Counsel;

B. Awarding judgment as to Count I in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendants AETNA and RAWLINGS for all harms and damages arising from the unlawful lien and repayment actions of Defendants AETNA and RAWLINGS, including interest, counsel fees, and costs.

C. Awarding judgment as to Count II in favor of named
Plaintiff and each Other Similarly Situated Individual Declaring
that Defendants AETNA AND RAWLINGS:

    (1)   Have no right of reimbursement from the proceeds of tort recovery of the injury causing event in connection with the long-term disability benefits paid to the plaintiff, JOANNE WOLFF, in connection with injuries sustained in the September 30, 2015 injury causing event;

    (2)   Have no right to reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the disability benefits it had paid to insureds from the insureds' tort recoveries contrary to the policies and law;

    (3)   Have no right to reimbursement wherein the defendant did not comply with the policy to not subrogate against the class plaintiff insureds' personal injury recovery for pain and suffering;

    (4)   Have no right to reimbursement without reducing its reimbursement demand or recovery  by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to the policies and law;

    (5)   Have no right to reimbursement before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to law;

    (6)   Have no right to reimbursement wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation.

    (7)   Awarding interest, counsel fees and costs;

    (8)   Such other relief as the Court deems appropriate.

D. Awarding judgment as to Count III in favor of named
Plaintiff and each Other Similarly Situated Individual and
against Defendants AETNA AND RAWLINGS for:

(1)  All damages or permissible equitable or permissible
     monetary relief for benefits in favor of each named
     Plaintiff and each Other Similarly Situated Individual;

(2)  All damages or permissible equitable or permissible
     monetary relief for benefits in favor of each named
     Plaintiff and each Other Similarly Situated Individual
     in recovery of benefits due under the Plan and in
     enforcement of rights under the Plan;

(3)  All affirmative and negative injunctive and other
     permissible equitable or monetary relief for benefits
     in order to accord to the Plaintiff and each Other
     Similarly Situated Individual the full and complete
     measure of benefits which Plaintiff and each Other
     Similarly Situated Individual entitled to under the
     Plan and to remedy Defendants' breaches alleged above,
     as provided by any and all applicable provisions of
     ERISA;

(4)  Preliminary and permanent relief, including but not
     limited to enjoining Defendants' actions complained of
     herein;

(5)  Relief under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1)
     to recover benefits due to him under the terms of her
     plan, to enforce her rights under the terms of the
     plan, or to clarify her rights to future benefits under
     the terms of the plan;

(6)  All harms and damages suffered by WOLFF and each Other
     Similarly Situated Individual which include, by way of
     exemplification and not in limitation, the loss of use
     of money and the loss of interest on money, arising
     from Defendants' actions;

(7)  Judgement declaring the contractual liens invalid as
     against personal injury recoveries and a judgment
     reimbursing all losses sustained by the Plaintiffs for
     all damages each sustained by the loss of use and
     possession of their funds; loss use and enjoyment of
     their funds and losses suffered in having to free their
     funds from defendants' encumbrances;

(8)  Judgment directing the return of all monies of which
     the named Plaintiff and each other Similarly Situated
     Individual have been dispossessed as a result of the
     reimbursement demands and actions by the defendant;

(9)  All harms and damages Plaintiffs and Class members have

sustained as a result of Defendants' conduct as may be permitted under the relevant statutes and law;

(10)   All harms and damages arising from the improper reimbursement actions of the defendant;

(11)   The or release of all monies which have been taken, liened, charged, received or encumbered with such monies held, paid or otherwise liened, charged or encumbered be returned or released free of all claims, charges, holds, claims, demands, interest, liens, pretensions;

(12)   Judgment equal to the sum of the lien, reimbursement claim or reimbursement asserted by Defendants and any other damages incurred, related to such lien, reimbursement claim and/or repayment demand which judgement to be satisfied from monies recovered, encumbered, impleaded, held or taken;

(13)   Reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. §1132(g) the common fund doctrine, and other applicable law;

(14)   Taxable costs pursuant to 29 U.S.C. § 1132(g);

(15)   Interest on these amounts, as provided by law;

(16)   Such other and further relief as this Court may deem just and proper.

E. Awarding judgment as to Count IV in favor of named

Plaintiff and each Other Similarly Situated Individual and

against Defendant AETNA for:

(1)   All damages and permissible equitable or permissible monetary relief for defendant's breach of its fiduciary duties in favor of each named Plaintiff and each Other Similarly Situated Individual;

(2)   All permissible equitable or permissible monetary relief to remedy, redress, compensate, cease, prevent and atone for defendant's breach of its fiduciary duties in favor of each named Plaintiff and each Other Similarly Situated Individual;

(3) Actual monetary damages to make good to the Plaintiffs for each and every type and measure of loss resulting

from the breaches of fiduciary duties alleged above;

(4) All relief and remedy to make good to the Plaintiffs for each and every type and measure of loss resulting from the breaches of fiduciary duties alleged above;

(5) Affirmative and negative injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §409(a) and §502(a), 29 U.S.C. §1104(a) and §1132(a);

(6) Affirmative and negative injunctive and other appropriate equitable relief to prevent breaches of fiduciary duty in the future;

(7) Injunction on behalf of WOLFF and ERISA beneficiaries to enjoin AETNAs's reimbursement actions and practices that violate ERISA and the Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(a);

(8) Disclosure and notice to WOLFF and the ERISA beneficiaries as to whom AETNA asserted subrogation or received subrogation repayment that AETNA was not entitled to subrogation as set forth herein.

(9) Reasonable attorney fees and expenses, as provided by ERISA §502(g), 29 U.S.C. §1132(g), the common fund doctrine, and other applicable law;

(10) Taxable costs pursuant to 29 U.S.C. §1132(g);

(11) Interest on these amounts, as provided by law;

(12) Surcharge;

(13) Monetary damages against a fiduciary;

(14) All damages Plaintiff and Class members have sustained as a result of Defendants' breach of its Fiduciary Duty as may be permitted under the relevant statutes and law;

(15) Such other and further relief as this Court may deem just and proper.

F. Awarding judgment as to Count V in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant AETNA for:

(1) All damages and permissible equitable or permissible
    monetary relief for defendant's breach of its fiduciary
    duties in favor of each named Plaintiff and each Other
    Similarly Situated Individual;

(2) All permissible equitable or permissible monetary relief
    to remedy, redress, compensate, cease, prevent and atone
    for defendant's breach of its fiduciary duties in favor
    of each named Plaintiff and each Other Similarly
    Situated Individual;

(3) Actual monetary damages to make good to the Plaintiffs
    for each and every type and measure of loss resulting
    from the breaches of fiduciary duties alleged above;

(4) All relief and remedy to make good to the Plaintiffs
    for each and every type and measure of loss resulting
    from the breaches of fiduciary duties alleged above;

(5) Affirmative and negative injunctive and other
    appropriate equitable relief to remedy the breaches
    alleged above, as provided by ERISA §404(a) and §502(a),
    29 U.S.C. §1104(a) and §1132(a);

(6) Injunction on behalf of WOLFF and ERISA beneficiaries
    to enjoin AETNAs's subrogation actions and practices
    that violate ERISA and the Employee Welfare Benefit Plan
    (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(a);

(7) Disclosure and notice to WOLFF and the ERISA
    beneficiaries as to whom AETNA asserted subrogation or
    received subrogation repayment that AETNA was not
    entitled to subrogation as set forth herein.

(8) All harms and damages suffered by WOLFF and each Other
    Similarly Situated Individual which include, by way of
    exemplification and not in limitation, the loss of use
    of money and the loss of interest on money, arising from
    AETNA's actions;

(9) Judgement declaring the contractual liens invalid as
    against personal injury recoveries and a judgment
    reimbursing all losses sustained by the Plaintiffs for
    all damages each sustained by the loss of use and
    possession of their funds; loss use and enjoyment of
    their funds and losses suffered in having to free their
    funds from defendants' encumbrances;

(10) Judgment directing the return of all monies of which the
     named Plaintiff and each other Similarly Situated

Individual have been dispossessed as a result of the subrogation demands and actions by the defendant;

(11) All harms and damages Plaintiffs and Class members have sustained as a result of Defendants' conduct as may be permitted under the relevant statutes and law;

(12) All harms and damages arising from the improper subrogation actions of the defendant;

(13) The or release of all monies which have been taken, liened, charged, received or encumbered with such monies held, paid or otherwise liened, charged or encumbered be returned or released free of all claims, charges, holds, claims, demands, interest, liens, pretensions;

(14) Judgment equal to the sum of the lien, subrogation claim or reimbursement asserted by Defendants and any other damages incurred, related to such lien, subrogation claim and/or repayment demand which judgement to be satisfied from monies recovered, encumbered, impleaded, held or taken;

(15) Reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. §1132(g) the common fund doctrine, and other applicable law;

(16) Taxable costs pursuant to 29 U.S.C. § 1132(g);

(17) interest on these amounts, as provided by law;

(18) Monetary damages against a fiduciary;

(19) Such other and further relief as this Court may deem just and proper.

G. Awarding judgment as to Count VI in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant RAWLINGS for all harms and damages arising from the unlawful lien and repayment actions of Defendant RAWLINGS, including interest, counsel fees, costs, and punitive damages.

H. Awarding judgment as to Count VII in favor of named Plaintiff and each Other Similarly Situated Individual and

against Defendant RAWLINGS for all harms and damages arising from the unlawful lien and repayment actions of Defendant RAWLINGS, including interest, counsel fees, costs, and punitive damages.

I. Awarding judgment as to Count VIII in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant RAWLINGS for all harms and damages arising from the unlawful lien and repayment actions of Defendant RAWLINGS, including interest, counsel fees, costs, and punitive damages.

J. Awarding judgment as to Count IX in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant RAWLINGS for:

    (1)  Damages proximately caused by the misrepresentations of Defendant RAWLINGS;

    (2)  Interest on the amount of Plaintiff's claim improperly withheld;

    (3)  Punitive damages;

    (4)  Such further relief as allowed by the Court or available as remedy.

K. Awarding judgment as to Count X in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant RAWLINGS for:

    (1)  Damages proximately caused by the misrepresentations of Defendant RAWLINGS;

    (2)  Interest on the amount of Plaintiff's claim improperly withheld;

    (3)  Punitive damages;

    (4)  Such further relief as allowed by the Court or available as remedy.

L. Awarding judgment as to Count XI in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant RAWLINGS for:

    (1) the return of all monies of which the named Plaintiff and each other Similarly Situated Individual have been dispossessed as a result of the subrogation demands and actions by the defendant;

    (2) All harms and damages Plaintiffs and Class members have sustained as a result of Defendants' conduct as may be permitted under the relevant statutes and law;

    (3) Such further relief as allowed by the Court or available as remedy.

M. Awarding judgment as to Count XII in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant RAWLINGS for:

    (1) damages in the amount of the liens and/or subrogation and/or reimbursement that Defendant RAWLINGS collected from Plaintiff and each Other Similarly Situated Individual;

    (2) actual damages;

    (3) punitive damages;

    (4) attorney fees;

    (5) costs;

    (6) prejudgment and post-judgment interest;

    (7) such further relief as allowed by the Court or available as remedy.

N. Awarding judgment as to Count XIII in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant RAWLINGS for:

    (1) damages in the amount of the liens and/or subrogation and/or reimbursement that Defendant RAWLINGS collected

from Plaintiff and each Other Similarly Situated
Individual;

(2)  actual damages;

(3)  punitive damages;

(4)  attorney fees;

(5)  costs;

(6)  prejudgment and post-judgment interest;

(7)  such further relief as allowed by the Court or
available as remedy.

O. Awarding judgment as to Count XIV in favor of named
Plaintiff and each Other Similarly Situated Individual and
against Defendant RAWLINGS for:

(1)  Either the amount of actual damages sustained or the
sum of $100, which ever is greater;

(2)  Attorney fees, expert fees and costs;

(3)  Treble damages against the defendant;

(4)  Such further relief as allowed by the Court.

P. Awarding judgment as to Count XV in favor of named
Plaintiff and each Other Similarly Situated Individual and
against Defendant RAWLINGS for:

(1)  Either the amount of actual damages sustained or the
sum of $100, which ever is greater;

(2)  Attorney fees, expert fees and costs;

(3)  Treble damages against the defendant;

(4)  Such further relief as allowed by the Court.

Q. Awarding judgment in favor of named Plaintiff and each
Other Similarly Situated Individuals for all damages, remedies

and recourse as may be permitted under law arising from or related to Defendants' conduct;

R. Judgment in favor of named Plaintiff and each other Similarly Situated Individual, for all lawful damages, remedies and recourse, arising from the unlawful lien, subrogation and/or repayment collections and disclosure inaccuracies of the defendant;

S. Judgment in favor of the named Plaintiff and each other Similarly Situated Individual, equal to the sum of the lien, subrogation claim or reimbursement asserted by Defendants and any other damages incurred, related to such lien, subrogation claim and/or repayment demand which judgement to be satisfied from monies recovered, encumbered, impleaded, held or taken;

T. Judgement ordering defendant to return or release all monies which have been taken, liened, charged, received or, encumbered and that such monies held, paid or otherwise encumbered be returned or released free of all claims, charges, holds, claims, demands, interest, liens, pretensions.


BY:  _____/s/_____
CHARLES KANNEBECKER, Esquire
PA Attorney I.D. #58612
104 W. High Street
Milford, PA  18337
Phone:  (570) 296-6471

**EXHIBIT A**

# BENEFIT PLAN

**Prepared Exclusively For
BANK OF AMERICA CORPORATION**

**Long Term Disability - Core and Buy Up
Plans**

### What Your Plan Covers and How Benefits are Paid

**Aetna Life Insurance Company
Booklet-Certificate**

This Booklet-Certificate is part of the Group Insurance Policy between **Aetna** Life Insurance Company and the Policyholder



# Table of Contents

Schedule of Benefits............................................................................................ Issued with Your Booklet

Preface ....................................................1
Coverage for You ....................................2
   Long Term Disability Coverage
**Eligibility, Enrollment and Effective Date of Your**
**Coverage ............................................3**
   Who Is Eligible......................................3
      Employees
   How and When to Enroll........................4
      Enrollment
   When Your Coverage Begins..................4
      Your Effective Date of Coverage
   When Your Coverage Begins..................4
      Your Effective Date of Coverage
**Your Disability Plan.............................5**
   Long Term (LTD) Disability Coverage ...............5
      Long Term Disability Benefit Eligibility
      When Benefits Are Payable
      Premium Reinstatement
      Test of Disability
      Benefits Payable
      Adjustments to Your Benefits If You Work While
      Disabled
      When Long Term Disability Benefit Eligibility
      Ends
      Limitations Which Apply to Long Term
      Disability Coverage
      Pre-existing Conditions
      Approved Rehabilitation Program
      Other Income Benefits
      Other Income Benefits That Do Not Reduce
      Monthly Benefits
      What Happens When Other Income Benefits
      Increase
      How Aetna Applies Other Income Benefits

      Aetna Requires Proof of Other Income
      Exclusions That Apply to Long Term Disability
      How Prior Coverage Affects Coverage Under
      This Plan
      Approved Rehabilitation Program
   Additional Benefits .................................13
      Survivor Benefit
      Child Care Benefit
**When Coverage Ends........................ 14**
      When Coverage Ends For Employees
**Extension of Benefits........................ 15**
      Coverage for Long Term Disability Benefits
**General Provisions ........................... 16**
   Physical Examinations............................16
   Legal Action .........................................16
   Confidentiality.......................................16
   Additional Provisions ............................16
   Assignments .........................................16
   Misstatements .......................................16
   Reporting of Claims...............................17
   Payment of Benefits...............................17
   Recovery of Overpayments ....................17
      Long Term Disability Coverage
   Contract Not a Substitute for Workers'
   Compensation Insurance .......................18
   Contacting Aetna...................................18
**Glossary * .........................................19**
**Long Term Disability Coverage ...................... 2**
   Schedule of Long Term Disability Benefits.........2
      Benefits Actually Payable
      Maximum Benefit Duration
*Defines the Terms Shown in Bold Type in the Text of This Document.

# Preface *(GR-9N-02-005-02 NC)*

Aetna Life Insurance Company (ALIC) is pleased to provide you with this *Booklet-Certificate*. The plan is underwritten by Aetna Life Insurance Company of Hartford, Connecticut (referred to as **Aetna**).

This *Booklet-Certificate* is part of the *Group Insurance Policy* between Aetna Life Insurance Company and the Policyholder. The *Group Insurance Policy* determines the terms and conditions of coverage. **Aetna** agrees with the Policyholder to provide coverage in accordance with the conditions, rights, and privileges as set forth in this *Booklet-Certificate*. The Policyholder selects the products and benefit levels under the plan. A person covered under this plan and their covered dependents are subject to all the conditions and provisions of the *Group Insurance Policy*.

The *Booklet-Certificate* describes the rights and obligations of you and **Aetna**, what the plan covers and how benefits are paid for that coverage. It is your responsibility to understand the terms and conditions in this *Booklet-Certificate*. Your *Booklet-Certificate* includes the *Schedule of Benefits* and any amendments or riders.

If you become insured, this *Booklet-Certificate* becomes your *Certificate of Coverage* under the *Group Insurance Policy*, and it replaces and supersedes all certificates describing similar coverage that **Aetna** previously issued to you.

**IMPORTANT NOTICE**
**READ YOUR BOOKLET-CERTIFICATE CAREFULLY.**

Group Policyholder:          Bank of America Corporation
Group Policy Number:         GP-811383
Effective Date:              January 1, 2012
Issue Date:                  January 22, 2015
Booklet-Certificate Number:  1

Mark T. Bertolini
Chairman, Chief Executive Officer and President

Aetna Life Insurance Company
    (A Stock Company)

# Coverage for You

## Long Term Disability Coverage

The plan may pay to you a portion of your income earnings as a monthly benefit for a period of long term disability caused by an **illness** or **injury** that occurs while your coverage is in effect.

Coverage under this plan is occupational and non-occupational. **Occupational injuries** and **illnesses** and **non-occupational injuries** and **illnesses** are covered. Conditions that are related to pregnancy may be covered under this plan.

Please refer to the *Long Term Disability* section for more details about your coverage.

# Eligibility, Enrollment and Effective Date of Your Coverage

**Who Is Eligible**

**How and When to Enroll**

**When Your Coverage Begins**

Throughout this section you will find information on who can be covered under the plan, how to enroll and what to do when there is a change in your life that affects coverage. In this section, "you", "your" and "yours" means the employee to whom this *Booklet-Certificate* is issued and whose insurance is in force under the terms of this group insurance policy.

## Who Is Eligible

Your employer determines the criteria that are used to define the eligible class for coverage under this plan. Such criteria are based solely upon the conditions related to your employment. **Aetna** will rely upon the representation of the employer as to your eligibility for coverage under this plan and as to any fact concerning such eligibility.

### Employees

You are eligible for coverage under this plan if you are **actively at work** and:

- You are in an eligible class, as defined below;
- You have completed any probationary period required by the policyholder; and
- You have reached your eligibility date.

In addition, to be in an eligible class you must be:

- scheduled to work on a regular basis at least 20 hours per week during your Employer's work week; and
- working within the United States, or assigned to work outside the United States for less than 2 years, you must remain on the United States payroll.

### Probationary Period *(GR-9N-29-005-02 NC)*

Once you enter an eligible class, you will need to complete the probationary period before your coverage under this plan begins.

### Determining When You Become Eligible

You become eligible for the plan on your eligibility date, which is determined as follows.

#### On the Effective Date of the Plan

If you are in an eligible class on the effective date of this plan, your coverage eligibility date is the effective date of the plan.

#### After the Effective Date of the Plan

If you are hired or enter an eligible class after the effective date of this plan, your coverage eligibility date is the first day of the month coinciding with or next following the date you complete one month of continuous service with your employer. This is defined as the probationary period. If you had already satisfied the probationary period before you entered the eligible class, your coverage eligibility date is the date you enter the eligible class.

## How and When to Enroll <span style="font-size:smaller">(GR-9N-29-015-02 NC)</span>

### Enrollment

You will be provided with plan benefit and enrollment information when you first become eligible to enroll. You will need to enroll in a manner determined by **Aetna** and your employer. To complete the enrollment process, you will need to provide all requested information.

# When Your Coverage Begins <span style="font-size:smaller">(GR-9N-29-015-02 NC) (GR-9N 29-025-02)</span>

### *With regard to those enrolled in Contributory Plans:*

### Your Effective Date of Coverage

If you have met all the eligibility requirements, your coverage takes effect on the later of:

- The date you are eligible for coverage; and
- The date you return your completed enrollment information; and
- Your application is received and approved in writing by **Aetna**; and
- The date your required contribution is received by **Aetna**.

**Important Notice:**
You must pay the required contribution in full.

**Active Work Rule:**
If you happen to be ill or injured and away from work on the date your coverage would take effect, the coverage will not take effect until you return to active full-time work for one full day.

This rule also applies to an increase in your coverage.

# When Your Coverage Begins <span style="font-size:smaller">(GR-9N 29-025-02) (GR-9N-29-015-02 NC)</span>

### *With regard to those enrolled in Non-Contributory Plans:*

### Your Effective Date of Coverage

Your coverage takes effect on:

- The date you are eligible for coverage

**Active Work Rule:**
If you happen to be ill or injured and away from work on the date your coverage would take effect, the coverage will not take effect until you return to active full-time work for one full day.

This rule also applies to an increase in your coverage.

# Your Disability Plan

*(GR-9N 06-005 02)  (GR-9N 06-010 02)*

| |
|---|
| **Benefit Eligibility** |
| **Benefits Payable** |
| **Successive Disabilities** |

**Important Note**

As used in this section of the *Booklet-Certificate*, "you" and "your" refers to a covered employee of the employer sponsoring this plan.

The disability plan provides you with a source of income if you should become disabled because of an illness, **injury** or disabling pregnancy-related condition while covered under this plan.

# Long Term Disability (LTD) Coverage

Long term disability (LTD) coverage will pay a monthly benefit if you are disabled and unable to work because of:

- An **illness**;
- An **injury**; or
- A disabling pregnancy-related condition.

## Long Term Disability Benefit Eligibility

You will be considered disabled while covered under this Long Term Disability (LTD) Plan on the first day that you are disabled as a direct result of a significant change in your physical or mental conditions and you meet all of the following requirements:

- You must be covered by the plan at the time you become disabled; and
- You must be under the regular care of a **physician**. You will be considered under the care of a **physician** up to 31 days before you have been seen and treated in person by a **physician** for the **illness**, **injury** or pregnancy-related condition that caused the disability; and
- You must be disabled by the **illness**, **injury**, or disabling pregnancy-related condition as determined by **Aetna** (see *Test of Disability*).

## When Benefits Are Payable

Once you meet the LTD **test of disability**, your long term disability benefits will be payable after the Elimination Period, if any, is over. No benefit is payable for or during the Elimination Period. The Elimination Period is the amount of time you must be disabled before benefits start. The Elimination Period is shown in the *Schedule of Benefits*.

Your Long Term Disability benefits will be payable for as long as your period of disability benefit eligibility continues but not beyond the end of the Maximum Monthly Benefit Period. The Elimination Period and the Maximum Monthly Benefit Period are shown in the *Schedule of Benefits*.

## Premium Reinstatement

If you are eligible to continue coverage, the employer's premium payments may be resumed on the first due date following the end of a period of disability during which premiums were waived.

## Test of Disability *(GR-9N 06-010 02)*

From the date that you first became disabled and until monthly benefits are payable for 18 months you meet the test of disability on any day that:

- You cannot perform the **material duties** of your **own occupation** solely because of an **illness**, **injury** or disabling pregnancy-related condition; and
- Your earnings are 80% or less of your **adjusted predisability earnings**.

*After the first 18 months of your disability* that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any **reasonable occupation** solely because of an **illness**, **injury** or disabling pregnancy-related condition.

**Important Note**

The loss of a professional or occupational license or certification that is required by your **own occupation** does not mean you meet the test of disability. You must meet the plan's test of disability to be considered disabled.

## Benefits Payable *(GR-9N 06-015 02)*

Benefits are paid on a monthly basis. The benefit amount is based on your **predisability earnings**, up to the maximum monthly benefit shown in the *Schedule of Benefits.*

To calculate your monthly long term disability benefit, multiply:

- Your Monthly **predisability earnings**; times
- The Benefit Percentage shown in the *Schedule of Benefits.*

The LTD benefit payable will be the lesser of:

- The monthly LTD benefit; and
- The maximum monthly benefit.

Any other income benefits you are eligible for may affect your benefits from this plan. The amount of the other income benefits will be subtracted from your monthly LTD benefit for which you are eligible. If the result is less than the minimum monthly benefit shown in the *Schedule of Benefits*, the plan will pay an amount equal to the minimum monthly benefit. Please refer to the *Other Income Benefits* section of this Booklet-Certificate for details as to which other income benefits may reduce your monthly LTD benefit.

## Adjustments to Your Benefits If You Work While Disabled *(GR-9N 06-020 02)*

Your long term disability monthly benefit may be reduced if, while monthly benefits are payable, you receive income from:

- Your employer or any other employer, employment or self-employment; or
- Any occupation for compensation or profit;

which is more than 20% of your **adjusted predisability earnings.** The monthly benefit adjustment is calculated as follows:

During the first 31 days months that you have such income, the benefit will be reduced only to the extent the sum of the amount of that income and the monthly benefit payable, without any reduction for other income benefits, exceeds 100% of your **adjusted predisability earnings**.

Thereafter,

The adjusted monthly benefit will be calculated by using the following formula:

(A divided by B), times C, where:

A = Your **adjusted predisability earnings**, minus the income you receive while disabled
B = Your **adjusted predisability earnings**
C = The monthly benefit payable.

Income means income you earn, while disabled and working, from your employer or any other employer. However, any income earned by working for another employer will be considered income only if you:

- Become employed after the date your disability started; or
- Increase the number of hours you work, or the number or type of duties you perform for another employer after the date of your disability started. In that event, only the amount of the income increase will be taken into consideration for the benefit adjustment.

## When Long Term Disability Benefit Eligibility Ends *(GR-9N 06-025 01 NC)*

You will no longer be considered as disabled nor eligible for long term monthly benefits when the first of the following occurs:

- The date you no longer meet the LTD test of disability, as determined by **Aetna**.
- The date you are no longer under the regular care of a **physician**. If Aetna and your **physician** determine that you have reached your maximum point of recovery, you are no longer required to be under the care of your **physician**. Aetna will require that you submit proof of your continuing disability, on an annual basis. This proof may require that you submit to an examination by a **physician**. If Aetna determines that such an exam is required as proof of your continuing disability, it will be at Aetna's expense.
- The date **Aetna** finds you have withheld information about working, or being able to work, at a **reasonable occupation**.
- The date you fail to provide proof that you meet the LTD test of disability.
- The date you refused to be examined by or cooperate with an independent **physician** or a licensed and certified health care practitioner, as requested. **Aetna** has the right to examine and evaluate any person who is the basis of your claim at any reasonable time while your claim is pending or payable. The examination or evaluation will be done at **Aetna's** expense.
- The date an independent medical exam report or functional capacity evaluation does not, in **Aetna's** opinion, confirm that you are disabled.
- The date you reach the end of your Maximum Benefit Duration, as shown in the *Schedule of Benefits*.
- The date you refuse to cooperate with or accept:
  - Changes to your work site or job process designed to suit your identified medical limitations; or
  - Adaptive equipment or devices designed to suit your identified medical limitations; which would allow you to work at your **own occupation** or a **reasonable occupation** (if you are receiving benefits for being unable to work any **reasonable occupation**) and provided that a **physician** agrees that such changes, adaptive devices or equipment suit your particular medical limitations.
- The date you refuse any treatment recommended by your attending **physician** that, in **Aetna's** opinion, would cure, correct or limit your disability.
- The date your condition would permit you to:
  - Work; or
  - Increase the hours you work; or
  - Increase the number or type of duties you perform in your **own occupation**
    but you refuse to do so.
- The date of your death.

## Limitations Which Apply to Long Term Disability Coverage *(GR-9N 06-030 01)*

You will no longer be considered as disabled and eligible for long term monthly benefits after benefits have been payable for 24 months if it is determined that your disability is primarily caused by:

- A mental health or psychiatric condition, including physical manifestations of these conditions, but excluding conditions with demonstrable, structural brain damage; or
- Alcohol and/or drug abuse.

There are 2 exceptions to the above limitations if you are confined as an inpatient in a **hospital or treatment facility** for treatment of that condition at the end of such 24 months.

- If the inpatient confinement lasts less than 30 days, the disability will cease when you are no longer confined.
- If the inpatient confinement lasts 30 days or more, the disability may continue until 90 days after the date you have not been so continuously confined.

**Important Note**

The rules under *If You Become Disabled Again* do not apply beyond 24 months to disabilities subject to this *Limitations Which Apply to Long Term Disability Coverage* section.

## Pre-existing Conditions *(GR-9N 06-045 01 NC)*

A pre-existing condition is an **illness**, **injury** or pregnancy-related conditions for which, during the 3 months before your coverage became effective:

- You were diagnosed or treated; or
- You received diagnostic or treatment services; or
- You took drugs that were prescribed or recommended by a **physician**.

The plan does not pay benefits for a disability that is caused, or contributed to, by a pre-existing condition, if the disability starts within the first 12 months after your coverage goes into effect.

## Approved Rehabilitation Program *(GR-9N 06-050-01)*

**Aetna** has the right to evaluate you for participation in an **approved rehabilitation program**.

If, in **Aetna's** judgment, you are able to participate, **Aetna** may, in its sole discretion require you to participate in an **approved rehabilitation program**.

*Benefits Available to You When You Participate in an Approved Rehabilitation Program*

The plan will pay for all of the services and supplies (including but not limited to, those for workplace modifications), approved in advance by **Aetna**, you need in connection with participation in the program, except those for which you can be reimbursed by another payer, including government benefits programs.

During your active participation in an **Aetna approved rehabilitation program**, **Aetna** will increase the monthly benefit payable. A 10% increase in the monthly benefit payable (after all applicable reductions for other income benefits) will be paid for up to six consecutive months for each disability, up to a maximum monthly increase of $1,000.

## Other Income Benefits *(GR-9N 06-055-02) (GR-9N 06-060 01)*

**Important Note**

Please read this section carefully. It explains how and when other income benefits reduce your monthly LTD benefit. ***It is your responsibility to enroll or apply for benefits from other sources if you are eligible***. See the *Aetna Requires Proof of Other Income* section for more information.

Other income benefits can affect the monthly benefit described in the long term disability coverage section. When calculating the benefit payable, other income benefits that you, your spouse, your children or your dependents are *eligible* for because of your disability or retirement are taken into consideration.

The other income benefits considered when your benefits payable are calculated are:

- 50% of any award given under The Jones Act or The Maritime Doctrine of Maintenance, Wages and Cure.

- Disability, retirement or unemployment benefits required or provided for by government law. This includes (but is not limited to):
  - Unemployment compensation benefits.
  - Temporary or permanent, partial or total, disability benefits under any workers' compensation law or similar law meant to compensate a worker for:
    - Loss of past and future wages;
    - Impaired earning capacity;
    - A lessened ability to compete for jobs;
    - Any permanent impairment; and
    - Any loss of bodily function or capacity.
  - Benefits under the Federal Society Security Act, Railroad Retirement Act, Canada Pension Plan and Quebec Pension Plan.
  - Veteran's benefits.

- Statutory disability benefits

- Disability or unemployment benefits payable by either insured and uninsured plans:
  - As a result of employment by or association with your employer; or
  - As a result of your membership in, or association with, any group, association, union or other organization.

This includes both plans that are insured and those that are not.

- Unreduced retirement benefits for which you are (or may become) eligible under a group pension plan at age 62 or the plan's normal retirement age, whichever comes later. This applies only to the amount of the benefit that was paid by an employer.
- Retirement benefits you elect and receive under any group pension plan. This applies only to the amount of the benefit that was paid by an employer.

- Disability benefits from an accumulated sick time or salary continuation program, provided they are part of an established group plan maintained by your Employer for the benefit of its employees.

## Other Income Benefits That Do Not Reduce Monthly Benefits *(GR-9N 06-065 02)*
Income from certain sources will not reduce your monthly disability benefits under this plan.

Your benefits under the long term disability coverage will not be reduced by the amount of benefits you were receiving from the following sources, if you were receiving the income before you became disabled:

- Military and other government service pensions;
- Retirement benefits from a former employer;
- Veteran's benefits for service-related disabilities;
- Individual disability income policies; and
- Retirement Federal Social Security Act.

The amount of income or other benefits from the following sources will not reduce your disability benefits:

- Profit sharing plans;
- Thrift or savings plans;
- 401(k) plans;
- Keogh plans;

- Employee stock option plans;
- 403 (b) Tax-sheltered annuity plans;
- 457 deferred compensation plans;
- Severance pay;
- Individual disability income policies; or
- Individual retirement accounts (IRAs).

## What Happens When Other Income Benefits Increase *(GR-9N 06-070-01)*

An increase in other income benefits that you are eligible for may affect your benefit payable under this coverage.

If your other income benefits increase as the result of one of the following situations, the increased amount will be considered when calculating your benefits payable:

- The number of people in your family changes;
- Your benefit level is adjusted or corrected; or
- The severity of your disability changes.

This may result in a reduction in benefits payable.

A cost of living increase in other income benefits you receive from a governmental source (including, but not limited, to benefits under the Federal Social Security Act) will *not* reduce your benefits payable.

A cost of living increase in other income benefits you receive from a non-governmental source will **not** affect your benefits payable to the extent that the increase is based on the annual average increase in the **Consumer Price Index**.

## How Aetna Applies Other Income Benefits *(GR-9N 06-075 02)*

### Long Term Disability

Any lump sum or periodic payments you receive from any other income benefit are prorated on a monthly basis over the period of time for which the payment was made. If a period of time is not indicated, **Aetna** will prorate the payments over a reasonable period of time. **Aetna** will take into account the expected duration of your disability payments and other relevant factors.

The part of a lump sum or periodic payment you receive for disability will be counted as an other income benefit, even if it is not specifically allotted or identified as such. If there is no proof acceptable to **Aetna** as to what that part is, **Aetna** will consider 50% to be payable for your disability.

Any of these other income benefit payments that date back to a prior date may be allocated on a retroactive basis. If the other income benefits are automobile no-fault wage replacement benefits or disability payments which result from a disability caused by a third party, the applicable period of time will start from the date of the accident.

### Estimate of Other Income Benefits

**Aetna** will estimate *other income benefits* for which you appear to be eligible, unless you sign and return a reimbursement agreement to **Aetna**. The reimbursement agreement includes your promise to repay Aetna for any overpayment of benefits made to you as a result of your receipt of other income benefits. If other income benefits are estimated, your monthly benefit will be adjusted when Aetna receives proof:

- Of the exact amount paid or awarded; or
- That benefits have been denied after review at the highest administrative level.

If estimating your other income benefits results in an underpayment, **Aetna** will pay you the difference between the underpayment and the benefit payable. If there is an overpayment, you must repay **Aetna** the difference between all overpayments and the benefit payable. If **Aetna** must take legal action to recover such overpayment, you also must pay **Aetna's** reasonable attorneys fees and court costs, if **Aetna** prevails.

## Aetna Requires Proof of Other Income *(GR-9-06-080 01)*

**Aetna** may require proof:

- That you, your spouse, child or dependent has applied for all other income benefits that you or they are or may be eligible to receive because of your disability, and has made a timely appeal of any denial of benefits through the highest administrative level. "Timely appeal" means making the appeal in the time required, but never more than 60 days after the latest denial.
- That the person applying for other income benefits has furnished the necessary proof needed to obtain other income benefits, which include, but is not limited to, workers' compensation benefits;
- That the person has not waived (given up his or her right to) any other income benefits without **Aetna's** written consent;
- That the person has sent **Aetna** copies of documents showing the effective dates and amounts of other income benefits.
- Of income you receive from any work for pay or profit.

If you apply for Social Security benefits and are denied, you must request reconsideration within 60 days after the denial unless **Aetna** states, in writing, that you are not required to do so. If the reconsideration is denied, you must apply for a hearing before an administrative law judge within 60 days of the denial, unless **Aetna** waives this requirement.

You do not have to apply for:

- Retirement benefits paid only on a reduced basis; or
- Disability benefits under a group life insurance plan, if the disability benefits would reduce the amount of your group life insurance.

However, if you apply for and receive these benefits, they will be considered as other income benefits and you must provide proof to **Aetna**, if requested.

If you do not provide the proof that **Aetna** may require, **Aetna** has the right to suspend or adjust this plan's benefits by the estimated amount of the other income benefits.

## Exclusions That Apply to Long Term Disability *(GR-9N-28-010-01 NC)*

Long term disability coverage does not cover any disability on any day that you are confined in a penal or correctional institution for conviction of a criminal act or other public offense. You will not be considered to be disabled, and no benefits will be payable.

Long term disability coverage also does not cover any disability that:

- Is due to insurrection, rebellion, or taking part in a riot or civil commotion.
- Is due to intentionally self-inflicted **injury** (while sane or insane).
- Results from your commission of, or attempting to commit a criminal act.
- Results from a motor vehicle accident caused by operating the vehicle while you are under the influence of alcohol. A motor vehicle accident will be deemed to be caused by the use of alcohol if it is determined that at the time of the accident you were:
  - Operating the motor vehicle while under the influence of alcohol at a level which meets or exceeds the level at which intoxication would be presumed under the laws of the state where the accident occurred. If the accident occurs outside of the United States, intoxication will be presumed if the person's blood alcohol level meets or exceeds .08 grams per deciliter.

## How Prior Coverage Affects Coverage Under This Plan *(GR-9N 06-085 02)*

If the coverage of any person under this plan replaces any prior coverage of the person, the following will apply.

"Prior Coverage" is any plan of group LTD coverage that has been replaced by coverage under part or all of this plan.

It must have been sponsored by your Employer who is participating in this plan. The replacement can be complete or in part for the eligible class to which you belong. Any such plan is prior coverage if provided by another group insurance plan.

Your coverage under this Plan replaces and supersedes any prior coverage. It will be in exchange for everything under such prior coverage, except that no benefit will be payable under this plan as to a particular period of disability if:

- You are receiving, or eligible to receive, benefits for that disability under the prior coverage; or
- In the absence of coverage under this plan, you would have been eligible to receive benefits for that disability under the prior coverage.

## Same or Related Causes of Disability

Any disability that began before you were covered under this LTD plan will not be included for purposes of the *If You Become Disabled Again (Successive Disabilities)* section of this plan. However, if you meet all of the following conditions, the elimination period under this plan will apply to the extent it would have applied under the terms of the prior coverage had it remained in force:

- You had prior coverage on the day before LTD coverage took effect; and
- You became covered for this LTD plan on the date it takes effect; and
- While you are insured under this plan, a disability starts that is due to the same **illness**, **injury** or disabling pregnancy related condition for which you received or were eligible to receive benefits under the prior coverage; and
- There are no benefits available under the terms of the prior coverage for this disability due to the same **illness**, **injury** or disabling pregnancy related condition, the Elimination Period under this plan will apply to the extent it would have applied under the terms of the prior coverage had it remained in force.

Where the above paragraph applies, the amount of monthly benefit and the maximum period for which benefits will be payable, as to a disability due to the same or related causes, will be as provided in this LTD plan.

## Pre-existing Conditions

As stated earlier, no benefits will be payable, as to a disability caused by a pre-existing condition. However if:

- You had prior coverage on the day before LTD coverage took effect; and
- You became covered for this LTD plan on the date it takes effect;

a benefit may be payable if a continuous period of coverage under the prior coverage and this LTD plan are equal to the lesser of:

- 12 months and;
- Any period of limitation as to a pre-existing condition remaining under the prior coverage.

Where the exclusion no longer applies, the amount of monthly benefit and the maximum period for which benefits will be payable, as to a disability caused by such pre-existing condition, will be as provided in this LTD plan, subject to the *Special Rules As To An Increase in Coverage* section.

In no event will:

- A benefit be payable as to a disability caused by a pre-existing condition, if the disability is excluded by any other terms of this LTD plan.
- A condition will be considered to be a pre-existing condition under this LTD plan if it was not a pre-existing condition under the prior coverage.

## Approved Rehabilitation Program *(GR-9N 06-050-01)*

**Aetna** has the right to evaluate you for participation in an **approved rehabilitation program**.

If, in **Aetna's** judgment, you are able to participate, **Aetna** may, in its sole discretion require you to participate in an **approved rehabilitation program**.

*Benefits Available to You When You Participate in an Approved Rehabilitation Program*
The plan will pay for all of the services and supplies (including but not limited to, those for workplace modifications), approved in advance by **Aetna**, you need in connection with participation in the program, except those for which you can be reimbursed by another payer, including government benefits programs.

During your active participation in an **Aetna approved rehabilitation program**, **Aetna** will increase the monthly benefit payable. A 10% increase in the monthly benefit payable (after all applicable reductions for other income benefits) will be paid for up to six consecutive months for each disability, up to a maximum monthly increase of $1,000.

# Additional Benefits *(GR-9N 06-095 01)*

## Survivor Benefit *(GR-9N 06-090 01)*
If you die while disabled, a single, lump sum benefit will be paid under this provision if:

- There is an eligible survivor as defined below; and
- A monthly benefit was payable under this plan.

The benefit amount will be 3 times the monthly benefit, not reduced by other income benefits, for which you were eligible in the full month just before the month in which you die.

If you die before you are eligible for one full monthly benefit, however, the benefit will be 3 times the monthly benefit, not reduced by other income benefits for which you would have been eligible if you had not died, for the first full month after the month in which you die.

An eligible survivor is:

- Your legally married spouse at the date of your death.
- If there is no such spouse, your biological or legally adopted child who, when you die:
  - is not married; and
  - is depending on you for support; and
  - is under age 23. This age limit will not apply if the child is not capable of self-sustaining employment because of mental or physical handicap which existed prior to age 23.

### How the Survivor Benefit Will Be Paid
The benefit will be paid to your eligible surviving spouse, if any. Otherwise, it will be paid in equal shares to your eligible surviving children.

If monthly benefit payments are made in amounts greater than the monthly benefits that you are entitled to receive, **Aetna** has the right to first apply the survivor benefit to any such overpayment.

**Aetna** may pay the benefit to anyone who, in **Aetna's** opinion, is caring for and supporting the eligible survivor; or if proper claim is made, **Aetna** may pay the benefit to an eligible survivor's legally appointed guardian or committee.

**Child Care Benefit**

If:

- You are a participant in an **approved rehabilitation program**; and
- You have a dependent child;

The benefit payable under this plan may be increased as described below.

Starting after the first 6 months of a disability, due to the same or related causes, for which a monthly benefit is payable, the benefit payable will be increased by an amount equal to the new or additional amount charged by a license day care provider for the care of such dependent child while you are such a participant. In no event will the increase in any one month be more than:

- $250 for each dependent child; or
- $500 for all dependents children

Not more than 24 such increases will occur during any one period of disability due to the same or related causes.

During any month in which a child care benefit is payable to a person, the maximum monthly benefit for that person will be increased by the amount of the child care benefit payable for that month.

"Dependent child" means a child who is under age 13 and who lives with you and is either:

- Your or your spouse's biological child.
- Your or your spouse's legally adopted child.
- A child for whom you are legal guardian.

A "licensed day care provider" will **not** include:

- One who is a member of your immediate family; or
- One who lives in your residence.

# When Coverage Ends (GR-9N-30-005-05)

Coverage under your plan can end for a variety of reasons. In this section, you will find details on how and why coverage ends, and how you may still be able to continue coverage.

## When Coverage Ends For Employees (GR-9N-30-005-05)

Your coverage under the plan will end if:

- The plan is discontinued;
- You voluntarily stop your coverage;
- The group policy ends;
- You are no longer eligible for coverage;
- You do not make any required contributions;
- You become covered under another plan offered by your employer;

- Your employment stops for any reason, including job elimination or being placed on severance. This will be the date you stop active work. However, if premium payments are made on your behalf, **Aetna** may deem your employment to continue, for purposes of remaining eligible for coverage under this Plan, as described below:
  - If you are not **actively at work** due to **illness or injury**, your coverage may continue, until stopped by your employer, but not beyond 12 months from the start of the absence.
  - If you are not **actively at work** due to temporary lay-off or leave of absence, your coverage will stop on the last full day you are **actively at work** before the start of the lay-off or leave of absence.

It is your employer's responsibility to let **Aetna** know when your employment ends. The limits above may be extended only if **Aetna** and your employer agree, in writing, to extend them.

# Extension of Benefits <span style="font-size:smaller">*(GR-9N 31-020 01)*</span>

## Coverage for Long Term Disability Benefits

If your long term disability coverage ends during a period of total disability which began while you had coverage, any long term disability benefits will be continued until your benefit eligibility ends.

# General Provisions *(GR-9N-32-005-02-NC)*

## Physical Examinations and Evaluations *(GR-9N-32-005-03-NC)*

**Aetna** will have the right and opportunity to have a **physician** of its choice examine any person who is requesting certification or benefits for new and ongoing claims. Multiple exams, evaluations and functional capacity exams may be required during your disability for an ongoing claim. This will be done at all reasonable times while certification or a claim for benefits is pending or under review. This will be done at no cost to you.

## Legal Action

No legal action can be brought to recover payment under any benefit after 2 years from the final decision date of your last appeal decision, but not later than 3 years from the date your eligibility for disability benefit was first denied.

**Aetna** will not try to reduce or deny a benefit payment on the grounds that a condition existed before your coverage went into effect, if the loss occurs more than 2 years from the date coverage commenced. This will not apply to conditions excluded from coverage on the date of the loss.

## Confidentiality

Information contained in your medical records and information received from any provider incident to the provider patient relationship shall be kept confidential in accordance with applicable law. Information may be used or disclosed by **Aetna** when necessary for the operation of the plan and administration of this Booklet-Certificate, or other activities, as permitted by applicable law. You can obtain a copy of **Aetna's** Notice of Information Practices at www.aetna.com.

## Additional Provisions

The following additional provisions apply to your coverage:

- You cannot receive multiple coverage under the plan because you are connected with more than one employer.
- In the event of a misstatement of any fact affecting your coverage under the plan, the true facts will be used to determine the coverage in force.
- This document describes the main features of the plan. Additional provisions are described elsewhere in the *group policy*. If you have any questions about the terms of the plan or about the proper payment of benefits, contact your employer or **Aetna**.
- Your employer hopes to continue the plan indefinitely but, as with all group plans, the plan may be changed or discontinued with respect to your coverage.

## Assignments *(GR-9N-32-005-01) (GR-9N-32-005-02-NC)*

Coverage may be assigned only with the written consent of **Aetna**.

## Misstatements *(GR-9N-32-005-03-NC)*

If any fact as to the Policyholder or you is found to have been misstated, a fair change in premiums may be made. If the misstatement affects the existence or amount of coverage, the true facts will be used in determining whether coverage is or remains in force and its amount.

All statements made by the Policyholder or you shall be deemed representations and not warranties. No written statement made by you shall be used by **Aetna** in a contest unless a copy of the statement is or has been furnished to

you or your beneficiary, or the person making the claim.

**Aetna's** failure to implement or insist upon compliance with any provision of this policy at any given time or times, shall not constitute a waiver of **Aetna's** right to implement or insist upon compliance with that provision at any other time or times. This includes, but is not limited to, the payment of premiums. This applies whether or not the circumstances are the same.

# Reporting of Claims *(GR-9N-32-020-01)*

You are required to submit a claim to **Aetna** in writing. Claim forms may be obtained from **Aetna**. Follow the procedure chosen by your Employer to report a disability claim to **Aetna**. If the procedure requires that claim forms be submitted, you may obtain them from your employer or **Aetna**.

Your claim must give proof of the nature and extent of the loss. You must furnish true and correct information as **Aetna** may reasonably request. At any time, **Aetna** may require copies of documents to support your claim, including data about employment. You must also provide **Aetna** with authorizations to allow it to investigate your claim and your eligibility for and the amount of work earnings and other income benefits.

In addition to the above: if you must be out of work because you are disabled, a claim for a Long Term Disability Benefit should be made right away. Do not wait until you go back to work. This may delay payment of benefits. At any time, **Aetna** may require copies of documents to support your claim, including data about employment and any other income benefits.

The deadline for filing a long term disability claim is 90 days after the end of the elimination period, if any.

If, through no fault of your own, you are not able to meet the deadline for filing a claim, your claim will still be accepted if you file as soon as possible. Unless you are legally incapacitated, late claims will not be covered if they are filed more than one year after the deadline.

# Payment of Benefits *(GR-9N-32-025-04)*

Benefits will be paid as soon as the necessary proof to support the claim is received. Written proof must be provided for all benefits.

Long Term Disability benefits will be paid at the end of each calendar month during the period for which benefits are payable. Long Term Disability benefits for a period less than a month will be prorated. This will be done on the basis of the ratio, to 30 days, of the days of eligibility for benefits during the month.

# Recovery of Overpayments *(GR-9N-30-015-02) (GR-9N-32-010-01-NC)*

## Long Term Disability Coverage

If payments are made in amounts greater than the benefits that you are entitled to receive, **Aetna** has the right to do any one or all of the following:

- Require you to return the overpayment on request;
- Stop payment of benefits until the overpayment is recovered;
- Take any legal action needed to recover the overpayment; and
- Place a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any other income, whether on a periodic or lump sum basis.

If the overpayment:

- Occurs as a result of your receipt of "other income benefits" for the same period for which you have received a benefit under this plan; and
- To obtain such "other income benefits", advocate or legal fees were incurred.

**Aetna** will exclude from the amount to be recovered, such advocate or legal fees; provided you return the overpayment to **Aetna** within 30 days of **Aetna**'s written request for the overpayment. If you do not return the overpayment to **Aetna** within such 30 days, such fees will not be excluded; you will remain responsible for repayment of the total overpaid amount.

Examples of "other income benefits" are:

- Workers' compensation.
- Federal Social Security benefits.
- Disability payments made as a result of any person's action or inaction.

Any unpaid balance (at the end of **Aetna**'s liability as to Long Term Disability) will be paid within 30 days of receipt by **Aetna** of the due written proof.

**Aetna** may pay up to $1,000 of any other benefit to any of your relatives whom it believes are fairly entitled to it. This can be done if the benefit is payable to you and you are a minor or not able to give a valid release. It can also be done if a benefit is payable to your estate.

# Contract Not a Substitute for Workers' Compensation Insurance
*(GR-9N-32-030-01)*

The group policy is not in lieu of and does not affect workers' compensation benefits. However, any workers' compensation benefits are considered other income benefits.

# Contacting Aetna *(GR-9N-32-005-01)*

If you have questions, comments or concerns about your benefits or coverage, or if you are required to submit information to **Aetna**, you may contact **Aetna**'s Home Office at:

Aetna Life Insurance Company
151 Farmington Avenue
Hartford, CT 06156

You may visit **Aetna's** web site at www.aetna.com.

# Glossary
*(GR-9N 34-005 01)*

In this section, you will find definitions for the words and phrases that appear in **bold type** throughout the text of this Booklet-Certificate.

# A *(GR-9N-34-005-05)*

## Active at Work; Actively at Work; Active Work *(GR-9N-34-005-02)*

You will be considered to be active at work, actively at work or performing active work on any of your employer's scheduled work days if, on that day, you are performing the regular duties of your job on a full time basis for the number of hours you are normally scheduled to work.  In addition, you will be considered to be actively at work on the following days:

- any day which is not one of your employer's scheduled work days if you were actively at work on the preceding scheduled work day; or
- a normal vacation day.

## Adjusted Predisability Earnings

Your **predisability earnings**, plus any increase made on each January 1. The first increase will be made on the January 1 following a 12-month period of disability. On each January 1, the increase made will equal the percentage increase in the **Consumer Price Index**, rounded to the nearest tenth; to a maximum of 10%.

## Aetna

**Aetna** Life Insurance Company, an affiliate, or a third party vendor under contract with **Aetna**.

## Approved Rehabilitation Program

A written program, approved by **Aetna**, that provides for services and supplies which are intended to enable you to return to work. The program may include, but is not limited to:

- Vocational testing;
- Vocational training;
- Alternative treatment plans such as:
  - Support groups;
  - Physical therapy;
  - Occupational therapy; and
  - Speech therapy;
- Workplace modification to the extent not otherwise provided;
- Part time employment; and
- Job placement.

A rehabilitation program will no longer be an **approved rehabilitation program** on the date **Aetna** withdraws, in writing, its approval of the program.

# C *(GR-9N-34-015-02-NC)*

## Consumer Price Index

The CPI-W, **Consumer Price Index** for Urban Wage Earners and Clerical Workers, is published by the United States Department of Labor. If the CPI-W is discontinued or changed, **Aetna** reserves the right to use a comparable index.

**E** *(GR-9N 34-025 04)*

## Effective Treatment of Alcoholism or Drug Abuse

This means a program of alcoholism or substance abuse therapy that is prescribed and supervised by a **physician** and either:

- Has a follow-up therapy program directed by a **physician** on at least a monthly basis; or
- Includes meetings at least twice a month with organizations devoted to the treatment of alcoholism or drug abuse.

**Detoxification** and **maintenance care** are not effective treatment.

**H** *(GR-9N 34-040 02-NC)*

## Hospital

An institution that:

- Is primarily engaged in providing, on its premises, inpatient medical, surgical and diagnostic services;
- Is supervised by a staff of **physicians**;
- Provides twenty-four (24) hour-a-day **R.N.** service,
- Charges patients for its services;
- Is operating in accordance with the laws of the jurisdiction in which it is located; and
- Does not meet all of the requirements above, but does meet the requirements of the jurisdiction in which it operates for licensing as a **hospital** and is accredited as a **hospital** by the Joint Commission on the Accreditation of Healthcare Organizations.

*In no event* does **hospital** include a convalescent nursing home or any institution or part of one which is used principally as a convalescent facility, rest facility, nursing facility, facility for the aged, extended care facility, intermediate care facility, **skilled nursing facility**, hospice, rehabilitative **hospital** or facility primarily for rehabilitative or custodial services.

**I** *(GR-9N 34-045 02)*

## Illness

A pathological condition of the body that presents a group of clinical signs and symptoms and laboratory findings peculiar to the findings set the condition apart as an abnormal entity differing from other normal or pathological body states.

## Injury

An accidental bodily **injury** that is the sole and direct result of:

- An unexpected or reasonably unforeseen occurrence or event; or
- The reasonable unforeseeable consequences of a voluntary act by the person.
- An act or event must be definite as to time and place.

**M** *(GR-9N-34-065-03)*

## Material Duties

Duties that:

- Are normally needed for the performance of your **own occupation**; and
- Cannot be reasonably left out or changed. However, to be at work more than 40 hours per week is not a material duty.

**O** *(GR-9N 34-075 01)*

## Own Occupation

The occupation that you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed:

- For your specific employer; or
- At your location or work site; and
- Without regard to your specific reporting relationship.

**P** *(GR-9N-34-080-02-NC)*

## Physician *(GR-9N-34-080-02-NC)*

A duly licensed member of a medical profession who:

- Has an M.D. or D.O. degree;
- Is properly licensed or certified to provide medical care under the laws of the jurisdiction where the individual practices; and
- Provides medical services which are within the scope of his or her license or certificate.

This also includes a health professional who:

- Is properly licensed or certified to provide medical care under the laws of the jurisdiction where he or she practices;
- Provides medical services which are within the scope of his or her license or certificate; and
- Under applicable insurance law is considered a "physician" for purposes of this coverage.

For the purposes of Long Term Disability coverage, regular care of a physician means you are attended by a physician who:

- Is not you or related to you;
- Has the medical training and clinical expertise suitable to treat your disabling condition;
- Specializes in psychiatry, if your disability is caused, to any extent, by a mental health or psychiatric condition; and
- Whose treatment is:
  - Consistent with the diagnosis of the disabling condition;
  - According to guidelines established by medical, research and rehabilitative organizations; and
  - Administered as often as needed.

## Predisability Earnings

***With respect to core (50% of predisability earnings) and buy-up option 1 (60% of predisability earnings, excluding any bonus amount) coverage:***

This is the amount of salary or wages you were receiving from an employer participating on this plan the day before a period of disability started, calculated on a monthly basis. It will be figured from the rule below that applies to you.

If you were paid on an annual contract basis, your monthly salary is 1/12th of your annual contract salary.

If you were paid on an hourly basis, the calculation of your monthly wages is based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month; but not more than 173 hours per month.

If you do not have regular work hours, the calculation of your monthly salary or wages, is based on the average number of hours that you worked per month during the last 12 months (or during your period of employment if fewer than 12 months); but not more than 173 hours per month.

If you have an Annual Benefit Base Rate (ABBR), your LTD benefits will be based on your ABBR in effect on the date you first become disabled, calculated on a monthly basis. For example, if you become disabled on September 1, 2011 and become eligible for LTD benefits on March 1, 2012, your LTD benefits will be based on your ABBR, in effect on September 1, 2011, which was for the 2011 plan year, even if a new ABBR was calculated for you for the 2012 plan year. That new 2012 plan year ABBR would only be used for LTD purposes if you returned to work and then became disabled again with a new disability in 2012.

Included in salary or wages are:
- Contributions you make through a salary reduction agreement with the Bank of America to say the following:

  - An Internal Revenue Code (IRC) Section 125 for your fringe benefits

  - An IRC 401(k), or 457 deferred compensation arrangement

  - An executive nonqualified deferred compensation agreement

Not included in the salary or wages are:
- Awards, commissions and bonuses

- Overtime pay

- Contributions made by Bank of America to any deferred compensation arrangement or pension plan.

A retroactive change in your rate of earnings will not result in a retroactive change in coverage.

*GR9 811383 94552 NC 1110*

***With respect to buy-up Option 2 with bonus (60% of predisability earnings, including any eligible bonus amount) coverage:***

This is the amount of salary or wages you were receiving from an employer participating on this plan the day before a period of disability started, calculated on a monthly basis. It will be figured from the rule below that applies to you.

If you were paid on an annual contract basis, your monthly salary is 1/12th of your annual contract salary.

If you were paid on an hourly basis, the calculation of your monthly wages is based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month; but not more than 173 hours per month.

If you do not have regular work hours, the calculation of your monthly salary or wages, is based on the average number of hours that you worked per month during the last 12 months (or during your period of employment if fewer than 12 months); but not more than 173 hours per month.

If you have an Annual Benefit Base Rate (ABBR), your LTD benefits will be based on your ABBR in effect on the date you first become disabled, calculated on a monthly basis. For example, if you become disabled on September 1, 2011 and become eligible for LTD benefits on March 1, 2012, your LTD benefits will be based on your ABBR, in effect on September 1, 2011, which was for the 2011 plan year, even if a new ABBR was calculated for you for the 2012 plan year. That new 2012 plan year ABBR would only be used for LTD purposes if you returned to work and then became disabled again with a new disability in 2012.

Included in salary or wages are:

- Your eligible bonus amount, which may vary from year to year. For example, your 2011 eligible bonus amount consists of any performance-based, benefits-eligible cash incentives earned during 2009.

- Contributions you make through a salary reduction agreement with the Bank of America to say the following:

  - An Internal Revenue Code (IRC) Section 125 for your fringe benefits

  - An IRC 401(k), or 457 deferred compensation arrangement

  - An executive nonqualified deferred compensation agreement


Not included in the salary or wages are:
- Commissions

- Overtime pay

- Contributions made by Bank of America to any deferred compensation arrangement or pension plan.

A retroactive change in your rate of earnings will not result in a retroactive change in coverage.

*GR9 811383 94552 NC 1110*

 **R** *(GR-9N-34-090-06 NC)*

# Reasonable Occupation
This is any gainful activity:
- For which you are, or may reasonably become, fitted by education, training, or experience; and
- Which results in, or can be expected to result in, an income of more than 60% of your **adjusted predisability earnings**.

**T** *(GR-9N 34-100-02)*

## Treatment Facility

This is an institution (or distinct part thereof) that is for the treatment of alcoholism or drug abuse and which meets fully every one of the following tests:

- It is primarily engaged in providing on a full-time inpatient basis, a program for diagnosis, evaluation, and treatment of alcoholism or drug abuse.
- It provides all medical detoxification services on the premises, 24 hours a day.
- It provides all normal infirmary-level medical services required during the treatment period, whether or not related to the alcoholism or drug abuse, on a 24 hour daily basis. Also, it provides, or has an agreement with a **hospital** in the area to provide, any other medical services that may be required during the treatment period.
- On a continuous 24 hour daily basis, it is under the supervision of a staff of **physicians**, and provides skilled nursing services by licensed nursing personnel under the direction of a full-time registered graduate nurse.
- It prepares and maintains a written individual plan of treatment for each patient based on a diagnostic assessment of the patient's medical, psychological and social needs with documentation that the plan is under the supervision of a **physician**.
- It meets any applicable licensing standards established by the jurisdiction in which it is located.

**Confidentiality Notice**

Aetna considers personal information to be confidential and has policies and procedures in place to protect it against unlawful use and disclosure. By "personal information," we mean information that relates to a member's physical or mental health or condition, the provision of health care to the member, or payment for the provision of health care or disability or life benefits to the member. Personal information does not include publicly available information or information that is available or reported in a summarized or aggregate fashion but does not identify the member.

When necessary or appropriate for your care or treatment, the operation of our health, disability or life insurance plans, or other related activities, we use personal information internally, share it with our affiliates, and disclose it to health care providers (doctors, dentists, pharmacies, hospitals and other caregivers), payors (health care provider organizations, employers who sponsor self-funded health plans or who share responsibility for the payment of benefits, and others who may be financially responsible for payment for the services or benefits you receive under your plan), other insurers, third party administrators, vendors, consultants, government authorities, and their respective agents. These parties are required to keep personal information confidential as provided by applicable law.

Some of the ways in which personal information is used include claim payment; utilization review and management; coordination of care and benefits; preventive health, early detection, vocational rehabilitation and disease and case management; quality assessment and improvement activities; auditing and anti-fraud activities; performance measurement and outcomes assessment; health, disability and life claims analysis and reporting; health services, disability and life research; data and information systems management; compliance with legal and regulatory requirements; formulary management; litigation proceedings; transfer of policies or contracts to and from other insurers, HMOs and third party administrators; underwriting activities; and due diligence activities in connection with the purchase or sale of some or all of our business. We consider these activities key for the operation of our health, disability and life plans. To the extent permitted by law, we use and disclose personal information as provided above without member consent. However, we recognize that many members do not want to receive unsolicited marketing materials unrelated to their health, disability and life benefits. We do not disclose personal information for these marketing purposes unless the member consents. We also have policies addressing circumstances in which members are unable to give consent.

To obtain a copy of our Notice of Information Practices, which describes in greater detail our practices concerning use and disclosure of personal information, please call 1-866-825-6944 or visit our Internet site at www.aetna.com.

# Additional Information Provided by

# Bank of America Corporation

The following information is provided to you in accordance with the Employee Retirement Income Security Act of 1974 (ERISA). It is not a part of your booklet-certificate. Your Plan Administrator has determined that this information together with the information contained in your booklet-certificate is the Summary Plan Description required by ERISA.

In furnishing this information, Aetna is acting on behalf of your Plan Administrator who remains responsible for complying with the ERISA reporting rules and regulations on a timely and accurate basis.

**Name of Plan:**
Long Term Disability

**Employer Identification Number:**
59-0906609

**Plan Number:**
501

**Type of Plan:**
Welfare

**Type of Administration:**
Group Insurance Policy with:

> Aetna Life Insurance Company
> 151 Farmington Avenue
> Hartford, CT 06156

**Plan Administrator:**
Bank of America Corporation
401 North Tryon Street
Charlotte, North Carolina 28255

**Agent For Service of Legal Process:**
Bank of America Corporation
401 North Tryon Street
Charlotte, North Carolina 28255

Service of legal process may also be made upon the Plan Administrator

**End of Plan Year:**
December 31

**Source of Contributions:**
Employer and Employee

**Procedure for Amending the Plan:**
The Employer may amend the Plan from time to time by a written instrument signed by an officer of the company duly authorized by the Plan Administrator.

## ERISA Rights

As a participant in the group insurance plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974. ERISA provides that all plan participants shall be entitled to:

### Receive Information about Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts, collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) that is filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, collective bargaining agreements, and copies of the latest annual report (Form 5500 Series), and an updated Summary Plan Description. The Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in your interest and that of other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

### Enforce Your Rights

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay up to $ 110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court.

If it should happen that plan fiduciaries misuse the Plan's money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

### Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact:

- the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory; or
- the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington D.C. 20210.

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

**Continuation of Coverage During an Approved Leave of Absence Granted to Comply With Federal Law**

This continuation of coverage section applies only for the period of any approved family or medical leave (approved FMLA leave) required by Family and Medical Leave Act of 1993 (FMLA). If your Employer grants you an approved FMLA leave for a period in excess of the period required by FMLA, any continuation of coverage during that excess period will be subject to prior written agreement between Aetna and your Employer.

If your Employer grants you an approved FMLA leave in accordance with FMLA, your Employer may allow you to continue coverage for which you are covered under the group contract on the day before the approved FMLA leave starts.

At the time you request the leave, you must agree to make any contributions required by your Employer to continue coverage. Your Employer must continue to make premium payments.

Coverage will not be continued beyond the first to occur of:

▪ The date you are required to make any contribution and you fail to do so.
▪ The date your Employer determines your approved FMLA leave is terminated.
▪ The date the coverage involved discontinues as to your eligible class.

If you return to work for your Employer following the date your Employer determines the approved FMLA leave is terminated, your coverage under the group contract will be in force as though you had continued in active employment rather than going on an approved FMLA leave provided you make request for such coverage within 31 days of the date your Employer determines the approved FMLA leave to be terminated. If you do not make such request within 31 days, coverage will again be effective under the group contract only if and when Aetna gives its written consent.

# Schedule of Benefits

*(GR-29N 01-01 01 NC)*

**Employer:**                              **Bank of America, Inc.**

**Group Policy Number:**           **GP-811383**

**Issue Date:**                            December 27, 2010
**Effective Date:**                       January 1, 2012
**Schedule:**                               1A
**Cert Base:**                              1

For: Long Term Disability Core and Buy up Plans

This is an ERISA plan, and you have certain rights under this plan. Please contact your Employer for additional information.

# Long Term Disability Coverage *(GR 9N 05-001-01)*

## Schedule of Long Term Disability Benefits

| | |
|---|---|
| **Elimination Period** | The greater of 180 days or the end of the TDI payments of a period of disability. |

*(GR 9N 05-001-01)*
**Scheduled Monthly Benefit**

| | |
|---|---|
| CORE Plans | 50% of your monthly **predisability earnings** |
| Buy Up Plans Option 1 | 60% of your monthly **predisability earnings** |
| Buy Up Plans Option 2 | 60% of your monthly **predisability earnings** |

*(GR 9N 05-001-01)*

| | |
|---|---|
| Maximum Monthly Benefit Under this Plan (plus all other Income benefits) | $30,000 |

| | |
|---|---|
| Minimum Monthly Benefit<br>*(GR 9N 05-001-01)* | The greater of:<br><br>(a)  $100; and<br>(b)  10 % of your scheduled monthly benefit or, if less, 10 % of the maximum monthly benefit |

You may elect coverage under any one of the available options shown above for Long Term Disability Coverage. If you want to make a change, your employer, will provide you with the information on how and when changes can be made.

## Benefits Actually Payable

Any monthly benefit actually payable to you by **Aetna** will be reduced by other Income benefits. For additional information regarding other income benefits, see your Booklet Certificate.

**Maximum Benefit Duration***

If your period of disability starts prior to the date you reach age 60, it will end the last day of the calendar month in which you reach age 65.

If your period of disability starts on or after the date you reach age 60, it will end with the expiration of the number of months of disability, after the elimination period is met, based on the following schedule:

**Maximum Benefit Duration Schedule**

| Age When Period of Disability Starts | Months of Disability |
| --- | --- |
| 60 but less than 61 | 60 months |
| 61 but less than 62 | 48 months |
| 62 but less than 63 | 42 months |
| 63 but less than 64 | 36 months |
| 64 but less than 65 | 30 months |
| 65 but less than 66 | 24 months |
| 66 but less than 67 | 21 months |
| 67 but less than 68 | 18 months |
| 68 but less than 69 | 15 months |
| 69 and over | 12 months |

*Unless your disability ends earlier for one or more of the reasons stated in your Booklet-Certificate.

# General (GR-9N S-28-01)

This *Schedule of Benefits* replaces any similar *Schedule of Benefits* previously in effect under your plan of long term disability benefits. Requests for coverage other than that to which you are entitled in accordance with this *Schedule of Benefits* cannot be accepted. This Schedule is part of your Booklet-Certificate and should be kept with your Booklet-Certificate form GR-9N. Coverage is underwritten by Aetna Life Insurance Company.