**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOANNE WOLFF, *individually and on behalf of a class of similarly situated individuals*, | No. 4:19-CV-01596 |
| | (Judge Brann) |
| Plaintiff, | |
| v. | |
| AETNA LIFE INSURANCE COMPANY and THE RAWLINGS COMPANY LLC, | |
| Defendants. | |

**MEMORANDUM OPINION**

**AUGUST 17, 2020**

This case arises from a dispute regarding the proper administration of an ERISA benefits plan. Wolff moves for reconsideration of this Court's Memorandum Opinion and accompanying Order of April 2, 2020 dismissing her state-law claims against Defendant The Rawlings Company LLC ("Rawlings"). Defendants Rawlings and Aetna Life Insurance Company ("Aetna") in turn move to dismiss those state-law claims reiterated in her Second Amended Complaint, as well as her renewed ERISA claim against Rawlings.

## I.   BACKGROUND

As this is a motion for reconsideration and a motion to dismiss claims that are substantially similar to those addressed in my prior Memorandum Opinion, I

presume that the reader is familiar with the facts of this case; otherwise, I refer the unfamiliar to that prior Opinion.[1]

Wolff filed her initial complaint in the Court of Common Pleas of Lycoming County, Pennsylvania on August 8, 2019.[2] On September 16, 2019, Defendants removed the action to this Court.[3] On November 13, 2019, Wolff filed an Amended Complaint,[4] on which this Court issued a Memorandum Opinion and Order on April 2, 2020.[5] In relevant part, that Order dismissed Wolff's state-law claims against Rawlings as preempted by ERISA and further dismissed Wolff's ERISA claim against Rawlings because Rawlings was not a proper defendant to that claim.[6]

On April 14, 2020, Wolff moved for reconsideration of the Court's dismissal of her state-law claims against Rawlings.[7] On the same day, Wolff filed a Second Amended Complaint reasserting her state-law claims against Rawlings, as well as her ERISA claim against Rawlings.[8] On April 28, 2020, Defendants moved to dismiss these claims asserted against Rawlings in the Second Amended Complaint.[9] Both motions are now ripe for disposition.

---

[1]   *See* Mem. Op. 2–3 (Doc. 40).
[2]   Notice of Removal ¶ 1 (Doc. 1).
[3]   *Id.* at 5.
[4]   Am. Compl. (Doc. 10).
[5]   Mem. Op. (Doc. 40); Order (Doc. 41).
[6]   Mem. Op. at 7–10 (Doc. 40).
[7]   Pl.'s Mot. for Reconsideration (Doc. 42).
[8]   Second Am. Compl. (Doc. 44).
[9]   Mot. of Defs. Aetna Life Ins. Co. and The Rawlings Co. LLC to Dismiss Pl.'s Second Am. Compl. (Doc. 48).

## II.    DISCUSSION

I address Wolff's motion for reconsideration and Defendants' motion to dismiss in turn. Because the outcome of the motion to dismiss turns in part on the outcome of the motion for reconsideration, I begin with the former.

### A.    Plaintiff's Motion for Reconsideration (Doc. 42)

In my Memorandum Opinion and Order of April 2, 2020, I dismissed Wolff's alternative claims against Rawlings brought under state law, finding that they were preempted by ERISA.[10] Wolff moves for reconsideration of that decision on the basis that this Court incorrectly applied a complete preemption analysis and that the proper express preemption analysis would have preserved her state-law claims.

#### 1.    Legal standard for a motion for reconsideration.

Federal Rule of Civil Procedure 54(b) provides that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." District courts "tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed. R. Civ. P. 59(e)."[11] To be entitled to relief under Rule 59(e), the "party seeking reconsideration must establish at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new

---

[10] *See* Mem. Op. at 7–8 (Doc. 40).

[11] *JML Indus., Inc. v. Pretium Packaging, LLC*, Civ. A. No. 3:04-2552, 2007 WL 61061, at *3 (M.D. Pa. Jan. 5, 2007).

evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact to prevent manifest injustice."[12]

### 2.    Reconsideration of the ERISA preemption finding.

Wolff moves under the third prong of this test; that is, that there is a need to correct a clear error of law in this Court's finding that Wolff's state-law claims against Rawlings are preempted by ERISA. Wolff argues that this Court should not have applied the test for complete preemption under ERISA § 502(a), and that it should have instead applied the conflict preemption test under § 514(a). For the reasons explained below, I deny Wolff's motion for reconsideration because she fails to demonstrate that the outcome would change under a conflict preemption analysis.

ERISA § 514(a), ERISA's preemption provision, provides that ERISA's regulatory structure "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [subject to ERISA]."[13] "'Relate to' has always been given a broad, common-sense meaning, such that a state law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."[14] Claims "relate to" an

---

[12] *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

[13] 29 U.S.C. § 1144(a).

[14] *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293–94 (3d Cir. 2014) (quotation marks omitted).

ERISA plan when the judicial inquiry must be directed at the terms of the plan.[15]

"State law" includes "all laws, decisions, rules, regulations, or other State action

having the effect of law, of any State."[16] Courts have found that state common-law

causes of action are "state laws" capable of being preempted.[17]

Wolff's state-law claims against Rawlings "relate to" her ERISA plan. Try

as Wolff might, she cannot narrow the scope of the inquiry so tightly that the Plan

vanishes from view. Her claims are, at their core, questions about the proper

administration of the Plan.[18] To determine whether Rawlings acted unlawfully,

these claims require this Court to inquire into questions such as whether the Plan

was self-funded or insured, whether there was a repayment term and if so its

legality, and what obligations the Plan fiduciaries had to Wolff.[19] While Wolff may

believe these questions to be clear-cut, it does not change the fact that they are

---

[15] *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990); *Menkes*, 762 F.3d at 294.

[16] 29 U.S.C. § 1144(c)(1).

[17] *See Menkes*, 762 F.3d at 294 ("State common law claims . . . routinely fall within the ambit of § 514.").

[18] *See Roche v. Aetna, Inc.*, 167 F. Supp. 3d 700, 711 (D.N.J. 2016) ("[C]hallenging the decision of the insurer to seek subrogation is a claim for 'benefits due' under ERISA § 502(a)."); *Menkes*, 762 F.3d at 295–96 ("Where liability is predicated on a plan's administration, ERISA preempts state law claims because 'a benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of the plan.'" (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 219 (2004))).

[19] *See Wingo v. Trover Sols., Inc.*, No. 13-00846, 2017 WL 5971841, at *5 (M.D. Pa. Dec. 1, 2017) ("In order to determine whether Trover violated the MVFRL by making its claim for subrogation, a court must first determine whether the Plan is included in the types of benefits listed in the statute. This is because if the Plan was of a type not covered by the statute, then Trover would be entitled to assert a claim for subrogation unless this contravened its own policy.").

inquiries into terms of the Plan. At heart, there simply is no relationship between Wolff and Rawlings absent the ERISA plan.[20]

The United States Court of Appeals for the Third Circuit has further instructed courts to consider the intent of Congress when analyzing preemption under § 514(a), and this too supports preemption in this case.[21] That purpose was to "eliminate the threat of conflicting and inconsistent State and local regulation" from the uniform scheme of civil enforcement Congress created in ERISA.[22] Quoting the United States Supreme Court, the Third Circuit noted that of particular concern was that "allowing state based actions . . . would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose through § 514(a)" because "state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."[23] The core functions of a plan that the Third Circuit warned against burdening include "funding, benefits, reporting, and administration."[24]

Wolff's claims concern these core functions. Claims for the return of subrogation payments or to avoid payment of subrogation liens are claims for

---

[20] *See Ingersoll-Rand*, 498 U.S. at 140 ("[Respondent] argues that the pension plan is irrelevant to the Texas cause of action because all that is at issue is the employer's improper motive to avoid its pension obligations. The argument misses the point, which is that under the Texas court's analysis there simply is *no* cause of action if there is no plan." (emphasis in original)).
[21] *See Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 147–48 (3d Cir. 2007).
[22] *See id.* at 148.
[23] *Id.*
[24] *Id.* at 149.

"benefits due" under ERISA.[25] Wolff's central allegation to these state-law claims is that Rawlings improperly administered the Plan. The fact of the benefit plan is not ancillary to this case. Rather, Wolff contests whether Rawlings lawfully conducted "the essence of the function of an ERISA plan—the calculation and payment of the benefit due a plan participant."[26]

Wolff relies on language from *Jewish Lifeline Network, Inc. v. Oxford Health Plans (NJ), Inc.*,[27] an unpublished decision of the United States District Court for the District of New Jersey, to advance an alternative formulation of the conflict-preemption test. Relying on this case, Wolff posits that the proper test for conflict preemption is where: (1) the plaintiff "is entitled to recover only because of the terms of an ERISA-regulated employee benefit plan," and (2) "where no legal duty (state or federal) independent of ERISA exists."[28] However, the cases cited by that opinion to support the test applied there—namely, *Aetna Health Inc. v. Davila*[29] and *Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan*[30]—arose in the context of *complete*, rather than conflict, preemption, which is the same conflation Wolff objects to on this motion.[31] *Jewish Lifeline Network* is also factually distinguishable from Wolff's claims because the

---

[25] *See Levine v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005); *Roche*, 167 F. Supp. 3d at 710.
[26] *Kollman*, 487 F.3d at 150.
[27] Civ. A. No. 15-0254, 2015 WL 2371635 (D.N.J. May 18, 2015).
[28] *Id.* at *5.
[29] 542 U.S. 200 (2004).
[30] 388 F.3d 393 (3d Cir. 2004).
[31] *See Aetna Health*, 542 U.S. at 210; *Pascack Valley Hosp.*, 388 F.3d at 400–01.

plaintiff was not a plan beneficiary or an assignee of the beneficiary and the claims arose from an agreement separate from the underlying benefits plan.[32] In contrast, Wolff is the plan beneficiary disputing the proper administration of her rights under the Plan.

Wolff's discussion of *Wingo v. Trover Solutions, Inc.*[33] also is inapposite for several reasons. First, that opinion conducted a complete-preemption analysis under ERISA § 502(a), which, again, is what Wolff objects to in her instant motion.[34] Second, the conclusion reached in that case is that § 1720 was not preempted, a finding not contradicted by my April 2, 2020 Memorandum Opinion. The issue of § 1720's preemption is neither here nor there, however, because Wolff's claims *are not brought under that statute*.[35] As I found in the April 2 Memorandum Opinion (a finding that Wolff has not asked this Court to reconsider), § 1720 is not a cause of action, though it may be a rule of decision.[36] Third, the *Wingo* court in a prior related opinion found that the plaintiff's claims regarding an allegedly improper subrogation request *would* require the court to

---

[32] *See Jewish Lifeline Network*, 2015 WL 2371635 at *4–5.

[33] No. 18-01930 (M.D. Pa. Dec. 17, 2018) (Doc. 18).

[34] *See id.* at 3–6.

[35] For what it's worth, Wolff is correct that § 1720 is saved from preemption. *See FMC Corp. v. Holliday*, 498 U.S. 52, 60–61 (1990). I note, however, that prior to finding that § 1720 was saved from preemption, the Supreme Court directly stated that "Pennsylvania's antisubrogation law 'relate[s] to' an employee benefit plan." *Id.* at 58 (alteration in original).

[36] *See* Mem. Op. at 11 (Doc. 40).

direct its inquiry at the ERISA plan, contradicting Wolff's central argument in this motion.[37]

Contra Wolff's exhortations, this outcome is not an "absurdity." To begin, her concerns about being left without a remedy are greatly overstated in the context of this case, as her claims against *Aetna* have not at this time been dismissed. Even if they were, that preemption at times results in a plaintiff being unable to recover against some otherwise potential defendants is a policy judgment. This case is not the first time courts have encountered this policy issue. For example, Justice Ruth Bader Ginsburg observed in her concurrence in *Davila*: "Because the Court has coupled an encompassing interpretation of ERISA's preemptive force with a cramped construction of the 'equitable relief' allowable under § 502(a)(3), a 'regulatory vacuum' exists: 'Virtually all state law remedies are preempted but very few federal substitutes are provided.'"[38] Wolff is free to disagree with this policy judgment, but it is nevertheless the one Congress has made.

---

[37] *See Wingo*, 2017 WL 5971841 at *5 ("In order to determine whether Trover violated the MVFRL by making its claim for subrogation, a court must first determine whether the Plan is included in the types of benefits listed in the statute. This is because if the Plan was of a type not covered by the statute, then Trover would be entitled to assert a claim for subrogation unless this contravened its own policy.").

[38] *See Aetna Health Inc.*, 542 U.S. at 222 (Ginsburg, J., concurring) (quoting *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 456, 457 (3d Cir. 2003)).

Finally, Wolff has not demonstrated that this Court's finding of futility was in error. Amendment would not cure the problem that Wolff's state-law claims relate to her ERISA plan.[39]

Therefore, I deny Wolff's motion for reconsideration.

### B.    Defendants' Motion to Dismiss (Doc. 48)

Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the state-law claims (Counts IV–XII) and the ERISA § 502(a)(1)(B) claim (Count I) reasserted against Rawlings by Wolff in her Second Amended Complaint after they were dismissed in the April 2, 2020 Memorandum and Order. For the reasons below, I grant Defendants' motion and dismiss these claims.

### 1.    Legal standard for a motion to dismiss.

A plaintiff is required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."[40] A claimant must state a plausible claim for relief.[41] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[42] The plaintiff's factual allegations must rise above the speculative level, but the plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary

---

[39] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).
[40] Fed. R. Civ.  P. 8.
[41] *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).
[42] *Thompson*, 748 F.3d at 147.

element."[43] A court ruling on a motion to dismiss must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[44]

## 2.    Motion to dismiss discussion.

I first address the state-law claims against Rawlings. Wolff concedes that whether these claims stand turns on the outcome of her motion for reconsideration.[45] As discussed above, I deny her motion, and therefore find that these state-law claims are preempted by ERISA.

Wolff also reinstates and amends her ERISA claim against Rawlings in the Second Amended Complaint. I previously dismissed that claim because I found that Rawlings was not a proper defendant to the claim on that basis that Wolff did not allege that Rawlings possessed discretion or authority sufficient to give rise to ERISA fiduciary duties.[46] In her Second Amended Complaint, Wolff alleges that:

> 7. At all relevant times, both AETNA and RAWLINGS exercised discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)–(iii), 29 U.S.C. § 1002(21)(A)(i)–(iii).[47]

---

[43] *Id.*

[44] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[45] *See* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss 3 (Doc. 52). I thank Plaintiff's counsel for their appropriate brevity in briefing this issue.

[46] *See* Mem. Op. at 9–10.

[47] Second Am. Compl. at ¶ 7.

ERISA § 3(21)(A) sets forth the prerequisites to the imposition of ERISA

fiduciary duties in relevant part as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he
> exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or
> control respecting management or disposition of its assets, . . . or
> (iii) he has any discretionary authority or discretionary responsibility
> in the administration of such plan.[48]

This provision has been interpreted to define "fiduciary" "in *functional* terms of

control and authority over the plan."[49] "Accordingly, fiduciary duties under ERISA

attach not just to particular persons, but to particular persons performing particular

functions."[50] "Exercising control over the administration of benefits is the defining

feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B)."[51] "Since

discretionary authority, responsibility or control is a prerequisite to fiduciary

status, it follows that persons who perform ministerial tasks, such as claims

processing and calculation, cannot be fiduciaries because they do not have

discretionary roles."[52]

Wolff has not alleged facts sufficient to support an inference that Rawlings

was subject to ERISA fiduciary duties. Wolff's new allegation that Rawlings

"exercised discretionary authority, control and/or responsibility for administration

---

[48] 29 U.S.C. § 1002(21)(A).

[49] *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (emphasis in original).

[50] *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013).

[51] *Evans v. Emp. Benefit Plan, Camp Dresser & McKee, Inc.*, 311 Fed. Appx. 556, 558–59 (3d Cir. 2009).

[52] *Edmonson*, 725 F.3d at 422.

or management of the Plan and management or disposition of Plan assets within the meaning of ERISA" is a mere legal conclusion unsupported by underlying factual allegations.[53] While she makes much in her briefing about the extent of discretion required, Wolff fails to identify *any* instance of discretion or authority exercised by Rawlings rather than Aetna. More specifically, Wolff has not alleged that Rawlings exercised discretion or authority over the decisions she challenges, as she would be required to prove because ERISA fiduciary duties attach to particular functions.[54] That Rawlings did not exercise discretion is supported by the Policy document, which identifies Aetna alone as the claims administrator and ERISA fiduciary.[55]

Because Wolff has not alleged facts sufficient to support an inference that Rawlings possessed ERISA fiduciary duties, I grant Defendants' motion and dismiss Count I as to Rawlings only. As this is now the third iteration of the complaint and Wolff has been unable to allege the necessary facts, I further find that additional amendment of this claim would be futile.

---

[53] *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[54] *See Unisys*, 579 F.3d at 228; *Edmonson*, 725 F.3d at 413.

[55] *See* Br. in Supp. of Defs.' Mot. to Dismiss the Second Am. Compl. Ex. 4 at 9060.1 (AETNA0080) (Doc. 49-1); *In re Burlington Coat Factory*, 114 F.3d at 1426 ("As a general matter, a district court ruling on a motion to dismiss may not consider matter extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" (citation omitted and emphasis and alteration in original)).

III.   **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Reconsideration (Doc.

42) is **DENIED** and Defendants' Motion to Dismiss (Doc. 48) is **GRANTED**.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge