**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOANNE WOLFF, Individually | : | |
| and as Class representative | : | |
| on behalf of others Similarly | : | CIVIL ACTION |
| Situated, | : | |
| | : | No.  4:19-cv-01596-MWB |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| AETNA LIFE INSURANCE COMPANY | : | |
| and THE RAWLINGS COMPANY, LLC, | : | |
| | : | |
|     Defendants | : | |
| | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## **<u>Table of Contents</u>**

**<u>Page</u>**

I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................... 1

    A.   Proposed Class Definition ................... 2

    B.   Plaintiff Satisfies the Requirements
        of Rule 23(a) .............................. 2

        i.   Defendant's conduct was common
              as to the class ....................... 2

        ii.  Plaintiffs' claims are typical of
              the class ............................. 7

        iii. The adequacy requirement is
              satisfied ............................. 9

        iv.  The numerosity requirement is
              satisfied ............................. 11

    C.   The Court Should Certify a Class Under
        Rule 23(b)(3) .............................. 16

        i.   Issues common to the class
              predominate over individual issues ..... 16

        ii.  The superiority requirement is met ..... 19

III. CONCLUSION ....................................... 21

**<ins>Table of Authorities</ins>**

**<ins>Case</ins>**                                                        **<ins>Page(s)</ins>**

*Allen v. Holiday Universal*,
249 F.R.D. 166 (E.D. Pa. 2008) ........................ 2

*Amchem Products v Windsor*,
521 U.S. 591 (1997) .................................. 20

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ............................ 8

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ......................... 4

*Brooks v. Educators Mut. Life Ins. Co.*,
206 F.R.D. 96 (E.D. Pa. 2002) ........................ 3

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................. 2

*Huffman v. Prudential Ins. Co. of Am.*,
No. 2:10-cv-05135 .................................... 18

*In re Community Bank of Northern Virginia*,
418 F.3d 277 (3d Cir. 2005) .......................... 9

*In re Flat Glass Antitrust Litig.*,
191 F.R.D. 472 (W.D. Pa. 1999) ....................... 21

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) .......................... 16

*In re Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016) .......................... 11

*NFL Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) .......................... 8

*In re Prudential Ins. Co. of Am. Sales
Practices Litigation*,
148 F.3d 283 (3d Cir. 1998) .......................... 17

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .......................... 19

*Stanford v. Flomex L.P.*,
263 F.R.D. 156 (E.D. Pa. 2009) ....................... 4

## Table of Authorities (cont.)

**Case**                                                          **Page(s)**

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ........................... 12

*Sullivan v. DB Invs.*,
667 F.3d 273 (3d Cir. 2001) ........................... 2

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ............................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .................................. 13

## I. INTRODUCTION

Plaintiff Wolff was insured under a long-term disability (LTD) policy issued by Aetna. The LTD policy that provided disability benefits to Wolff was a standard disability policy that Aetna used to provide LTD coverage to thousands of insureds.

Wolff was injured in an accident and received disability benefits under her Aetna policy. Thereafter, Aetna demanded and secured reimbursement of the LTD benefits it had paid to Wolff. However, the standard LTD policy covering Wolff, which also covered members of the putative class, does not authorize reimbursement from a personal injury recovery.[1] Consequently, because reimbursement against Wolff is improper under her LTD policy, it is similarly improper against the putative class.

As demonstrated herein, Aetna's subrogation actions against Wolff were the same as Aetna's subrogation actions against the putative class members. Because Aetna engaged in a common course of conduct, for the reasons stated herein, this matter is appropriate for class certification.

## II. ARGUMENT

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a

---

[1] Aetna's actions also violated 75 Pa.C.S. § 1720. However, as the number of insureds whose claim is based entirely on a violation of § 1720 does not appear to be numerous enough for class certification, Plaintiff does not seek class certification on her § 1720 claim.

cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citation omitted). The required examination only asks "whether the requirements of Rule 23 [] are met." *Sullivan v. DB Invs.*, 667 F.3d 273, 306 (3d Cir. 2001). In conducting this analysis, the court should "resolve doubts in favor of approving certification." *Allen v. Holiday Universal*, 249 F.R.D. 166, 192 (E.D. Pa. 2008).

**A.   Proposed Class Definition**

As set forth in Plaintiffs' Motion for Class Certification, Plaintiffs seek certification of a class defined as:

> All persons who were injured and received long-term disability benefits from the defendant as a result of an injury causing event and as against whom defendant sought or recovered reimbursement of long-term disability benefits it had paid to insureds from the insureds' tort recoveries and who suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to the defendant as a result of defendants' wrongful reimbursement demands and actions based on violation of the policy.

**B.   Plaintiff Satisfies the Requirements of Rule 23(a)**

**i.   Defendant's conduct was common as to the class.**

Rule 23(a)'s commonality requirement involves "consideration of whether there are 'questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs

share at least one question of fact or law with the grievances of
the prospective class." Id. A single common question is
sufficient. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359
(2011).

Notably, this matter is an ERISA case. Courts consistently
have found that ERISA claims satisfy the commonality requirement.
*See*, *e.g.*, *Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96,
101 (E.D. Pa. 2002) ("The fact that this case involves a single
claim under ERISA ... also supports a finding that the
commonality prerequisite is satisfied. Unlike a diversity-based
class action, where a court must apply varying state laws for
class members from different states, uniform federal law will
apply to all class members here.").

This action is exceedingly well-qualified for class
certification because of the many common issues shared among the
Plaintiffs and putative Class Members. Here, Plaintiff and the
proposed class meet the commonality requirement because:

    (1) all of these questions stem from Defendants' common
    course of conduct directed against the Plaintiffs and
    putative Class Members; and

    (2) uniform federal law will apply to all class members
    here.

Initially, the overarching common issue between class
members is that the defendant sought and obtained reimbursement
against Wolff's and putative class members' personal injury
recoveries based on the same standard policy that did not
authorize reimbursement.

Accordingly, the focus of Plaintiff's claims is squarely upon the Defendant's common course of conduct that is the classic hallmark of class actions certified under Rule 23. *See Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975)*; Stanford v. Flomex L.P.,* 263 F.R.D. 156, 166 (E.D. Pa. 2009) ("[B]ecause the focus of each count is squarely on the behavior of the fiduciary defendants, common questions of law and fact exist as to each count[].").

Specifically, the common course of conduct involves:

1. Plaintiff Wolff was insured under a Long Term Disability (LTD) policy issued by Aetna.[2] *See* Smith Dec., ¶ 1; Exh. A.

2. The LTD policy which provided disability benefits to Wolff was a standard disability policy which Aetna used to provide LTD coverage to thousands of insureds. *See* Smith Dec., ¶ 2.

3. Wolff was injured in a MVA and received disability benefits under her Aetna policy.[3] *See* Smith Dec., ¶ 3.

4. Wolff made a claim, and secured a personal injury recovery against, the underlying tortfeasor. *See* Smith Dec., ¶ 4; Exh. B, pp.31-32.

5. Aetna demanded and secured reimbursement of the LTD benefits it had paid to Wolff.  *See* Smith Dec., ¶ 5; Ex. C, pp.33, 70; *see also Id.* at Ex. D.

6. Aetna demanded reimbursement against Wolff and similarly against the other insureds as it did against Wolff.

Aetna continuously and systemically acted against all class plaintiff insureds by wrongfully demanding reimbursement from the personal injury recoveries of class plaintiffs who were injured

---

[2] SAC at ¶ 6.

[3] SAC at ¶¶ 7, 9.

and had received LTD benefits from Aetna.[4] Defendant admitted
that its reimbursement demand against Wolff's personal injury
recovery based on that standard policy was part of its common
course to seek reimbursement against Wolff's and all Class
Members' personal injury recoveries. For example, Mr. Levak
testified as follows:



---



*See* Smith Dec., Ex. C, pp.201-203. Mr. Levak further testified:



Id. at p.207. Additionally, Mr. Levak testified:



Id. at 206; *see also* id. at ln. 23-24 ("Yes; Rawlings applies consistent standards on payment of those files, yes.").

In sum, the defendant's conduct vis-a-vis Wolff is the same as defendant's conduct vis-a-vis the class. Simply, the existence and nature of Defendant's conduct is common to Wolff and to all class members. Consequently, because reimbursement against Wolff is improper under her LTD policy, it is thus similarly improper against the putative class members who are insured for LTD

benefits under the same standard policy.

Second, uniform federal law, rather than varying state laws, will apply to all class members across the country. As this Court already determined, ERISA preempts all state laws insofar as they relate to an employee benefit plan subject to ERISA. See Dkt No. 40, p. 7-8. Further, as this Court noted in its July 15, 2021, Memorandum Opinion, Plaintiff's claim "is based on policy language, and is thus governed by federal common law." *See* Mem. Op., Dkt. No. 100 at *3.

Plaintiff here seeks certification on the issue that Aetna violated the terms of the long-term disability benefit policy by obtaining reimbursement of long-term disability benefits from plaintiff and the class members' personal injury recoveries. Federal common law, rather than state law, governs both Plaintiff's and the putative class members' claim, providing a basis for a finding of commonality.

In sum, Plaintiff's claims turn on common behavior and actions and involve the same breach the same standard policy and defendant's fiduciary duties to Plaintiff and the putative class. This Court will apply a uniform body of federal law to adjudicate these claim for the nationwide class. Accordingly, there exists a sufficient number of common questions of law and fact that make this matter appropriate for class certification.

**ii.  Plaintiffs' claims are typical of the class.**

The Third Circuit has "set a 'low threshold' to meet

typicality." *NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016). Rule 23(a)(3) requires that the claims of representative plaintiffs be "typical of the claims [] of the class." In evaluating typicality, courts ask "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). In that regard, the Third Circuit has noted that "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58.

Here, Plaintiff Wolff's claims typify those of the putative Class Members. The record demonstrates that every class member, including Plaintiff, is subject to the same policy terms and was subject to the same conduct by Defendant. Wolff's claim and each class member's claim is based on the same violations of the policy by the Defendant. In each instance, the defendant sought reimbursement against Wolff's and every Class Plaintiffs' personal injury recovery under the same standard policy that did not allow reimbursement from a personal injury recovery.

As the Third Circuit stated in *Baby Neal*, "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement

irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58. Thus, as Wolff's and the Class Plaintiffs' claims are typical in they are generally the same in terms of legal theory and circumstances underlying that theory, the typicality requirement is satisfied.

### iii. The adequacy requirement is satisfied.

of Rule 23 also considers "whether the named plaintiffs' interests are sufficiently aligned with the absentees', and [] tests the qualification of the counsel to represent the class." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 203 (3d Cir. 2005).

Plaintiff satisfies the adequacy requirement. Plaintiff understands the claims being asserted and on what basis. Plaintiff testified:

```
23 Q. How are your claims similar to
24 the other Class Members that are included in
1 your proposed Class?
2 A. I think I just answered that.
3 They were in a motor vehicle accident, they
4 had Aetna insurance and Aetna subrogated funds
5 from their settlement.
6 Q. And what do you understand your
7 claims to be? What did Aetna do wrong?
8 A. They took money out of my
9 settlement that they were not entitled to.
10 Q. Why? Why they were not
11 entitled to it?
12 A. Because it's not in my policy.
```

Smith Dec., Ex. B, pp. 152-153. Plaintiff also understands her role as class representative:

```
15 Q. What do you understand it means
16 to be a Class Representative?
```

```
17 A. It means that I will stand here
18 and fight for the rights of myself and other
19 Class Members to get what is owed back to us.
20 Q. And do you know what the duties
21 of a Class Representative are?
22 A. Yes, I just said them, is to
23 represent the entire Class.
24 Q. Anything else? Anything
1 specific?
2 A. To do the right thing. I mean,
3 that's representing a Class, doing what I
4 think is correct and what I think -- I believe
5 to be correct and right and represent an
6 entire class of people.
7 Q. And do you understand that
8 being a Class Representative means that you
9 may have to put the interest of the Class
10 above your own individual interests?
11 A. Yes. It's not just about me.
12 It's about everybody at this point.
```

Id. at 153-154. Further, when asked what she wanted out of this

lawsuit herself, Plaintiff testified:

```
3 Q. What do you want out of this
4 lawsuit for yourself?
5 A. For myself and for the Class of
6 people is to get the money back that was taken
7 from Aetna back.
```

Id. at 162.

Here, Plaintiff has clearly demonstrated that she has a

sufficient understanding of what her claim is about and her

duties as class representative. She also testified that she

wanted for the class the same things she wanted for herself,

demonstrating that her interests are aligned with those of the

class. Defendant does not have any basis to dispute her adequacy

as a class representative insofar as her understanding of the

claims and her role as class representative.

Further, Wolff's interests are sufficiently aligned with the

class. Wolff's interests and those of the Class are completely complementary and synonymous. Plaintiff and the other Class members have the same interest in proving Defendant's liability for their losses from common legal and factual theories. A vigorously sought recovery as to Wolff in no way prejudices or undermines the claims of the class. In fact, the more vigorous and successful Wolff is with regard to her personal claim, the more benefit and value will inure to the class members.

Finally, the Court can also readily find The Law Office of Charles Kannebecker, and their respective members, adequate. The firm possesses the capability, persistence, financial ability, and resolve to prosecute this case to its end. Attorney Kannebecker actively practices in the state and federal courts of Pennsylvania, New York, and New Jersey. Attorney Kannebecker is a member of the Million Dollar Advocates Forum, served on the Board of Governors for the Pennsylvania Association for Justice, and has been selected to Super Lawyers from 2017 through the present.

Accordingly, Plaintiff's counsel is thus more than adequate to represent the class.

### iv. The numerosity requirement is satisfied.

The "numerosity requirement is satisfied when 'the class is so numerous that joinder of all members is impracticable.'" *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (quoting Fed. R. Civ. P. 23(a)(1)). The Third Circuit has said that "generally if the named plaintiff demonstrates that the

potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Initially, the size of this class exceeds 40. Aetna sought reimbursement of long-term disability benefits from 30 people in Pennsylvania covered by the standard insurance policies containing identical "Other Income Benefits" terms as Plaintiff's insurance policy. See Smith Dec., Ex. C, pp.193-194.

Further, according to discovery produced following this Court's July 15, 2021, Order, Aetna additionally sought reimbursement of long-term disability benefits from at least 23 additional Bank of America Employees outside of Pennsylvania covered by the same long-term disability insurance policy as Wolff.

Accordingly, Plaintiff asserts there are at least 53 putative class members, presumptively satisfying the numerosity requirement.

However, there will likely be more class members. At this juncture, Defendant has not provided full discovery responses to Plaintiff's Request for Production. In Plaintiff's First Document Request, Plaintiff demanded the following documentation:

    29.  A list of all such participants referenced above whom the defendant asserted subrogation, asserted a demand for reimbursement of overpayment or repayment against their  personal injury recoveries as of the date of filing the Complaint since 2010;

    30.  Copies of all lien and/or repayment demand letters

> sent to members of the disability plans
> administered by Defendant (including the
> addresses to which they were sent) through the
> date of filing of the Complaint;

31. A list of all individuals from whom the defendants
recovered funds in response to their subrogation,
repayment and/or reimbursement of overpayment
demands;

32. All documents relative to the allocation, payment,
reimbursement or transfer of all the money which
other members of the class paid to Defendant or to
Rawlings;

40. All policies and other documents regarding each
and every claim where an employee who was injured
was paid long term disability benefits and where a
lien, subrogation right, right to reimbursement of
Overpayment or reimbursement demand was made
against the personal injury recovery of that
employee.

Defendant has provided only a limited response to
Plaintiff's demand which omitted what will likely be the bulk of
the people from whom defendant obtained reimbursement of
benefits. For example, Defendant has not provided discovery
regarding individuals outside of Pennsylvania covered by the same
standard policy as Wolff as it did for individuals in
Pennsylvania.

Further, Plaintiff tried to secure the information at
deposition, but Defendant did not answer Plaintiff's line of
questions.[5] Mr. Levak, Aetna's corporate designee, could not
testify as to the total number of reimbursement claims Aetna
asserted against all of its insureds insured under a long-term

_____

[5] The efforts Plaintiff's counsel undertook to secure this
information is set forth in the Smith Declaration, ¶ 6.

disability policy like Joanne Wolff's nationally. Smith Dec., Ex.
C, pp. 186, 188-92, 194-98.

To date, Defendant has still not provided the documentation
with regard to all persons who were insured under the subject
standard policy which is a basis for the claim. When Aetna
finally provides the outstanding documentation which includes the
rest of the defendant's subrogation claims under the subject
policy, those documents should further confirm that the number of
plaintiffs is well above 40.

In light of Aetna's incomplete document responses and
lack of information at deposition, in an effort to demonstrate
that even more claims are likely, Plaintiff provides this Court a
logical extrapolation from which to gauge the potential number of
class members which actually exist and would confirmed upon
defendant's provision of the outstanding document responses.

Prior to Aetna's spinning off its long-term disability
insurance business to The Hartford, Aetna collected:

a) $879 million in long-term disability premiums for 2015;
b) $957 million in long-term disability premiums for 2016;
c) $799 million in long-term disability premiums for 2017.[6]

Further, discovery demonstrated that Aetna used a standard
form policy for its long-term disability insurance. Given the
scope of the class that Plaintiff seeks to represent, the size of

_____

[6] *See* Aetna Form 10-K for the year ended December 31, 2017,
https://www.sec.gov/Archives/edgar/data/0001122304/00011223041800
0027/form10-k.htm

the class as actually defined by Plaintiff would well exceed 40, satisfying the numerosity requirement under the Third Circuit's analysis. This calculation has two bases.

First, Aetna sought reimbursement of long-term disability benefits from 30 people in Pennsylvania covered by insurance policies containing identical "Other Income Benefits" terms to Plaintiff's insurance policy. *See* Smith Dec., Ex. C, pp.193-194. In a very general extrapolation, pursuant to U.S. Census Bureau, Pennsylvania had a population of 12,782,275 in 2016 as against a United States population of 322,941,311 in 2016.[7] Using U.S. Census data, Pennsylvania's population was 3.7% of the U.S. population. As previously stated, testimony from Mr. Levak demonstrated that Aetna sought and obtained reimbursement from 30 Pennsylvania insureds. Extrapolating generally therefrom, the total number of insureds nationally from whom Aetna sought and obtained reimbursement would be approximately 758.

Second, the number of people Aetna insures for disability and the approximate subrogation thereon may be extrapolated from Aetna's own available data. Aetna collected $68,053,160.00 in premiums for disability insurance from Bank of America in 2016 *See* Smith Dec., Ex. E. That same year, Aetna collected approximately $957,000,000.00 in long-term disability premiums nationwide. Pursuant to Aetna's premium information,

---

[7] https://www.census.gov/data/tables/time-series/demo/popest/2010s-state-total.html

approximately 7% of its disability insurance market was accorded to Bank of America. In a general extrapolation therefrom, as only 7% of its market produced 23 reimbursement claims under just the Bank of America policy, it can be expected that its reimbursement activities across all of its long-term disability policies like Joanne Wolff's would have affected approximately 342 people, again satisfying the numerosity requirement.

Accordingly, based upon the aforementioned estimations, the numerosity standard is presumptively met.

### C.   The Court Should Certify a Class Under Rule 23(b)(3)

To gain certification under Rule 23, Plaintiffs must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating controversy." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008). Plaintiffs meet both of these Rule 23(b)(3) "predominance and superiority" requirements.

### i.   Issues common to the class predominate over individual issues.

The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). According to the Supreme Court, an individual question is one "where members of a proposed class will need to

present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing that the issue is susceptible to generalized, class-wide proof." *Id*. Where "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id*. Further, courts have found predominance in cases where the class alleges a common scheme or course of conduct. *See In re Prudential Ins. Co. of Am. Sales Practices Litigation*, 148 F.3d 283, 314 (3d Cir. 1998).

Here, common issues predominate because Plaintiff can establish her claims through Defendant's common course of conduct. As previously demonstrated, there is an overarching common issue shared between the members of the class that the defendant secured subrogation based on a standard policy which did not authorize subrogation. *See* Part II(B)(i), *supra*. Thus, with regard to the central issue in this case, there is a common proof that defendant sought reimbursement against Plaintiff and the class in violation of the policy.

Because Defendant applied the same contract language and asserted the same rights to reimbursement against Plaintiff and the putative class, the issue of whether Defendant actually

17

possessed that right of reimbursement against the individual
members of the putative class predominates over any
individualized issues that may arise. Specifically, by showing
that Defendants did not possess any right of reimbursement
against Plaintiff under the plain language of the policy,
Plaintiff would not only establish her individual claim, but also
establish the claims of the class via class-wide, generalized
evidence.

In *Huffman v. Prudential Ins. Co. of Am.*, the Court found
that the plaintiff satisfied the predominance requirement because
"common legal issues of construing [the fiduciary's] obligations
under the [policies] predominate over any individual issues
specific to particular beneficiaries." *Huffman*, No.
2:10-cv-05135, at *11. The same type of predominance exists here:
Plaintiff's claim and the claims of the putative class involve
the common legal issue of construing Aetna's obligations under
the same policy that covers each of the putative class members.
Reimbursement from their personal injury recoveries is either
permitted or it is not permitted; the resolution of this issue
for Plaintiff's claim settles the issue for the entire class.
Since there is convergence in what Wolff and each class plaintiff
must prove to prevail, the predominance of common questions of
law and fact among the members of the Class clearly satisfies the
requirements of Rule 23.

Accordingly, because common issues predominate over

individual issues, Plaintiff has satisfied the predominance requirement.

### ii.   The superiority requirement is met.

Superior requires that a class action is the best method of achieving a "fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Several factors are relevant:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Id.

As to the first factor, the amount in controversy of many of the individual class members demonstrates that members of the class would be unable to individually prosecute their own actions. The tremendous costs of discovery and trial mean that some class members might not otherwise be able to pursue their claims. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("a class action facilitates spreading of the litigation costs among the numerous injured parties[].").   For example, a select number of putative class members below have low damages:



Because of the relatively small amount of these individual claims, class members would likely have great difficulty in finding an attorney who would take the case on a contingency fee basis. The only other alternative would be for putative class members to find counsel who would take an hourly fee, which would quickly exceed the value of most of their claims. The class action is superior in that regard, as it aggregates "the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products v Windsor*, 521 U.S. 591, 617 (1997).[8] Accordingly, denying class treatment might preclude individuals with smaller claims from obtaining any relief.

As to the second factor, there is no evidence that any of the putative class members have instituted any litigation against Aetna regarding Aetna's reimbursement demands. This case has already seen extensive litigation and this Court has already

---

[8] In a related vein, the refusal to certify a class so that redress for claims could effectively and realistically be pursued has the potential effect of insulating violations of the law from liability, effectively granting *de facto* immunity to the wrongdoer.

accorded much of its valuable time and resources to this matter.

As to the third factor, concentrating the litigation of claims in this particular forum is desirable. This Court is more than qualified to adjudicate Plaintiff's claims. Given that ERISA provides a uniform body of law for this Court to apply to Plaintiff's claims and the claims of the proposed class, pleadings, discovery, argument, and judgment, will be centrally managed and addressed efficiently.

As to the fourth factor, there will not be any difficulties in managing this action as a class action. In fact, judicial economy will be served as the class is spread across the country and certification would foster handling common things in common. *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 498 (W.D. Pa. 1999). Indeed, the filing of individual actions would be unnecessarily duplicitous, expensive and time-consuming and risk inconsistency in everything from evidentiary rulings to final judgments. If certification is not granted then Defendants would need to defend against Plaintiffs' allegations in proceeding after proceeding. *Id.*

Accordingly, for the reasons stated above, all of the superiority factors weigh in favor of class certification. A class action is thus superior to other available methods for the fair and efficient adjudication of the controversy.

## III. CONCLUSION

For the aforementioned reasons, this Court should grant Plaintiff's Motion for Class Certification and appoint Charles Kannebecker, Esq. and The Law Office of Charles Kannebecker as class counsel.

Respectfully Submitted,

THE LAW OFFICE OF CHARLES KANNEBECKER


_____/s/_____
Charles Kannebecker, Esq.