# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOANNE WOLFF, *individually and on behalf of a Class of Similarly Situated Individuals*, | No. 4:19-CV-01596 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| AETNA LIFE INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM OPINION

### MAY 25, 2022

## I.     BACKGROUND

In 2020, Joanne Wolff, on behalf of herself on all similarly situated individuals, filed a second amended complaint[1] against Aetna Life Insurance Company ("Aetna") raising claims for: a violation of the Employee Retirement Income Security Act of 1974 ("ERISA"),[2] breaches of fiduciary duties, conversion, money had and received, intentional misrepresentation, negligent misrepresentation, unjust enrichment, theft by deception, attempted theft, a violation of Pennsylvania's

---

[1]   Wolff originally filed this action in Pennsylvania state court on August 8, 2019, and the action was later removed to federal court by Aetna. Doc. 1.

[2]   29 U.S.C. § 1001, *et seq.*

Unfair Trade Practices and Consumer Protection Law, and a violation of the Pennsylvania Fair Credit Extension Uniformity Act.[3]

Wolff avers that she was previously insured for long-term disability benefits under the terms of a group plan (the "Plan") issued by Aetna through Bank of America Corporation—Wolff's employer.[4] In September 2015, Wolff was temporarily disabled as a result of a motor vehicle accident that caused Wolff injuries.[5] Wolff submitted a claim to Aetna under the Plan and received long-term disability benefits exceeding $50,000.[6]

Wolff separately filed a civil action against the other party involved in the accident.[7] Wolff and the defendant eventually settled the matter, with Wolff receiving monetary compensation from the defendant in that matter.[8] Aetna and another entity with which it worked, the Rawlings Company ("Rawlings"), sought reimbursement of the benefits that Aetna had paid to Wolff under the terms of the Plan, despite the Plan allegedly not permitting such reimbursement.[9] After negotiations between Wolff and Rawlings, Wolff agreed to reimburse Aetna and Rawlings $30,000.[10]

---

[3]    Doc. 44.
[4]    *Id.* ¶ 6.
[5]    *Id.* ¶ 8.
[6]    *Id.* ¶¶ 9-10.
[7]    *Id.* ¶ 11.
[8]    *Id.* ¶ 12.
[9]    *Id.* ¶¶ 13-16.
[10]   Doc. 111-3 at 25-26.

Despite agreeing to pay that sum to Aetna, Wolff asserts that the Plan did not permit Aetna to pursue reimbursement for her personal injury recovery. As relevant here, Wolff alleges that the Plan permitted Aetna to obtain reimbursement only for "Other Income Benefits," and personal injury recoveries are not included in the Plan's definition of "Other Income Benefits."[11]

Wolff has now filed a motion to certify a class pursuant to Federal Rule of Civil Procedure 23.[12] Wolff contends that certification is appropriate because Aetna engaged in a common course of conduct by seeking reimbursement from individuals who had plans similar to Wolff's—in that said plans did not permit reimbursement for personal injury recoveries—but Aetna nevertheless pursued reimbursement from those individuals.[13] Wolff further asserts that the remainder of the requirements for class certification are met and, therefore, the class should be certified.[14]

Aetna responds that the conditions for class certification have not been met.[15] First, it argues that different Aetna plans contain varying language, meaning the Court would need to conduct an individualized assessment of each plan.[16] Second, Aetna asserts that there are insufficient class members to warrant certification.[17] Third, Aetna claims that certain defenses are applicable only to certain individuals,

---

[11]  Doc. 44 ¶¶ 35-40.
[12]  Doc. 107.
[13]  Doc. 108.
[14]  *Id.*
[15]  Doc. 111.
[16]  *Id.* at 11-12, 14-18.
[17]  *Id.* at 12-14.

and misrepresentation claims require individual analyses as to each individual, rendering class certification inappropriate.[18] Finally, Aetna contends that joinder of the parties is practical, and trial of a class action would be unmanageable.[19]

Wolff has filed a reply brief, and the motion is now ripe for disposition.[20] For the following reasons, Wolff's motion for class certification will be granted.

## II.   DISCUSSION

"In considering whether certification is proper, [this Court] refrain[s] from conducting a preliminary inquiry into the merits."[21] "At the same time, [the Court] must carefully examine the factual and legal allegations."[22] Rule 23 certification is appropriate

> only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[23]

Plaintiffs must further meet one of the enumerated instances in Rule 23(b), in this case, "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

---

[18]   *Id.* at 18-27.
[19]   *Id.* at 27-28.
[20]   Doc. 117.
[21]   *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998).
[22]   *Id.*
[23]   Fed. R. Civ. P. 23(a).

controversy."[24] "[T]he party seeking to certify a class bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23."[25]

## A.  Rule 23(a) Requirements

First, Wolff must establish the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. "The requirements of Rule 23(a) are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances."[26] The Court concludes that Wolff has satisfied these requirements.

### 1.  Numerosity

"To begin, proper class certification requires a finding of numerosity, or that the putative class is 'so numerous that joinder of all members is impracticable.'"[27] "Impracticable does not mean impossible and refers rather to the difficulties of achieving joinder. This calls for an inherently fact-based analysis that requires a district court judge to take into account the context of the particular case, thereby

---

[24]  Fed. R. Civ. P. 23(b)(3).
[25]  *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 265 (3d Cir. 2021) (internal quotation marks omitted).
[26]  *Barnes*, 161 F.3d at 140.
[27]  *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001) (quoting Fed. R. Civ. P. 23(a)(1)).

providing district courts considerable discretion in making numerosity determinations."[28]

"While no minimum number of plaintiffs is required to maintain a suit as a class action, [the Third Circuit] has said that generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[29] The Third Circuit has further "recognized the general rule that 'a class of 20 or fewer is usually insufficiently numerous . . . while classes with between 21 and 40 members are given varying treatment.'"[30] In determining the potential size of a class, courts must be mindful that "mere speculation as to the number of class members—even if such speculation is a bet worth making—cannot support a finding of numerosity."[31] Consequently, "where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone."[32]

Here, Wolff asserts that the potential class size greatly exceeds forty, as Aetna sought reimbursement from 53 individuals with nearly identical "Other Income Benefits" terms in their plans.[33] Wolff further argues that discovery will likely reveal

---

[28]  *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (internal citations quotation marks omitted).

[29]  *Id.* at 249-50 (brackets and internal quotation marks omitted).

[30]  *Id.* at 250 (quoting 5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.22 (brackets and ellipses omitted)).

[31]  *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (brackets and internal quotation marks omitted).

[32]  *Id.* (internal quotation marks omitted).

[33]  Doc. 114 at 16.

more potential class members and, using a "logical extrapolation," she estimates—based on Aetna's long-term disability insurance income, along with the populations of Pennsylvania and the United States—that there are as many as 342 potential class members.[34]

As an initial matter, the Court finds that any potential class members beyond the 53 specifically identified individuals cannot support a finding of numerosity. There is no data or available evidence to support the notion that 342 potential class members exist outside of the 53 identified individuals. Although the numbers that Wolff provides suggest that "those odds might be enough for a good wager . . . mere speculation as to the number of class members . . . cannot support a finding of numerosity," even if such speculation has some grounding.[35] The Court therefore will not account for those other potential members in determining whether the class is sufficiently numerous.

That leaves the 53 other individuals as potential class members, which would generally be sufficient to support a finding of numerosity. Aetna argues, however, that the number of individuals is actually significantly lower for several reasons. First, Aetna asserts that the proposed class must be limited only to those individuals who held plans issued through Bank of America—as other plans may have dissimilar

---

[34]   *Id.* at 18; *see id.* at 16-20.
[35]   *Mielo*, 897 F.3d at 486.

language—and, counting only those individuals, the number of potential class members drops to 28.[36]

The Court mostly rejects Aetna's assertion that differences in the language contained in various plans means that the potential class must be limited only to Bank of America employees. As Wolff points out, the plan language that is relevant to her and other potential class members' claims is the "Other Income Benefits" definition contained within those various plans, and any other differences in plan language is of limited or no relevance to this case.[37] For the most part, the relevant language contained in the "Other Income Benefits" section of each of the plans is substantially similar, in that the language does not specifically encompass personal injury recoveries.[38]

However, one plan does include a definition of "Other Income Benefits" that is potentially broad enough to encompass personal injury recoveries.[39] That plan defines the term to include, *inter alia*, any "permanent impairment" or "loss of bodily function or capacity."[40] While this incredibly broad language *may* encompass

---

[36]   Doc. 111 at 12-13.
[37]   Doc. 117 at 6-8.
[38]   *See* Doc. 112-1 at 11-12; Doc. 112-2 at 13-14; Doc. 112-4 at 13-14; Doc. 112-5 at 12-13; Doc. 112-6 at 7-8; Doc. 112-7 at 5-6. Although Aetna notes that some definitions of "Other Income Benefits" contained in the plans specifically include "Automobile no-fault wage replacement benefits required by law," Doc. 111 at 12, that term applies only to "wage replacement benefits," not personal injury recoveries that compensate for medical bills, pain and suffering, and other damages. *Id.*
[39]   Doc. 112-3.
[40]   *Id.* at 11.

personal injury settlements,[41] there is no way for the Court to determine based on the available information whether such language covers personal injury settlements, and whether or how many of the potential class members are covered under that plan. The Court therefore cannot conclude that any of the 53 identified individuals should be struck from the class based on varying plan language.

Second, Aetna argues that five potential class members would be excluded under a six-year statute of limitations, while seventeen would be excluded under a shorter three-year statute of limitations that is applicable when an individual has actual knowledge of an ERISA breach.[42] Aetna further asserts that the two-year limitations period provided in the Plan would drop the number of potential class members to five.[43]

As to Aetna's reference to the two-year limitations period provided in the Plan, the Court finds that this is no impediment to class certification. That limitations period, by its own plain language, applies only to legal action taken by an individual "to recover payment under any benefit" that was denied by Aetna.[44] That period therefore does not apply here. Moreover, although Aetna argues that many individuals would be barred from recovery under a three-year limitations period,

---

[41]  It is highly unlikely that such an interpretation is warranted, as interpreting the language in such a manner would permit Aetna to recover from funds paid to any individual for any reason.
[42]  Doc. 111 at 13.
[43]  *Id.*
[44]  Doc. 111-4 at 19.

such a limitations period applies only when an individual has "actual knowledge" of an ERISA violation—otherwise the default limitations period is six years.[45]

Although it is apparent from the documents provided by Aetna that many payments were issued to individuals outside of three years of the filing of this suit, but within six years of the filing date,[46] it is not clear that a three-year limitations period would apply here. The question of whether a three-year limitations period applies is somewhat fact intensive,[47] and Aetna has provided no support for the proposition that any of the potential class members had actual knowledge of an ERISA violation that would trigger the shorter limitations period.

Critical to the Court's conclusion is the fact "that the statute of limitations is [ordinarily not] a barrier to class membership, as that is an affirmative defense that may be raised later on, but does not typically preclude class certification."[48] In the absence of any evidence of actual knowledge, the Court cannot conclude that any of the potential class members should be excluded based on the three-year statute of limitations. Rather, the Court concludes that any determination as to the applicable

---

[45]   29 U.S.C. § 1113.

[46]   *See* Doc. 112-8.

[47]   *See Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 511 (3d Cir. 2006) (noting "that for purposes of determining actual knowledge, it must be shown that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation" (internal quotation marks omitted)).

[48]   *Cox v. Porsche Fin. Servs., Inc.*, 330 F.R.D. 322, 332 (S.D. Fla. 2019) (citing *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 651 (S.D. Fla. 2015).

limitations period must wait until further discovery is conducted, and the Court has the appropriate information to reach such a determination.

Consequently, even assuming that five potential members must be excluded based upon a six-year statute of limitations,[49] there remain 48 potential class members, well outside the 40-member threshold that generally satisfies Rule 23's numerosity requirement.[50] Furthermore, it does not appear to the Court at this stage in the proceedings that joinder of 48 individuals would be practical since several of the claims are for relatively small amounts,[51] indicating that these potential class members would not have the "ability and motivation to litigate as joined plaintiffs."[52] In sum, the Court finds that, at this stage, there is sufficient evidence that the proposed class satisfies the numerosity requirement of Rule 23.

### 2.   Commonality and Typicality

The Court further concludes that Wolff has demonstrated commonality and typicality. The Third Circuit has stated that "[t]he concepts of commonality and typicality are broadly defined and tend to merge."[53] As to commonality, plaintiffs

---

[49]   It is not entirely clear that the individuals must be excluded, as tolling of the limitations period may be appropriate in certain instances. *See, e.g., Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008) (noting that ERISA limitations period may be tolled "based on a theory of equitable estoppel"); *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (ERISA limitations period may be tolled based on fraudulent concealment).

[50]   *In re Modafinil Antitrust Litig.*, 837 F.3d at 249.

[51]   Doc. 114 at 23-24.

[52]   *See In re Modafinil Antitrust Litig.*, 837 F.3d at 253 (setting forth non-exhaustive list of considerations that are indicative of whether joinder is practical).

[53]   *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998) (internal quotation marks omitted).

must demonstrate "that 'there are questions of law or fact common to the class.'"[54] "Commonality does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."[55]

Moreover, "in a properly certified class, the claims of the class representatives must be typical of the class as a whole."[56] "In considering the typicality issue, the district court must determine whether the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."[57] "This criteria does not require that all putative class members share identical claims. Indeed, so long as the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."[58] "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."[59] Therefore, a proper assessment of typicality will

> include three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual

---

[54]  *Johnston*, 265 F.3d at 184 (quoting Fed. R. Civ. P. 23(a)(2)).
[55]  *Id.* (brackets and internal quotation marks omitted).
[56]  *Id.*
[57]  *Id.* (brackets, ellipsis, and internal quotation marks omitted).
[58]  *Id.* (internal quotation marks omitted).
[59]  *Barnes*, 161 F.3d at 141.

circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.[60]

First, the central legal question that will be dispositive of Wolff's claims, and the claims of all other potential class members, is whether funds paid out under Aetna's long-term disability plans were properly reimbursable when the plans did not specifically include personal injury recoveries within their definition of "Other Income Benefits" and where reimbursement was obtained for personal injury recoveries. Second, this matter will be governed by uniform ERISA federal law. Because Wolff "share[s] at least one question of fact or law with the grievances of the prospective class,"[61] commonality is met.

Similarly, as to typicality, the legal theory advanced—that Aetna sought reimbursement despite the fact that the plans did not permit reimbursement for personal injury recoveries—will be the same for each class member, as will the general factual circumstances underlying that theory.[62] Moreover, the interests and incentives of Wolff would appear to be aligned with the potential class members, as

---

[60]  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

[61]  *Johnston*, 265 F.3d at 184 (brackets and internal quotation marks omitted).

[62]  Aetna argues that varying language among the different plans precludes a finding of typicality. Doc. 111 at 19. However, as discussed previously, the relevant language is sufficiently similar such that any minor variations in the other terms of the plans do not preclude a finding of typicality.

13

resolution of the major legal issues underlying her claim would likewise largely resolve the claims of the other potential class members.

The critical issue then is whether Wolff is "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation."[63] Aetna argues that several defenses are applicable to Wolff alone or "some, but not all, potential class members."[64]

Aetna first argues that fifteen potential class members signed settlement agreements and releases, with fourteen of them explicitly acknowledging that the reimbursement demanded by Aetna was permitted under their plans.[65] However, as Aetna acknowledges, Wolff was not among those individuals,[66] and the existence of this defense cannot therefore defeat a finding of typicality.[67] Although Aetna notes that six class members, including Wolff, obtained releases from Rawlings disclaiming any attempt to recover further amounts from the personal injury recoveries—which Aetna argues undermines any allegations of continuing harm—there is no indication that such a defense would "become a major focus of the litigation,"[68] given that such allegations form only a small portion of the complaint.

---

[63] *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 599.

[64] Doc. 111 at 20; *see id.* at 20-25.

[65] *Id.* at 20-21.

[66] *Id.* at 21.

[67] *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 599 ("the *class representative* must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation" (emphasis added)).

[68] *Id.*

In a similar vein, Aetna argues that some potential class members have administrative appeal requirements.[69] Aetna is correct that at least one plan requires an administrative appeal within 180 days "following receipt of an adverse benefit decision,"[70] but there is no evidence that such a defense applies to Wolff, or that any such defense is "likely to become a major focus of the litigation."[71] While Aetna next invokes the voluntary payment doctrine,[72] that defense may apply to every potential class member, all of whom reimbursed Aetna from funds received as a result of a personal injury recovery and, therefore, this defense does not render Wolff's claims atypical of the class.

Aetna next argues that many—but not all—of the potential class members are subject to a statute of limitations defense, which impacts any typicality analysis.[73] However, Aetna does not argue that any such defense is applicable to Wolff, the class representative, nor could it—Wolff reimbursed Aetna on February 20, 2018, and filed suit against Aetna on August 8, 2019, well within even the most stringent limitations period.[74] Because this defense is not applicable to "the class representative," it does not prevent a finding of typicality.[75]

---

[69]   Doc. 111 at 25.

[70]   Doc. 112-1 at 26. Wolff's plain contains no such provision, and simply states that individuals have a right to appeal under ERISA. Doc. 114-2 at 33. The Court presumes that Wolff and other individuals were provided 180 days to file an appeal, in accordance with the minimum period required by ERISA. *See* 29 C.F.R. § 2560.503-1(h)(3)(i).

[71]   *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 599.

[72]   Doc. 111 at 22-23.

[73]   *Id.* at 23-24.

[74]   Doc. 111-13 at 3.

[75]   *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 599.

Finally, Aetna argues that Wolff lacks standing because she did not suffer "an actual, individual loss" as her attorney in her personal injury action reduced the contingency fee to account for the lien placed by Rawlings against the judgment.[76] Aetna cites to no evidence, however, to support the notion that either (1) the contingency fee was reduced with the explicit goal that Wolff would suffer no actual loss, or (2) that a reduction in Wolff's payment to her attorney adequately compensates her for the allegedly improper reimbursement submitted to Aetna. This defense thereof also does not defeat a finding of typicality.

In sum, none of the affirmative defense to which Aetna cites are both (1) applicable to Wolff and not many of the members of the class and (2) likely to become a major focus of the litigation. Because Wolff meets all three concerns implicated by typicality, the Court finds that she had satisfied this requirement of Rule 23.[77]

### 3.   Adequacy of Representation

Lastly, under Rule 23(a) "class representatives must 'fairly and adequately protect the interests of the class.'"[78] "In analyzing this criteria, the court must

---

[76]   Doc. 111 at 24-25.

[77]   *See, e.g., In re Schering-Plough Corp. Erisa Litig.*, No. CIV.A. 03-1204(KSH), 2008 WL 4510255, at *7 (D.N.J. Jan. 31, 2008) ("The complaint alleges breaches of various fiduciary duties common to the entire class. The alleged misstatements and non-disclosures were class-wide. No individual communications are alleged. Where an ERISA complaint alleges plan-wide breaches of fiduciary duties and plan-wide misrepresentations, courts have found the typicality requirement satisfied").

[78]   *Johnston*, 265 F.3d at 185 (quoting Fed. R. Civ. P. 23(a)(4)).

determine whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class."[79]

It is apparent that Wolff's interests adequately align with those of the potential class. The core of Wolff's case revolves around the question of whether Aetna improperly sought reimbursement from personal injury recoveries despite such recoveries not being included in the "Other Income Benefits" definitions provided in the Plan. Answering that question will largely be dispositive of any other potential class members' claims. It further appears to the Court, and Aetna does not argue to the contrary, that Wolff's attorney is capable of adequately representing the class. Consequently, all requirements of Rule 23(a) are met.

## B.   Rule 23(b)(3) Requirements

Having concluded that the requirements of Rule 23(a) have been met, the Court must assess whether Wolff has satisfied the requirements of Rule 23(b)(3). Under Rule 23(b)(3), class certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[80]

Any analysis under Rule 23(b)(3) "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case."[81] "An individual

---

[79]  *Id.*
[80]  Fed. R. Civ. P. 23(b)(3).
[81]  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."[82]

## 1.    Predominance

As to the first requirement of Rule 23(b)(3), "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."[83] The United States Supreme Court has emphasized that:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.[84]

The Court finds that Wolff has established predominance, as a single issue is "more prevalent or important than the non-common, aggregation-defeating, individual issues."[85] Here, Wolff alleges that Aetna issued long term disability policies to individuals, and those policies did not include personal injury recoveries under the definition of "Other Income Benefits" for which Aetna was permitted to seek reimbursement of funds paid. Aetna nevertheless sought and obtained

---

[82]   *Id.* (brackets and internal quotation marks omitted).
[83]   *Id.* (internal quotation marks omitted).
[84]   *Id.* (internal quotation marks omitted).
[85]   *Id.* (internal quotation marks omitted).

reimbursement from individuals who carried such policies. Answering the question of whether reimbursement was proper under those circumstances will be largely dispositive of every potential class members' claims.

Although there are some differences in the language used in each plan's "Other Income Benefits" definition, the specific language that Wolff alleges would permit Aetna to seek reimbursement from personal injury recoveries is absent from each plan. Moreover, while there are important individual issues that will need to be tried separately, such as the affirmative defenses to which Aetna cites, those individual issues cannot be said to predominate the most critical question in this case, which is a common question.[86]

Aetna nevertheless argues that Wolff's "misrepresentation-based claim" under 29 U.S.C. § 1132(a)(3) necessitates a highly individualized assessment of each potential class member's circumstances, including whether Aetna made misrepresentations to those individuals and whether the individuals reasonably relied on those alleged misrepresentations.[87] Wolff responds that she has not asserted a claim related to misrepresentation and, instead, raises a claim for a breach of the

---

[86]  *See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 161-62 (3d Cir. 2002) (holding that statute of limitations defense did not preclude finding of predominance, even where that defense implicated questions of whether defendant engaged in fraudulent concealment, as "[n]otwithstanding the individual determinations that will undoubtedly arise at trial, common issues of concealment predominate here because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did" (internal quotation marks omitted)).

[87]  Doc. 111 at 25-27.

fiduciary duty of disclosure which does not rely on elements of fraudulent misrepresentation but, instead, is satisfied as a matter of law if Aetna failed to make required disclosures about the Plan.[88]

Count Three of the second amended complaint asserts that Aetna failed to make the required disclosures pursuant to 29 U.S.C. § 1132(a)(3)—specifically, that it was not permitted to seek reimbursement of personal injury recoveries.[89] Wolff claims that Aetna was under a duty to make proper disclosures "and to avoid misrepresentations,"[90] but nevertheless "continuously, systematically and wrongfully acted against [potential class members] by wrongfully asserting claims for reimbursement,"[91] "inaccurately did not disclose to [potential class members] that Aetna was not entitled to reimbursement" for personal injury recoveries,[92] and made "disclosures to [potential class members that] were inaccurate as being both contrary to law and contrary to the Employee Welfare Benefits Plan."[93] This language indicates that the claim proceeds at least in part as an ERISA misrepresentation and/or inadequate disclosure claim—i.e., that Aetna has represented that it may seek reimbursement for personal injury recoveries, or failed

---

[88] Doc. 117 at 24-26.
[89] Doc. 44 ¶¶ 133-49.
[90] *Id.* ¶ 135. *See id.* ¶ 137.
[91] *Id.* ¶ 141.
[92] *Id.* ¶ 142.
[93] *Id.* ¶ 143.

to inform participants that it may not seek such reimbursement, even though the plans allegedly do not permit such reimbursement.

> The Third Circuit has held that:
>
> a breach of fiduciary duty claim may be premised on either a misrepresentation or an omission. To establish such a breach, a plaintiff must demonstrate that: (1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure.[94]

Wolff's putative misrepresentation claim may necessitate a showing of detrimental reliance by the potential class members based on Aetna's misrepresentations or inadequate disclosures.[95] However, even assuming that one of Wolff's claims relies on some individual analysis of detrimental reliance, this does not mean that Wolff has failed to establish predominance.

Although it is certainly true that, as a general matter, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable,"[96] the Third Circuit has emphasized that "the presence of individual questions does not *per se* rule out a finding of predominance."[97] "In particular, the

---

[94] *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (internal quotation marks omitted).

[95] Because, as discussed below, the Court concludes that predominance is established regardless of whether class members must establish detrimental reliance, this Court declines to consider at this stage whether, as argued by Wolff, there is some exception to the rule that a plaintiff must establish reliance on a fiduciary's omissions.

[96] *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008).

[97] *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998).

presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate,"[98] and "[i]f issues common to the class overwhelm individual issues, predominance should be satisfied."[99] Answering the question of whether class questions predominate necessarily "involves a qualitative assessment of common versus individualized questions."[100]

Here, the issue of detrimental reliance, although an individualized question, is only a small part of Wolff's case. Potential class members share a number of common issues that must be proven with regard to this claim, including whether: (1) Aetna was an ERISA fiduciary; (2) Aetna was prohibited from pursuing reimbursement for personal injury recoveries under the plans; (3) Aetna nevertheless pursued such reimbursement; (4) Aetna failed to disclose that it was not permitted to obtain such reimbursement or misrepresented that it was permitted to so do; and (5) such an omission or misrepresentation was material. Additionally, while reliance may be an element of Count Three, that is only one of three ERISA claims presented in the amended complaint.[101] Given that critical common issues greatly outnumber

---

[98]   *Id.* (internal quotation marks omitted).
[99]   *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015).
[100]  *Id.*
[101]  *See* Doc. 44.

the individual issues that would need to be addressed in this matter, the Court concludes that class issues predominate.[102]

In the matter of *In re Linerboard Antitrust Litigation*, the Third Circuit examined a somewhat analogous issue in determining whether the existence of a statute of limitations defense—and the issue of whether defendants engaged in fraudulent concealment that would toll the limitations period—undermined a finding of predominance.[103] The court concluded that it did not, reasoning that "[n]otwithstanding the individual determinations that will undoubtedly arise at trial, common issues of concealment predominate here because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did."[104] That court noted that that "key questions" would not revolve

---

[102] *See, e.g., Prudential*, 148 F.3d at 314 (affirming finding of predominance where district court concluded that "many purchasers have been defrauded over time by similar misrepresentations, or by a common scheme to which alleged non-disclosures related," "reliance is an issue secondary to establishing the fact of defendant's liability," and "most of the plaintiffs' claims do not even involve a reliance element"); *Hargrove v. Sleepy's LLC*, No. 310CV01138PGSLHG, 2022 WL 617176, at *11 (D.N.J. Mar. 2, 2022) ("Because common evidence may determine Sleepy's liability for wage deductions, Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3) as to the liability component of their NJWPL claims" despite "[c]omplications in determining damages"); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 606 (E.D. Pa. 2006) ("With the expansion of the case to now include two causes of action that do not require a showing of detrimental reliance, there is now a proposed class before the Court that is 'sufficiently cohesive to warrant adjudication by representation'" (quoting *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 308-09 (3d Cir. 2005)); *In re IGI Sec. Litig.*, 122 F.R.D. 451, 460 (D.N.J. 1988) ("individual issues such as the actual extent of reliance or the amount of damages arise in most, if not all, class actions. But where, as in this case, all class members are united in their desire to establish the defendants' complicity and liability, the individual issues are secondary and the class should be certified" (brackets and internal quotation marks omitted)).

[103] *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160-63 (3d Cir. 2002).

[104] *Id.* at 163 (internal quotation marks omitted).

around individual knowledge but, rather, "the critical inquiry will be whether defendants successfully concealed the existence of the alleged conspiracy, which proof will be common among the class members in each class."[105]

Here too, individual questions of whether potential class members relied on Aetna's alleged omissions will not be key to the case. Rather, the predominant question is whether Aetna omitted or misrepresented key facts about its ability to seek and obtain reimbursement for personal injury recoveries. In other words, the common issue of Aetna's concealment is the central question here, not the individual issue of reliance. Consequently, Wolff has adequately established predominance.

### 2.      Superiority

Finally, the Court concludes that Wolff has also established that class certification is superior to other available methods to adjudicate the issue. Four considerations are relevant to the Court's analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[106]

First, as Wolff points out, many individuals have relatively small claim amounts, meaning that they would likely be unable to easily pursue litigation outside

---

[105]   *Id.*
[106]   Fed. R. Civ. P. 23(b)(3).

of the class litigation context,[107] while certifying a class would "aggregat[e] the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."[108] Aetna points out that ERISA claims are subject to an award of attorneys' fees, which may make it easier for potential litigants to find an attorney,[109] but the *potential* to be awarded attorneys' fees does not provide the same incentive for representation as a guaranteed hourly rate, or the potential of a large payout through a contingency fee agreement.

Second, Wolff asserts that "there is no evidence that any of the putative class members have instituted any litigation" regarding reimbursement for personal injury recoveries.[110] As the Third Circuit has previously noted, "a small number of individual suits against defendants arising from the [challenged actions] indicat[es] a lack of interest in individual prosecution," which militates in favor of finding superiority.[111]

Third, there is some benefit to be gained by certifying the class, as the Court would apply ERISA law, which would be uniform among the class members. Finally, there would likely be few issues in managing the class action, given that

---

[107] Doc. 114 at 23-24. Although some potential class members have larger claims, those individuals may opt out of a class action, if they wish.

[108] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

[109] Doc. 111 at 28.

[110] Doc. 114 at 24.

[111] *In re Cmty. Bank of N. Va.*, 418 F.3d at 309.

largely the same evidence will satisfy much of the burden of proof in this issue. Accordingly, Wolff has satisfied the requirements of Rule 23(b)(3).

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that certification of the proposed class is appropriate. Consequently, Wolff's motion for class certification will be granted.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge