## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOANNE WOLFF, *individually and on behalf of a Class of Similarly Situated Individuals*, | No. 4:19-CV-01596 |
| | (Chief Judge Brann) |
| Plaintiff, | |
| v. | |
| AETNA LIFE INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM OPINION

### NOVEMBER 22, 2022

## I.    BACKGROUND

In 2020, Joanne Wolff, on behalf of herself on all similarly situated individuals, filed a second amended complaint[1] against Aetna Life Insurance Company ("Aetna") raising claims for: a violation of the Employee Retirement Income Security Act of 1974,[2] breaches of fiduciary duties, conversion, money had and received, intentional misrepresentation, negligent misrepresentation, unjust enrichment, theft by deception, attempted theft, a violation of Pennsylvania's Unfair

---

[1]   Wolff originally filed this action in Pennsylvania state court on August 8, 2019, and the action was later removed to federal court by Aetna. Doc. 1.

[2]   29 U.S.C. § 1001, *et seq.*

Trade Practices and Consumer Protection Law, and a violation of the Pennsylvania Fair Credit Extension Uniformity Act.[3]

Wolff avers that she was previously insured for long-term disability benefits under the terms of a group plan (the "Plan") issued by Aetna through Bank of America Corporation—Wolff's employer.[4] In September 2015, Wolff was temporarily disabled as a result of a motor vehicle accident that caused Wolff injuries.[5] Wolff submitted a claim to Aetna under the Plan and received long-term disability benefits exceeding $50,000.[6]

Wolff separately filed a civil action against the other party involved in the accident.[7] Wolff and the defendant eventually settled the matter, with Wolff receiving monetary compensation from the defendant in that matter.[8] Aetna and another entity with which it worked, the Rawlings Company ("Rawlings"), sought reimbursement of the benefits that Aetna had paid to Wolff under the terms of the Plan, although the Plan allegedly not permitting such reimbursement.[9] After negotiations between Wolff and Rawlings, Wolff agreed to reimburse Aetna and Rawlings $30,000.[10]

---

[3]   Doc. 44.
[4]   *Id.* ¶ 6.
[5]   *Id.* ¶ 8.
[6]   *Id.* ¶¶ 9-10.
[7]   *Id.* ¶ 11.
[8]   *Id.* ¶ 12.
[9]   *Id.* ¶¶ 13-16.
[10]  Doc. 111-3 at 25-26.

Despite agreeing to pay that sum to Aetna, Wolff asserts that the Plan did not permit Aetna to pursue reimbursement for her personal injury recovery. As relevant here, Wolff alleges that the Plan permitted Aetna to obtain reimbursement only for "Other Income Benefits," and personal injury recoveries are not included in the Plan's definition of "Other Income Benefits."[11]

Wolff later filed a motion to certify a class pursuant to Federal Rule of Civil Procedure 23,[12] which this Court granted after finding that the Rule 23 requirements were met.[13] The Court determined that Wolff had satisfied numerosity, commonality, typicality, and adequacy of representation. As to numerosity, the Court concluded that there are at least 48 individuals who qualify for the class, which is sufficient to satisfy the numerosity requirement.[14]

In reaching this conclusion, the Court rejected Aetna's assertion that variations in plan language meant that certain individuals would not qualify for the class. Specifically, the Court found that the "Other Income Benefits" language from the various plans were substantially similar, and any variations were not determinative of any claims and therefore did not prevent certification.[15] Although one plan contained broad language that could theoretically encompass personal

---

[11]   Doc. 44 ¶¶ 35-40.
[12]   Doc. 107.
[13]   Doc. 126, 127.
[14]   Doc. 126 at 5-11.
[15]   *Id.* at 8-9.

injury settlements, the Court expressed significant doubt that the language actually encompassed such settlements.[16]

The Court further determined that commonality and typicality were met, as the dispositive legal question was the same for all class members, the same general factual circumstances would underlie each claim, and no affirmative defense would prevent certification.[17] The Court also found that Wolff could adequately represent the class.[18] Finally, this Court held that the Rule 23(b)(3) requirements were met, as a single issue is more prevalent than any non-common issues, and class certification is superior to other methods of adjudication.[19]

Aetna has now filed a motion for reconsideration, asserting that intervening case law from the United States Court of Appeals for the Third Circuit requires that this Court decertify the class.[20] Aetna notes that, one month after this Court certified the class, the Third Circuit issued its opinion in *Allen v. Ollie's Bargain Outlet*,[21] wherein that court held that, when deciding issues of commonality, courts "must resolve all factual or legal disputes relevant to class certification."[22] Aetna contends that this Court left a key factual issue unresolved in granting class certification— whether the language contained in the different plans permits reimbursement of

---

[16]   *Id.* at 8-9; *see id.* at 9 n. 41.
[17]   *Id.* at 11-16.
[18]   *Id.* at 16-17.
[19]   *Id.* at 17-26.
[20]   Doc. 133.
[21]   37 F.4th 890 (3d Cir. 2022).
[22]   Doc. 134 at 8; *see id.* at 6-9.

personal injury recoveries.[23] Aetna points to several variations in the relevant language which it believes entitled it to seek reimbursement, although Aetna contends that the Court deferred any finding on whether that language actually permitted reimbursement, in contravention of the requirements set forth in *Allen*.[24]

Aetna further argues that the Court failed to resolve factual issues regarding Wolff's misrepresentation-based claim, including what representations or omissions were made by Aetna to the class members.[25] Finally, Aetna asserts that the class definition creates an impermissible fail-safe class.[26]

Wolff responds that, as an initial matter, *Allen* did not create any new standards such that it may constitute intervening case law upon which a party may base a motion for reconsideration, and *Allen* is otherwise distinguishable from this case.[27] Wolff further argues that the Court analyzed every criteria necessary to certify a class, and Aetna improperly seeks to litigate the merit of the underlying claims.[28] Nor, Wolff states, were any issued left unresolved as to her fiduciary duty claim.[29] Finally, Wolff asserts that any argument related to a fail-safe class is moot, as Wolff is willing to largely adopt Aetna's proposed formulation of the class.[30]

---

[23] *Id.* at 9-13.
[24] *Id.* at 10-12.
[25] *Id.* at 13-14.
[26] *Id.* at 16-18.
[27] Doc. 139 at 4-8.
[28] *Id.* at 9-19.
[29] *Id.* at 19-21.
[30] *Id.* at 21-22.

Aetna has filed a reply brief, and the motion is now ripe for disposition.[31] For the following reasons, Aetna's motion for reconsideration will be granted in part and denied in part.

## II.   DISCUSSION

To properly support a motion for reconsideration, a party must demonstrate "at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[32]  "Thus, [to warrant reconsideration, Aetna] must show more than mere disagreement with the earlier ruling; [it] must show that the . . . Court committed a direct, obvious, or observable error, and one that is of at least some importance to the larger proceedings."[33]

### A.   Whether There has Been an Intervening Change in Controlling Law

First, the parties dispute whether the Third Circuit's opinion in *Allen* constitutes an intervening change in controlling law such that reconsideration based upon that opinion may be appropriate. Wolff argues that *Allen* announced no new or changed law but, instead, simply applied existing law to the facts of that case.[34]

---

[31] Doc. 140.

[32] *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (ellipsis and internal quotation marks omitted).

[33] *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018) (brackets, quotation marks, and citation omitted).

[34] Doc. 139 at 4-7.

Aetna in contrast asserts that *Allen* is an "important decisional development" that warrants reconsideration.[35]

To merit reconsideration based on a new decision, that decision must not only be intervening, but must constitute a "*change* in the controlling law."[36] Consequently, where an opinion merely "explore[s] and reaffirm[s] its earlier precedents," such a "decision does not represent 'an intervening change in the controlling law'" that may support a motion for reconsideration.[37] In circumstances where a new decision does not represent a change in controlling law, a motion for reconsideration is more properly viewed "merely [as an] attempt[] to reargue a position that [has] already [been] rejected, which is improper."[38]

In *Allen*, the Third Circuit examined a district court's decision to certify a class that included anyone "with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by Ollie's within the United States and have, or will have, experienced access barriers in interior paths of travel."[39] That court noted that, in certifying the class, the district court "relied on a syllogism"[40] as the district court held that "'Ollie's policies are uniform and

---

[35] Doc. 140 at 4-5.

[36] *In re Vehicle Carrier Servs.*, 846 F.3d at 87 (emphasis added).

[37] *Eichorn v. AT&T Corp.*, No. CIV.A. 96-3587 (MLC), 1999 WL 33471890, at *3 (D.N.J. Aug. 23, 1999).

[38] *United States ex rel. Brown v. Pfizer, Inc.*, No. CV 05-6795, 2018 WL 11416558, at *1 n.1 (E.D. Pa. Oct. 12, 2018). *See also Eichorn*, 1999 WL 33471890 at *3 (rejecting motion for reconsideration because movant only "proffers reasons why they disagree with the Court's [prior] conclusion").

[39] *Allen*, 37 F.4th at 894.

[40] *Id.* at 895.

company-wide'" and, therefore, "'[i]f Ollie's policies and procedures do, in fact, cause access barriers to unlawfully restrict individuals with disabilities from obtaining their desired goods, then proposed members who endured violations have suffered the same injury, the resolution of which will resolve a central issue in one fell stroke.'"[41]

In analyzing commonality, the Third Circuit in *Allen* restated established caselaw and noted that "'[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law.'"[42] "Instead, the claims 'must depend upon a common contention.'"[43] That court reiterated that such a "'common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"[44] The Third Circuit then repeated its prior holding that "[w]hen deciding whether the class raises a common question, 'the court cannot be bashful. It must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action.'"[45]

---

[41] *Id.* (brackets omitted).
[42] *Id.* at 900 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)).
[43] *Id.* (quoting *Dukes*, 564 U.S. at 350).
[44] *Id.* (quoting *Dukes*, 564 U.S. at 350).
[45] *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012)).

Having restated those foundational principles, the Third Circuit held that "[t]he District Court abused its discretion when finding commonality for two reasons. First, it misapplied the relevant standards and certified a geographically overbroad class. Second, as we explained in *Steak 'n Shake*, a broad term like 'access barriers' does not give rise to a common injury under the ADA."[46] The court observed that:

> Before certifying the proposed class, the District Court must answer the very question it asked: whether plaintiffs have significant proof that Ollie's corporate policies, procedures, or practices *in fact* cause discrimination by stores nationwide. Posing a hypothetical common question is not enough to satisfy plaintiffs' burden of proof. There must be evidence the class proceeding will likely "produce a common answer."[47]

The Third Circuit concluded that, "[b]y failing to answer the commonality question, the District Court deferred plaintiffs' need to show commonality."[48]

As that opinion makes clear, the Third Circuit broke no new ground, nor did it alter in any way its prior precedent for addressing motions to certify a class. In addressing numerosity, the court in *Allen* was clear that it was merely "[a]pplying [its prior legal] principles."[49] And in addressing the issue of commonality, the court cited to its prior legal precedent, announced no new rules, and emphasized that the

---

[46] *Id.* at 900-01.
[47] *Id.* at 901 (quoting *Dukes*, 564 U.S. at 352).
[48] *Id.*
[49] *Id.* at 896.

district court "misapplied the relevant standards" and overlooked binding precedent as to a specific term that it used in defining the class.[50]

Consequently, the Third Circuit in *Allen* did not introduce a "*change* in the controlling law,"[51] but instead simply applied well-established law to the facts at issue in that case. It is clear that that Aetna is displeased with the Court's decision to certify the class, but mere displeasure with a ruling is not a ground to reconsider that ruling, nor is a motion for reconsideration a proper vehicle to reargue a position that this Court has already rejected.[52] Because Aetna fails to present a proper ground for reconsideration, its motion will be denied to the extent that it relies upon *Allen*.

### B.    Merits of Aetna's Motion

Even if the Court were to consider the merits of Aetna's motion, the motion would largely fail, as the Court addressed the relevant factual issues necessary to determine commonality. Despite the fact that these issues were previously discussed, the Court will further explicate its reasoning here.

### 1.    Whether Varying Plan Language Prevents Certification

In ruling on Wolff's motion for class certification, this Court addressed Aetna's contention that varying plan language meant that numerosity, commonality, and predominance were absent.[53] Specifically, the Court determined that the "Other

---

[50]   *Id.* at 900-01.
[51]   *In re Vehicle Carrier Servs.*, 846 F.3d at 87 (emphasis added).
[52]   *See Brown*, 2018 WL 11416558, at *1 n.1 (collecting cases).
[53]   Doc. 126 at 8-9, 13 n.62.

Income Benefits" portions of the various plans were "substantially similar" and any differences were not legally relevant to the question of whether Aetna was permitted to pursue reimbursement of personal injury settlements.[54]

The Court did—perhaps erroneously—fail to definitively rule on the language contained in one of the plans, and instead concluded only that it "is highly unlikely" that the language permitted Aetna to recover funds from personal injury settlements.[55] To the extent that this failed to satisfy the Third Circuit's requirement that courts "resolve all factual or legal disputes relevant to class certification,"[56] the Court will provide clarification here: nothing in the relevant plans leads the Court to conclude that variations in the plan language prevents certification.[57]

In interpreting an insurance contract, courts must "determine the intent of the parties."[58] "Courts are to consider not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior."[59] "The strongest objective manifestation of intent is the language of the contract" and, "where the words of the contract clearly manifest the parties' intent, a court need not resort to extrinsic aids or evidence."[60] "The parties are bound by the

---

[54] *Id.* at 9.

[55] *Id.* at 9 n. 41; *see id.* at 8-9.

[56] *Allen*, 37 F.4th at 900.

[57] Of course, the Court undertakes this analysis without any briefing on this issue by either of the parties.

[58] *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011) (internal quotation marks omitted).

[59] *Id.* (internal quotation marks omitted).

[60] *Id.* (internal quotation marks omitted).

objective definition of the words they use to express their intent, including the specialized meaning of any legal terms of art."[61] "Thus, a provision in a [contract] is ambiguous only when, from an objective standpoint, it is reasonably susceptible to at least two different interpretations."[62]

Turning to the plans at issue here, as to the plan that the Court found potentially encompassed personal injury settlement recoveries, a close reading of that plan demonstrates by a preponderance of the evidence that the language this Court previously cited does not permit such recoveries. The language to which the Court reference permitted recovery for, *inter alia*, any "permanent impairment" or "loss of bodily function or capacity."[63] However, that language is linked by semi colons and the conjunctive "and," and preceded by a paragraph that states "[t]emporary or permanent, partial or total, disability benefits under any Workers' Compensation law or similar law meant to compensate a worker for:"[64] This means that the terms "permanent impairment" or "loss of bodily function or capacity" are connected and modified by the previous paragraph. Clearly then, despite an erroneous placement of the bullet points in that portion of the definition of "Other Income Benefits," the above language is linked only to workers' compensation type laws and does not apply to personal injury recoveries in civil court. Consequently,

---

[61] *United States v. State of New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999) (internal quotation marks omitted).

[62] *Id.*

[63] Doc. 112-3 at 10-11.

[64] *Id.* at 10.

such language does not prohibit class certification, as it is irrelevant to the legal theory of this case.

Aetna next argues, as it argued in opposing class certification, that language such as "[a]utomobile no-fault wage replacement benefits required by law" means that varying plan language prevents certification.[65] The Court previously rejected Aetna's argument, holding that such a "term applies only to 'wage replacement benefits,' not personal injury recoveries that compensate for medical bills, pain and suffering, and other damages."[66] Indeed, that specific language, along with the other language cited by Aetna such as "loss of past and future wages," is explicitly listed as examples for the paragraph that grants Aetna the right to recover funds paid as a result of "[d]isability, retirement or unemployment benefits required or provided for by government law."[67] That language necessarily excludes personal injury recoveries, which do not constitute disability, retirement, or unemployment benefits provided for by government law.

Aetna next notes that several plans provide that recoverable "Other Income Benefits" includes "[d]isability payments for lost wages or time from work from underinsured motorist (UIM), uninsured motorist coverage (UM), liability insurance

---

[65] Doc. 134 at 10-11. The fact that Aetna previously raised this argument, and the argument was unambiguously rejected by the Court, reinforces the fact that this motion simply seeks to reargue Aetna's previous position and is not a proper motion for reconsideration.

[66] Doc. 126 at 8 n. 38.

[67] Doc. 112-1 at 11; Doc. 112-2 at 13; Doc. 112-3 at 10-11; Doc. 112-4 at 13; Doc. 112-5 at 13; Doc. 112-6 at 7; Doc. 112-7 at 6.

or other source for a disability caused by a third party. 'Other sources' include (but are not limited to) damages or a settlement received through legal action."[68] Aetna further notes that two plans define other income benefits to include "[d]isability payments from insurance or other sources for a disability caused by a third party. 'Other sources' include (but are not limited to) damages or a settlement received through legal action."[69]

In asserting that this language defeats commonality, Aetna again ignores critical modifying language contained within those provisions. Specifically, that language only applies to "[d]isability payments," and not personal injury recoveries through tort actions.[70] The fact that the language references damages or settlements "received through legal action" is immaterial, as legal action may sometimes be necessary to recover disability payments that are owed to an individual. But the fact of a legal action does not convert those funds from a disability payment to a personal injury recovery. Accordingly, this differing language likewise does not defeat commonality or numerosity.

Finally, Aetna asserts that the Court failed to resolve key factual issues related to Wolff's "misrepresentation-based claim."[71] In this regard, Aetna argues that the

---

[68] Doc. 134-2 at 2; Doc. 112-3 at 11; Doc. 112-4 at 1; Doc. 112-5 at 13.
[69] Doc. 134-2 at 2; Doc. 112-3 at 11.
[70] This conclusion is buttressed by the language contained in the paragraph addressing underinsured motorist and uninsured motorist coverage, which further modifies the subsequent "legal action" language.
[71] Doc. 134 at 13. *See id.* at 13-14.

14

Court failed to resolve what representations or omissions were made by Aetna to each individual class member.[72]

As the Court held in granting class certification, this claim satisfies commonality, typicality, and predominance, and no outstanding factual issues prevent certification.[73] Essentially, there are no real disputed factual issues that could undermine commonality. Wolff's essential averments are that Aetna allegedly misrepresented—by making a request for reimbursement of personal injury recoveries in the first instance—that it was permitted to recover such funds, and that Aetna allegedly failed to disclose to the class members that it was not permitted to recover such funds.

These facts are common for every class member. Although the specific facts of each claim may vary slightly—such as the specific manner that requests were made or how the claimants responded to those requests—the claims share at their core the same key dispositive facts that will ultimately be determinative of each class member's claim. Therefore, there again are no unresolved factual issues that would preclude class certification.

## 2.    Whether the Class Definition Creates a Fail-safe Class

Lastly, the Court will address Aetna's claim that the class definition creates an impermissible fail-safe class by defining the class so that membership depends

---

[72]   *Id.* at 13-14.
[73]   Doc. 126 at 19-24; *see id.* at 11-14.

on whether the potential member has a valid claim.[74] It does not appear that this section of Aetna's motion for reconsideration is related in any way to the Third Circuit's decision in *Allen* and, consequently, will be treated instead as proceeding on the ground that the Court committed clear error in adopting Wolff's proposed class definition. In reviewing for clear error, reconsideration is warranted only if the "[C]ourt is left with the definite and firm conviction that a mistake has been committed."[75]

Here, Aetna is correct that the class definition twice refers to the validity of a claim by including the language "who suffered harm and damages" and "as a result of defendants' wrongful reimbursement demands and actions based on a violation of the policy."[76] The Court therefore created a fail-safe class, although it is far from certain whether such a class is in fact impermissible.[77] Nevertheless, the language referencing the validity of a claim appears legally unnecessary to the class definition, and Wolff has agreed to largely adopt Aetna's proposed class definition, with minor modifications.[78] The Court will therefore amend the class definition in line with this compromise, which Aetna acknowledges "would help resolve the fail-safe nature of

---

[74] Doc. 134 at 16-18.

[75] *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008) (internal quotation marks omitted).

[76] Doc. 127 at 1-2.

[77] *See Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 478 (E.D. Pa. 2021) (noting that a "class is fail-safe if it is defined so that whether a person qualifies as a member depends on whether the person has a valid claim" but also that "courts in this circuit regularly certify class definitions" that include such language).

[78] Doc. 139 at 21-22.

the current class definition."[79] Therefore, Aetna's motion for reconsideration will be granted to the limited extent that the Court will amend the class definition.

## III.   CONCLUSION

For the foregoing reasons, Aetna's motion for reconsideration will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[79]   Doc. 150 at 9. While Wolff has agreed to largely adopt Aetna's proposed class definition, she has not provided time limitations in her new definition, nor does she object to the dates provided by Aetna. The Court will therefore adopt the time limitations provided by Aetna.