# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOANNE WOLFF, *individually and on behalf of a Class of Similarly Situated Individuals*,

　　　　　　Plaintiff,

　　v.

AETNA LIFE INSURANCE COMPANY,

　　　　　　Defendant.

No. 4:19-CV-01596

(Chief Judge Brann)

## MEMORANDUM OPINION

### MARCH 21, 2023

## I.　　BACKGROUND

In 2020, Joanne Wolff, on behalf of herself on all similarly situated individuals, filed a second amended complaint[1] against Aetna Life Insurance Company ("Aetna") raising claims for: a violation of the Employee Retirement Income Security Act of 1974,[2] breaches of fiduciary duties, conversion, money had and received, intentional misrepresentation, negligent misrepresentation, unjust enrichment, theft by deception, attempted theft, a violation of Pennsylvania's Unfair

---

[1]　Wolff originally filed this action in Pennsylvania state court on August 8, 2019, and the action was later removed to federal court by Aetna. Doc. 1.

[2]　29 U.S.C. § 1001, *et seq.*

Trade Practices and Consumer Protection Law, and a violation of the Pennsylvania Fair Credit Extension Uniformity Act.[3]

Wolff avers that she was previously insured for long-term disability benefits under the terms of a group insurance plan (the "Plan") issued by Aetna through Bank of America Corporation—Wolff's employer.[4] In September 2015, Wolff was temporarily disabled as a result of a motor vehicle accident that caused Wolff injuries.[5] Wolff submitted a claim to Aetna under the Plan and received long-term disability benefits exceeding $50,000.[6]

Wolff separately filed a civil action against the other party involved in the accident.[7] Wolff and the defendant eventually settled that matter, with Wolff receiving monetary compensation from the defendant.[8] Aetna and another entity with which it worked, the Rawlings Company ("Rawlings"), sought reimbursement of the benefits that Aetna had paid to Wolff under the terms of the Plan, although the Plan allegedly did not permit such reimbursement.[9] After negotiations between Wolff and Rawlings, Wolff agreed to reimburse Aetna and Rawlings in the amount of $30,000.[10]

---

[3]   Doc. 44.
[4]   *Id.* ¶ 6.
[5]   *Id.* ¶ 8.
[6]   *Id.* ¶¶ 9-10.
[7]   *Id.* ¶ 11.
[8]   *Id.* ¶ 12.
[9]   *Id.* ¶¶ 13-16.
[10]   Doc. 111-3 at 25-26.

Despite agreeing to pay that sum to Aetna, Wolff asserts that the Plan did not permit Aetna to pursue reimbursement for her personal injury recovery. As relevant here, Wolff alleges that the Plan permitted Aetna to obtain reimbursement only for "Other Income Benefits," and personal injury recoveries are not included in the Plan's definition of "Other Income Benefits."[11]

Wolff later filed a motion to certify a class pursuant to Federal Rule of Civil Procedure 23,[12] which this Court granted on May 25, 2022 after finding that the Rule 23 requirements were met (the "Certification Order").[13] The Court determined that Wolff had satisfied numerosity, commonality, typicality, and adequacy of representation. As to numerosity, this Court concluded that there are at least 48 individuals who qualify for the class, which is sufficient to satisfy the numerosity requirement.[14]

In reaching this conclusion, the Court rejected Aetna's assertion that variations in plan language meant that certain individuals would not qualify for the class. Specifically, the Court found that the "Other Income Benefits" language from the various plans were substantially similar, and variations in the specific language used were not determinative of any claims and therefore did not prevent certification.[15] Although one plan contained broad language that could theoretically

---

[11] Doc. 44 ¶¶ 35-40.
[12] Doc. 107.
[13] Doc. 126, 127.
[14] Doc. 126 at 5-11.
[15] *Id.* at 8-9.

encompass personal injury settlements, the Court fund that it was "highly unlikely" that the language actually encompassed such settlements.[16]

The Court further determined that commonality and typicality were met, as the dispositive legal question was the same for all class members, the same general factual circumstances would underlie each claim, and no affirmative defense would prevent certification.[17] The Court also found that Wolff could adequately represent the class.[18] Finally, this Court held that the Rule 23(b)(3) requirements were met, as a single issue is more prevalent than any non-common issues, and class certification is superior to other methods of adjudication.[19]

On August 17, 2022, Aetna filed a motion for reconsideration, asserting that intervening case law from the United States Court of Appeals for the Third Circuit—that case being *Allen v. Ollie's Bargain Outlet*[20]—required that this Court decertify the class.[21] On November 22, 2022, this Court denied the motion for reconsideration for two primary reasons (the "Reconsideration Order").[22] First, the Court found that *Allen* did not constitute a change in the controlling law sufficient to support a motion for reconsideration.[23] Second, this Court concluded that, even if the motion were

---

[16] *Id.* at 9 n. 41; *see id.* at 8-9.
[17] *Id.* at 11-16.
[18] *Id.* at 16-17.
[19] *Id.* at 17-26.
[20] 37 F.4th 890 (3d Cir. 2022).
[21] Doc. 133.
[22] Doc. 141.
[23] *Id.* at 6-10.

appropriately considered, any variations in plan language did not prevent class certification.[24] Specifically, the Court clarified that all of the plans submitted by the parties contained substantially similar language, and any minor differences in plan language did not defeat commonality.[25] Nevertheless, the Court granted in part the motion for reconsideration because Wolff agreed to slightly modify the class definition to eliminate any concerns with a potential failsafe class.[26]

On December 6, 2022, Aetna filed with the Third Circuit a Federal Rule of Civil Procedure 23(f) petition for permission to appeal this Court's decision.[27] On the same day, Aetna filed a motion to stay this Court's Order granting class certification pending the Third Circuit's ruling on the Rule 23(f) petition.[28]

Aetna contends that a stay is warranted because the failure to issue a stay may result in confusion among the current class members should the Third Circuit decertify the class, a stay would conserve judicial and party resources, and the failure to issue a stay would irreparably harm Aetna, since the class notice states that Aetna is alleged to have engaged in improper conduct.[29] Moreover, Aetna asserts that Wolff and the class would not be substantially injured by a stay, since a stay would conserve resources that would be expended in notifying the class—expenses that

---

[24] *Id.* at 10-15.
[25] *Id.*
[26] *Id.* at 15-17.
[27] *See* Doc. 144 at 2.
[28] Doc. 144.
[29] Doc. 145 at 5-9.

would not be necessary if Aetna prevailed in an appeal.[30] Finally, Aetna asserts that there is a sufficient likelihood of success on the merits of its appeal to warrant a stay before this Court.[31]

Wolff in turn argues that a stay is inappropriate.[32] First, Wolff asserts that Aetna is highly unlikely to succeed on appeal, as the appeal is procedurally defective.[33] Second, Wolff contends that any further delay will substantially injure her and the class, as there have already been numerous delays in this case.[34] Finally, Wolff argues that Aetna would not face irreparable injury due to the denial of its motion, and the class notice would not cause confusion to the class members.[35]

Aetna has filed a reply brief, and the motion is now ripe for disposition.[36] For the following reasons, Aetna's motion to stay will be denied.

## II.   DISCUSSION

Federal Rule of Civil Procedure 23(f) provides that, while a "court of appeals may permit an appeal from an order granting or denying class-action certification under this rule," such an "appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders."[37] Although the Third Circuit

---

[30] *Id.* at 9.
[31] *Id.* at 9-11.
[32] Doc. 146.
[33] *Id.* at 6-17.
[34] *Id.* at 17-18.
[35] *Id.* at 18-20.
[36] Doc. 147.
[37] Fed. R. Civ. P. 23(f).

"has not yet established the standard district courts should apply when deciding motions to stay proceedings pending Rule 23(f) appeals," courts within this circuit routinely apply "the four-factor test outlined by the Supreme Court in *Nken v. Holder*," 556 U.S. 418 (2009), which apply in traditional motions to stay.[38]

> Those four factors include:
>
> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[39]

"The first two factors of [this] standard are the most critical."[40] As to the first factor, it "is not enough that the chance of success on the merits be better than negligible" and "more than a mere possibility of relief is required."[41] "By the same token, simply showing some possibility of irreparable injury fails to satisfy the second factor" as "the 'possibility' standard is too lenient."[42]

The Supreme Court has emphasized that "[a] stay is not a matter of right, even if irreparable injury might otherwise result."[43] Consequently, "[t]he party requesting

---

[38] *Boley v. Universal Health Servs., Inc.*, No. CV 20-2644, 2021 WL 2186432, at *2 (E.D. Pa. May 27, 2021).

[39] *Nken*, 556 U.S. at 434.

[40] *Id.*

[41] *Id.* (brackets and internal quotation marks omitted).

[42] *Id.* at 434-35 (internal citations and quotation marks omitted).

[43] *Id.* at 433.

a stay bears the burden of showing that the circumstances justify an exercise of that discretion."[44]

## A.   Whether Aetna has Made a Strong Showing of a Likelihood of Success on the Merits

As to the question of whether Aetna has made a strong showing of a likelihood of success on the merits of its appeal, the Court concludes that it has not. The Court reaches this determination not only on the basis of the legal questions presented in Aetna's appeal, but procedural issues with the timing of its petition that will likely result in the Third Circuit refusing to consider the appeal.

### 1.   Procedural Issues with Aetna's Appeal

#### a.   Standard for Determining Timeliness of a Rule 23(f) Petition

As to potential procedural issues with Aetna's appeal, Rule 23(f) permits an appeal only if filed "within 14 days after the order [granting or denying certification] is entered."[45] Although the appeal period noted in Rule 23(f) is not jurisdictional,[46] the fourteen-day appeal period "is strict and mandatory."[47] Despite the rigidness with which this limitations period is enforced, the Third Circuit has held that the "period within which to file a Rule 23(f) petition is tolled by the filing of a *timely and proper*

---

[44] *Id.* at 433-34.
[45] *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019) (quoting Fed. R. Civ. P. 23(f)).
[46] *Id.*
[47] *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 192 (3d Cir. 2008).

motion to reconsider the grant or denial of class certification."[48] When applied to "a Rule 23(f) petition, a 'timely' motion to reconsider is one that is filed within the [fourteen]-day period set forth in Rule 23(f)."[49]

As these cases imply, the time to file an appeal under Rule 23(f) "runs from the order granting or denying class certification" or from the entry of an order addressing a timely motion for reconsideration; however, a party may appeal from a later order if that order "change[s] the status quo," thereby "reviv[ing] the [fourteen]-day time limit."[50] Consequently, an order disposing of an untimely motion for reconsideration will reset the time to appeal if the order "change[s] the status quo."[51]

While the Third Circuit does not appear to have had the opportunity to consider what constitutes an alteration of the status quo,[52] this Court finds persuasive the reasoning of the United States Court of Appeals for the Seventh Circuit in *Matz v. Household International Tax Reduction Investment Plan*.[53] In *Matz*, the Seventh Circuit considered whether an order "partially decertifying the class by eliminating some 3000 to 3500 members—a reduction of between 57 and 71 percent of the

---

[48] *Id.* at 193. *See also Lambert*, 139 S. Ct. at 717 (noting "[a] timely motion for reconsideration filed within a window to appeal does not toll anything; it renders an otherwise final decision of a district court not final for purposes of appeal" (internal quotation marks omitted)).

[49] *Gutierrez*, 523 F.3d at 193.

[50] *Id.*

[51] *Id.* at 194.

[52] The Third Circuit in *Gutierrez* cited approvingly of three circuit cases for the proposition that an order that merely reaffirms a prior decision does not alter the status quo, those cases being: *Jenkins v. BellSouth Corp.*, 491 F.3d 1288, 1291-92 (11th Cir. 2007); *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1191-92 (10th Cir. 2006); and *McNamara v. Felderhof*, 410 F.3d 277, 281 (5th Cir. 2005).

[53] 687 F.3d 824 (7th Cir. 2012).

membership" altered the status quo such that the order was appealable under Rule 23(f).[54]

That court determined that it did, reasoning "that an order materially altering a previous order granting or denying class certification is within the scope of Rule 23(f) even if it doesn't alter the previous order to the extent of changing a grant into a denial or a denial into a grant."[55] The Seventh Circuit reached that decision by imagining a scenario in which "rather than altering a class that the court had already certified the district judge had at the outset certified a narrower class than proposed by the plaintiff. That order would have been appealable by either party" and it should not "make a difference that the order modifying the class requested by the plaintiff came later," as the only "difference is between one order and two orders that accomplish the same thing."[56]

Relying on that reasoning, the United States Court of Appeals for the Ninth Circuit has rejected an appeal of an order where, "[a]lthough the district court in its reconsideration order changed its legal analysis, it declined to change its original certification order in any way" and "the same class definition control[led], the same Plaintiffs [made] up the class, and the status quo remain[ed] unchanged."[57] In so concluding, the Ninth Circuit noted that circuit courts uniformly hold that "[o]nly

---

[54] *Id.* at 825.
[55] *Id.* at 826.
[56] *Id.*
[57] *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 636 (9th Cir. 2020).

where the district court certifies a class it previously declined to certify, decertifies an existing class, or changes the composition of an existing class—usually by increasing or decreasing its size—will a reconsideration order become appealable."[58] Similarly, the United States Court of Appeals for the Sixth Circuit has held that a reconsideration order is appealable if "it would significantly impact the size of the class,"[59] but has rejected an appeal from a reconsideration order that increased the class size by seven members where the appellant only challenged the initial certification order.[60]

Aetna appears to concede that no timely appeal was taken of the Certification Order nor was its motion for reconsideration timely and, therefore, the only order from which Aetna may perfect an appeal is the Court's Reconsideration Order— indeed, Aetna states that it is not seeking to appeal the Certification Order.[61] As just discussed, this Court finds persuasive the reasoning of the Sixth, Seventh, and Ninth Circuits in defining what constitutes an alteration of the status quo, and the Court predicts that the Third Circuit will likewise adopt such a test. Consequently, only if the Reconsideration Order changed the composition of the class is the Third Circuit

---

[58] *Id.* at 637.

[59] *In re Advanced Rehab & Med., P.C.*, No. 20-0506, 2021 WL 3533492, at *1 (6th Cir. Apr. 27, 2021).

[60] *In re FSL Mgmt., LLC*, No. 15-0504, 2015 WL 12843232, at *1 (6th Cir. Oct. 27, 2015).

[61] *See* Doc. 147 at 4 (Aetna asserting that "two significant events occurring after the May 25 Order . . . make Aetna's petition from the [Reconsideration Order] proper and timely" and stating that "[i]t is not" seeking to appeal the Certification Order).

is likely to conclude that Aetna's appeal is timely; to the extent that it did not, the appeal will likely not be entertained.

### b.    Analysis

The Reconsideration Order did not certify a new class or decertify an existing class and, contrary to Aetna's arguments, did not alter the composition of the class. Aetna argues that, in the Reconsideration Order, "the Court materially altered its class certification analysis, changed the composition of the class, and increased the size and scope of the class."[62] That is a complete misreading of the Orders.

In the Certification Order, this Court certified a class that tentatively would include at least 48 individuals, and the Court addressed what it believed to be all of the plans that encompassed the potential class.[63] The Court determined that none of the identified, potential class members should be excluded from the class, despite the fact that those individuals had plans that contained varying language.[64] Specifically, although the plan language varied among the different plans, the relevant language was "substantially similar, in that the language does not specifically encompass personal injury recoveries."[65] The Court determined that the language contained in one plan was incredibly broad, but that, nevertheless, it was "highly unlikely" that the plan language encompassed personal injury tort

---

[62]   *Id.* at 5.
[63]   Doc. 126.
[64]   *Id.* at 7-9.
[65]   *Id.* at 8.

recoveries.[66] Accordingly, the Court reasoned that none "of the 53 identified individuals should be struck from the class based on varying plan language."[67]

Aetna, perhaps justifiably, found this explanation unsatisfactory and, as a consequence, on reconsideration the Court provided a more detailed explanation of its conclusions. In the Reconsideration Order, the Court recognized that the language used in the Certification Order was not definitive and therefore emphasized that it would provide "clarification" of its prior decision.[68]

The Court again analyzed the language of each insurance contract provided by the parties and again held that varying plan language did not defeat class certification, as the plan language for each plan was substantially similar.[69] After reexamining the same arguments that Aetna had previously presented to the Court, this Court again dismissed each argument, and iterated "there again are no unresolved factual issues that would preclude class certification."[70] Aetna's assertion that the Reconsideration Order somehow expanded the class,[71] is therefore both incorrect and economical with the truth.

At most, a cursory comparison of the two Orders could result in a careless reader erroneously concluding that the Court in the Reconsideration Order certified

---

[66]   *Id.* at 8-9, 9 n.41.
[67]   *Id.* at 9.
[68]   Doc. 141 at 11.
[69]   *Id.* at 10-15.
[70]   *Id.* at 15.
[71]   Doc. 147 at 7.

members from one additional insurance plan—although even a first-year law student should be able to understand that those individuals had already been included in the class, as the Certification Order stated that the Court could not "conclude that any of the 53 identified individuals should be struck from the class based on varying plan language."[72] And again, even if one reached such a flawed conclusion, the Court emphasized in the Reconsideration Order that it was merely "clarify[ing]" its prior Order, not expanding it, which would disabuse one of any such incorrect conclusion.[73]

The Reconsideration Order did not alter the status quo in any material way or open the door to more class members. In the Reconsideration Order, the Court only considered the language contained in the plans submitted to the Court—the same language and the same plans that it had previously considered. And it only confirmed the Certification Order. In the Certification Order, the Court refused to strike any potential class members based on differences in plan language, and in the Reconsideration Order the Court again refused to strike any potential class members on that basis. In short, the Reconsideration Order maintained the status quo.[74]

---

[72]  Doc. 126 at 9.

[73]  Doc. 141 at 11.

[74]  The Reconsideration Order did slightly modify the class definition to eliminate any potential concerns with a fail-safe class. *Compare* Doc. 127 (containing language referencing harm, damages, and wrongful reimbursement demands), *with* Doc. 142 (removing such language). However, Aetna does not contend that this modification altered the status quo, nor could it realistically proffer such an argument. The modified language would not result in any additional or fewer class members or decertify the class, and that modification therefore did not alter the status quo. *Walker*, 953 F.3d at 637.

Aetna nevertheless argues that, for two reasons, the Reconsideration Order altered the status quo. For one, Aetna now asserts, for the first time, that the plans submitted to the Court were only a "sampling of plans" that may apply to class members, and the Reconsideration Order certified class members broadly beyond the individuals governed by the eleven plans provided to the Court, thereby "purport[ing] to further expand the class by encompassing class members with plans that were never submitted to the record."[75] But the Court could not possibly have reached such an expansive conclusion or held that every plan issued by Aetna—including those not provided to the Court—is subject to the Certification Order, as neither party even so much as hinted that the plans produced to the Court were only a "sampling"[76] of the plans that were potentially subject to certification.[77]

Second, Aetna repeatedly argues that this Court "materially altered its class certification analysis" in the Reconsideration Order.[78] As an initial matter, the Court did not alter its legal analysis but, instead, simply provided a more detailed explanation for its previous conclusion. Furthermore, even if it had altered its legal

---

[75] Doc. 147 at 6-7.

[76] *Id.* at 6.

[77] Even in its motion for reconsideration, Aetna focused on the eleven "various long-term disability plans associated with the fifty-seven specific individuals included in the current class" and did not indicate that there are additional plans that include different plan language. Doc. 134 at 10. If ever there were a time to have mentioned such a fact, Aetna's motion for reconsideration would have been an appropriate moment, when Aetna could have—at a minimum—sought clarification as to whether individuals with those plans had been certified as part of the class. Aetna's failure to mention this alleged fact until after the Court ruled not just on class certification, but also on Aetna's motion for reconsideration, is incomprehensible.

[78] Doc. 147 at 5. *Id.* at 4, 7.

analysis, such an alteration is irrelevant in the context of a Rule 23(f) petition. As the Ninth Circuit has explained, appellate courts "concern themselves not with the words used in the reconsideration order, but rather with the order's practical effect on the class" and, therefore, even when a "reconsideration order . . . contains a rationale for the certification decision not present in the original order," such an alteration is immaterial if the status quo remains unchanged.[79]

As discussed above, the Reconsideration Order did not alter the status quo, and any purported alterations in this Court's legal analysis do not provide a basis to conclude that Aetna's Rule 23(f) petition is timely.

Finally, even if the Reconsideration Order altered the status quo, Aetna runs into an additional hurdle to its appeal: it does not appear that Aetna actually challenges the Reconsideration Order, despite its occasional pro forma mention of the Reconsideration Order and its conclusions. Rather, Aetna contests that the class should have been certified at all—meaning that the true aim of its appeal is the Certification Order, not the Reconsideration Order.[80] Aetna argues that the logic of the Court's initial decision certifying the class was clearly erroneous, and that the entire class must be decertified.[81]

---

[79] *Walker*, 953 F.3d at 636.
[80] *See Aetna Life Ins. Co. v. Wolff*, No. 22-8056, ECF No. 1-1, Petition for Leave to Appeal (3d Cir. Dec. 6, 2022).
[81] *Id.* at 17-23.

As the Sixth Circuit has discussed, such an appeal—where the appellant's real target is the initial certification order rather than a later order from which the appellant purports to timely appeal—constitutes an improper attempt to circumvent the Rule 23(f) time limitations. In the case of *In re FSL Management, LLC*, the Sixth Circuit was confronted with an appeal wherein the appellant did not "challenge the redefined class on appeal" but, instead, "contest[ed] 'the *initial* grant of class certification on grounds derived from developments in the litigation since that grant.'"[82] While the Sixth Circuit acknowledged that intervening changes in case law may result in the decertification of the class, it held that it could not entertain the appeal, as "under Rule 23(f), Defendants may *appeal* only orders granting or denying class certification, and they present us with none."[83]

The same result seems likely here. Although Aetna pays lip service to the notion that it appeals the Reconsideration Order, the true aim of its appeal is the Certification Order itself, and it appears likely that the Third Circuit will refuse to endorse Aetna's attempted runaround of Rule 23(f)'s limitations period. For those reasons, the Court finds it likely that Aetna's appeal will fail on procedural grounds, which weighs heavily against granting its motion to stay these proceedings.

---

[82] *In re FSL Mgmt., LLC*, 2015 WL 12843232, at *1 (quoting *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1076 (7th Cir. 2014)).

[83] *Id.*

### 2. Merits of Aetna's Appeal

Turning to the question of whether Aetna has made a "strong showing" of likelihood of success on the merits of its appeal,[84] the Court concludes that it has not. This Court has twice considered Aetna's arguments and has twice rejected them.[85] Even if Aetna had made some showing of a likelihood of success, this Court cannot conclude that Aetna has made a *strong* showing of a likelihood of success.

And even if the Court concluded that the issues presented by Aetna on appeal are sufficiently close to merit a stay, as discussed above, it is highly likely that the Third Circuit will find that the appeal itself is untimely. In light of that finding, even if there were substantial merit to Aetna's arguments on appeal, given that those merits are unlikely to even be placed before the Third Circuit, the Court cannot determine that a stay is warranted based on any likelihood of success.

### B. Whether Aetna Will be Irreparably Harmed Absent a Stay

Turning to the remaining critical factor, whether Aetna will be irreparably harmed absent a stay, the Court concludes that Aetna has again failed to satisfy its burden. Aetna's only purported irreparable injury would result because the proposed form of class notice describes allegations that Aetna engaged in wrongdoing and violated federal law.[86] However, these are allegations only, and it is difficult to conceive of how a party may be irreparably harmed by mere allegations. This is

---

[84]  *Nken*, 556 U.S. at 434.
[85]  Docs. 126, 141.
[86]  Doc. 145 at 8-9.

particularly true given that this Court's docket is publicly available, and anyone in the country may readily access the complaint in this matter—a complaint that levies more substantial accusations against Aetna than those noted in the class notice— even without having received a class notice. Consequently, the Court finds that Aetna has failed to demonstrate that it would be irreparably harmed absent a stay, and this factor militates against granting Aetna's motion.

### C.     Whether a Stay will Substantially Injure Other Interested Parties

Next, the Court concludes that a stay is not likely to substantially injure other interested parties. Although there may be some prejudice and financial injury to potential class members should a stay be imposed, there is no evidence that any such injury would be "substantial." Consequently, this factor weighs in favor of granting a stay in this matter.

### D.     Where the Public Interest Lies

Finally, the Court turns to the question of where the public interest lies. Aetna argues that the public interest lies in favor of a stay for two reasons: failing to stay the matter would create confusion among current class members, and staying the matter will conserve both judicial and party resources.[87]

As to Aetna's first assertion, failing to stay this matter is unlikely to result in any unique confusion. First, Aetna's argument assumes that the Third Circuit would

---

[87]   Doc. 145 at 6-8.

vacate the Certification Order which, as discussed above, is far from a certainty. Second, Aetna's argument ignores that "a district court is free to reconsider its class certification ruling as often as necessary before judgment."[88] Given that a class certification order may be revisited at any time, there is nothing unique in the possibility that the class may be decertified, thereby removing members from the class who had already received a class notice. Consequently, the mere possibility that such action would occur on appeal—and would confuse potential class members—cannot warrant a stay.

Similarly, while it is true that party and judicial resources would be conserved by a stay should the Third Circuit order that this Court decertify the class, Aetna again presumes that it will succeed on appeal. In the event that an appeal is unsuccessful, no resources would be conserved by a stay.

Aetna has therefore failed to demonstrate that any public interest would be served by a stay of these proceedings. To the contrary, it is well understood that the public has a strong "interest in speedy resolution of legal disputes."[89] The Court therefore concludes that the public interest lies in favor of a quick resolution of this matter, which again weighs against granting Aetna's motion to stay.

---

[88]   *McNamara v. Felderhof*, 410 F.3d 277, 280 (5th Cir. 2005).
[89]   *Liebhart v. SPX Corp.*, 917 F.3d 952, 965 (7th Cir. 2019) (quoting *Perrian v. O'Grady*, 958 F.2d 192, 194-95 (7th Cir. 1992)).

## III.   CONCLUSION

Three of the four factors that must be considered in determining whether to grant a stay—including the two most critical factors—weigh against granting Aetna's motion to stay these proceedings pending its Rule 23(f) appeal. Consequently, Aetna's motion to stay will be denied.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge