## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOANNE WOLFF, individually and on behalf of a Class of Similarly Situated Individuals, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 4:19-cv-01596-MWB (Honorable Matthew W. Brann) |
| AETNA LIFE INSURANCE COMPANY, | |
| Defendant. | |

## DEFENDANT'S BRIEF REGARDING CLASS SCOPE

## I.     INTRODUCTION.

Pursuant to the Court's September 10, 2024 Order, Defendant Aetna Life Insurance Company ("Aetna") submits this Brief regarding the scope of the class as certified by the Court on May 25, 2022 and November 22, 2022, resulting in a class of 52-57 persons, and Plaintiff's attempt to now, without motion, both change the composition and increase the size of the class to 142 persons.[1]

Months after the Court initially certified the class, Plaintiff shifted her theory as to how the class should be defined. This new theory was never presented to the

---

[1] The May 25, 2022 class certification decision resulted in a class of 57 persons, which Aetna identified in the Class List produced to Plaintiff on June 27, 2022. (Exhibit "1," hereto, redacted 6/27/22 Class List.) However, 5 persons on that Class List fall outside of the class time-period established by the subsequent November 22, 2022 class certification decision, resulting in a class of 52 persons.

Court until the September 9, 2024 status conference.[2] Plaintiff's new proposed class of 142 persons would <u>exclude</u> at least 18 persons the Court included in certifying the class and <u>add</u> 108 new persons, some with plans that have never before been submitted to the record or considered by the Court.

Aetna respectfully requests that the Court confirm that the class certified in May and November of 2022 has not changed and consists of the 52 persons identified by Aetna on June 27, 2022, as modified by the November 22, 2022 class certification order. To the extent the Court is inclined to grant Plaintiff's request to alter the scope of the class, Aetna respectfully requests argument.

## II.    <u>ARGUMENT</u>.

### A. <u>Plaintiff's Attempt to Alter the Composition and Size of the Class</u>.

This dispute has arisen because Plaintiff has repeatedly shifted her theory of the class composition, outside of required class action procedures, settling on her new position two years after the Court initially certified the class.

Plaintiff first moved for class certification on August 30, 2021. (ECF 108.) At that time, this case had been pending for nearly two years with ample time for class discovery. Indeed, instead of filing her motion for class certification by the March

_____

[2] As discussed below, Plaintiff's argument for pursuing this new class, purported discovery deficiencies from three years ago, was rejected earlier this year when Plaintiff's counsel attempted to make the same argument in a different case in this Court. *See Sayles v. Allstate Ins. Co.*, 2024 U.S. Dist. LEXIS 41604 (M.D. Pa., March 8, 2024).

1, 2021 deadline initially established by the Court, Plaintiff filed a so-called "Motion for Class Certification" that in reality only requested additional time for discovery before actually moving for class certification. (ECF 68.) That request was granted and the discovery deadline was ultimately extended to August 31, 2021. (ECF 71; ECF 101.)

When Plaintiff moved for class certification on August 30, 2021, Plaintiff only attached a single plan to her briefing, which was Plaintiff's own Bank of America long-term disability plan (the "BOA Plan"). (ECF 108-2, at Pages 2-34 of 51.) Nevertheless, Plaintiff attempted to sweep into the class other plans sponsored by other employers without actually submitting those plans to the record. Instead, Plaintiff attached the sworn Declaration of one of her attorneys, which represented that Plaintiff's BOA Plan and other plans previously produced in class discovery were "a standard form policy" with the same operative language. (ECF 108-1, at Page 2 of 8.) According to Plaintiff's counsel's Declaration:

> Defendant's document responses contained hundreds of documents which confirmed that Plaintiff and other class members were insured under <u>a standard form policy bearing form number GR-9N which does not include the additional personal injury recovery term</u> in the "Other Income Benefits" section.

(ECF 108-1, at Page 2 of 8, Dec. of D. Smith) (emphasis added.)

There were two problems with this Declaration. First, it was not true. The "GR-9N" notation on several plans in the class production was not an indication of

"a standard form policy," nor was any record citation provided to in any way support or back up this bald assertion by Plaintiff's counsel. Second, and significant for purposes of the current dispute, Plaintiff did not identify what "additional personal injury recovery term" she vaguely claimed was absent from the BOA Plan and other plans.

In its opposition to class certification, Aetna attached several plans other than Plaintiff's BOA Plan that had the "GR-9N" notation to demonstrate that those plans were not "a standard form policy" and instead contained substantive differences in the plans' "Other Income Benefits" language despite the notation. (ECF 112-1 (Ex. N); 112-2 (Ex. O); 112-3 (Ex. P); 112-4 (Ex. Q); 112-5 (Ex. R); 112-6 (Ex. S); and 112-7 (Ex. T).) Importantly, four of those plans, Exhibits P, Q, R and S, contained "Other Income Benefits" language with one or more of the following provisions, or their functional equivalent:

- "Disability payments from under insured motorist (UIM), uninsured motorist coverage (UM), liability insurance or other sources for a disability caused by a third party. 'Other sources' include (but are not limited to) damages or a settlement received though legal action."

- "Disability payments which result from the act or omission of any person whose action caused your disability. These payments may be from insurance or other sources."

- "Liability insurance or other sources for a disability caused by a third party. 'Other sources' include (but are

not limited to) damages or a settlement received through legal action."

(ECF 112-3 (Ex. P), at AETNA002845; 112-4 (Ex. Q), at AETNA002941; 112-5 (Ex. R), at AETNA004643; and 112-6 (Ex. S), at AETNA005432.)

In her reply, Plaintiff shifted her theory. Plaintiff then disclaimed that the notation "GR-9N" was indicative of the "standard form policy" "which does not include the additional personal injury recovery term," but nevertheless maintained that her BOA Plan was "a standard form policy" that excluded the "personal injury recovery term":

> …. Plaintiff and other class members were insured under a <u>standard form policy</u> which <u>does not include the personal injury recovery term</u> in the "Other Income Benefits" section.
>
> Plaintiff's argument was not that the designation "GR-9N" indicates that all policies with GR-9N do not include personal injury recoveries as "Other Income Benefits." Rather, Plaintiff's argument was that Aetna had alternative standard LTD policy forms and one of the standard form versions, like Plaintiff's policy, <u>did not contain personal injury recoveries</u> as "Other Income Benefits."

(ECF 117, at Pages 10-11 of 26) (emphasis added.)

Aside from disclaiming her prior sworn Declaration, Plaintiff again did not provide any record support for her assertions, nor did she identify what "personal injury recovery term" she vaguely claimed was absent from the BOA Plan and other plans. And, even more significantly, Plaintiff never stated in her reply that any of

the plans attached to Aetna's opposition <u>did</u> contain what Plaintiff claimed is the "personal injury recovery term."

On May 25, 2022, the Court granted class certification and certified a class of "53 individuals," concluding that "any potential class members beyond the 53 specifically identified individuals cannot support a finding of numerosity." (ECF 126, at p.6-7.) The "53 specifically identified individuals" were those included in the class document production prior to Plaintiff moving for class certification.[3] In doing so, the Court referenced the plans attached to Aetna's opposition and concluded that the "Other Income Benefits" language was "substantially similar" for purposes of class certification. (ECF 126, at p.8 and n.38.) The Court later confirmed that conclusion in its November 22, 2022 decision, and specifically analyzed the language contained in the plans attached to Aetna's opposition as Exhibits P, Q, R and S, as referenced above, explicitly including persons with those plans in the class. (ECF 141, at p.10-15.)

In the following months, Plaintiff began shifting positions again while making conflicting statements to Defendant, this Court and the Third Circuit Court of Appeals. As discussed in more detail below, Plaintiff would alter what plan language she identified as the "personal injury recovery term" that was absent from the BOA

---

[3] As discussed below, the number of individuals identified in the class document production was actually 57.

Plan and other plans, but make conflicting statements to this Court and the Third Circuit that directly impacted both courts' analyses of the class certification issues.

Pursuant to the Court's May 25, 2022 class certification order (ECF 127), on June 27, 2022, Aetna produced to Plaintiff a Class List consisting of 57 persons. (Exhibit "1," hereto, redacted 6/27/22 Class List.) Because the Court had concluded that all plans in the record were "substantially similar" and included in the class, the Class List included all persons whose overpayment recovery files had been produced by Aetna to Plaintiff in class discovery prior to Plaintiff moving for class certification. The Class List included persons with the plans attached to Aetna's opposition as Exhibits P, Q, R and S, each of which included the above-referenced "Other Income Benefits" language.

On August 17, 2022, Aetna moved for reconsideration of the class certification decision. (ECF 133.) In opposing Aetna's motion, Plaintiff argued that the Court had correctly identified the class, and specifically argued that the Court had correctly included in the class one of the plans submitted to the record by Aetna:

> In arguing that this Court left factual issues unresolved, Defendant quotes this Court's opinion wherein it stated that **one** plan could encompass personal injury recoveries, but that the Court did not have enough information before it to determine whether any of the 53 individuals identified in the class were covered under the plan. Even then, Defendant omits the Court's footnote, wherein it stated:
>
> > "It is highly unlikely that such an interpretation is warranted, as interpreting the language in such a

> manner would permit Aetna to recover from funds
> paid to any individual for any reason."

> Mem. Op. at *9, fn. 41.

(ECF 139, at p.13) (emphasis in original.) The "one" plan Plaintiff referenced, and

the subject of the Court's footnote 41, was the plan attached to Aetna's opposition

as Exhibit P. (ECF 112-3, at AETNA002845.) That plan contained the following

language in the section titled "Other Income Benefits":

> ▪ Disability payments from under insured motorist
>   (UIM), uninsured motorist coverage (UM), liability
>   insurance or other sources for a disability caused by a
>   third party. "Other sources" include (but are not limited
>   to) damages or a settlement received though legal
>   action.

> ▪ Disability payments from insurance or other sources
>   for a disability caused by a third party. "Other sources"
>   include (but are not limited to) damages or a settlement
>   received though legal action.

(Id.)

In the meantime, however, the parties had been exchanging correspondence

regarding the composition of the Class List. (*See* Exhibits "2" and "3," hereto.)

During this exchange, on October 25, 2022, Plaintiff once again shifted her position,

now claiming that plans with a specific provision should not be included in the class:

> Although Defendants' position lacks merit, to moot the
> issue for the purposes of this undertaking so that we can
> try to advance, I pose the question with a specific policy
> reference:

d) Does the list include every person from whom defendant received reimbursement under disability policies similar to that in Wolff which do not contain in the "Other Income Benefits" the following:

<u>Disability payments from under insured motorist coverage (UIM), uninsured motorist coverage (UM), liability insurance or other sources for a disability caused by a third party. "Other sources" include (but are not limited to) damages or a settlement received through legal action.</u>

Accordingly, defendants are required to provide the identify [sic], information and documentation for all persons insured under plans like Wolff who do not contain the language cited immediately above in the "Other Income Benefits" sections.

(Exhibit "2," hereto, 10/25/22 Ltr., at p.2) (emphasis added.) Plaintiff's counsel repeated this new position two additional times in the October 25, 2022 letter. (Ex. "2," at p.3.)

Plaintiff's shift in position was remarkable for several reasons: (1) Plaintiff had never before identified what she now claimed was the "personal injury recovery term" absent from the BOA Plan and other plans, (2) Plaintiff had failed to advise the Court in her class certification reply brief that the plans attached as Exhibits P, Q, R and S to Aetna's opposition <u>included this exact and/or functionally equivalent language</u>, and (3) to the contrary, Plaintiff had represented to the Court just seven weeks earlier that a plan containing this exact language was <u>correctly</u> included in the class, (ECF 139, at p.13). In response to that letter, Aetna pointed out that Plaintiff's

shift in position was entirely new and would amount to an amended class. (Exhibit "3," hereto, 11/1/22 Ltr.)

On November 22, 2022, the Court ruled on Aetna's motion for reconsideration. (ECF 141.) In doing so, the Court specifically analyzed the language in the plans attached to Aetna's opposition as Exhibits P, Q, R and S and concluded such language was included in the class as not referencing "personal injury recoveries." (ECF 141, at p.13-15 and n.68.) Of course, Plaintiff had never advised the Court of her shifting position or that she had a month earlier conceded such language was a "personal injury recovery term" that should in fact be <u>excluded</u> from the class.

On August 9, 2023, the Third Circuit Court of Appeals denied Aetna's Petition for Permission to Appeal from the November 22, 2022 class certification order. The Third Circuit concluded that Aetna's petition was untimely because the November 22, 2022 Order "made no material change to the Class Certification Order entered on May 25, 2022." *Wolff v. Aetna Life Ins. Co.*, 77 F.4th 164, 174 (3d Cir. 2023). In reaching that conclusion, the Third Circuit relied on Plaintiff's representation that "the District Court's 'November 22 [Reconsideration Order] did not change the status quo of class certification.'" (*Id*., at 171). Of course, Plaintiff failed to advise the Third Circuit that she had shifted positions and that her new position would

exclude persons who had explicitly been included in the class and would add persons to the class beyond those contemplated by this Court at the time it certified the class.

Indeed, shortly after the Third Circuit's decision, the parties agreed to discuss, for settlement purposes only, a class based <u>not</u> on the class previously certified by the Court, but based on Plaintiff's new conception of the class definition and the "Other Income Benefits" language disclosed for the first time in Plaintiff's October 25, 2022 letter:

> To further facilitate our settlement discussions, we have identified a potential class of persons for settlement purposes based on the absence of "Other Income Benefits" language that you previously identified. This class encompasses 142 persons from whom overpayment recoveries were made, on or after August 8, 2013, and who had received benefits under Aetna long term disability plans that did not include any of the following language in the section of the plan titled "Other Income Benefits":
>
> - "Disability payments from under insured motorist (UIM), uninsured motorist coverage (UM), liability insurance or other sources for a disability caused by a third party. 'Other sources' include (but are not limited to) damages or a settlement received though legal action."
>
> - "Disability payments which result from the act or omission of any person whose action caused your disability. These payments may be from insurance or other sources."
>
> - "Liability insurance or other sources for a disability caused by a third party. 'Other sources' include (but are not limited to) damages or a settlement received through legal action."

11

(Exhibit "4," hereto, 9/27/23 Ltr.)[4]

As counsel for Plaintiff confirmed during the September 9, 2024 status conference, this is the class of 142 persons that Plaintiff is now attempting to pursue. This is <u>not</u> the class certified by the Court on May 25, 2022 and November 22, 2022. Numerically, Plaintiff's new proposed class of 142 persons would <u>exclude</u> at least 18 persons the Court included in certifying the class and <u>add</u> 108 new persons, including some with plans that have never before been submitted to the record or considered by the Court. Plaintiff's new class would: (1) alter the definition of the class, (2) exclude persons from the class that the Court had explicitly included in the class, (3) include persons in the class who had not previously been included in the class, (4) add approximately 40% more class members than the class certified by the Court, and (5) add additional affirmative defense issues that would need to be addressed through mini-trials, sub-classes or other means.

For example one plan in Plaintiff's new proposed class that does not include the above "Other Income Benefits" language, instead gives Aetna  stronger recovery rights by permitting Aetna to subrogate recoveries made by beneficiaries against third parties:

---

[4] Although the September 27, 2023 letter was exchanged in furtherance of settlement discussions subject to Fed.R.E. 408, the dispute at issue here arises from Plaintiff's attempt to herself use the information disclosed in this Rule 408 letter to advocate for her new expanded class of 142 persons.

**Recovery of Benefits Paid (Subrogation)**

As a condition to paying or providing any disability benefits under this Plan, the Plan shall be subrogated (has the right to pursue) all rights of recovery you have against any third party with respect to such disability, to the extent of benefits provided. The term "third party" includes any party possibly responsible for your injuries or illnesses, or your no-fault automobile insurance coverage.

(Exhibit "5," hereto, at p.11.)

As another example, a different plan in Plaintiff's new proposed class omits the above "Other Income Benefits" language but includes "automobile no-fault" language different than that considered by the Court in its class certification decisions. (Exhibit "6," hereto, at p.9-10.) In rejecting Aetna's argument that "automobile no-fault" language encompassed certain "personal injury recoveries," the Court did so at least in part because, in the plans considered by the Court, "that specific language …. is explicitly listed as examples for the paragraph that grants Aetna the right to recover funds paid as a result of '[d]isability, retirement or unemployment benefits required or provided for by government law.'" (ECF 141, at p.13.) In the plan attached as Exhibit "6," however, Aetna's right to recover "automobile no-fault wage replacement" benefits is unconnected to the qualifier identified by the Court. (Ex. "6," at p.9-10.)

Consequently, in addition to excluding persons the Court already included in the class, accepting Plaintiff's new proposed class would require new plan analyses

and the addition of more class members. That would result in both a numerical increase and a substantive change in the currently certified class.

Plaintiff's shifting positions, the latest only being revealed to the Court on September 9, 2024, do not justify altering the composition and increasing the size of the class at this late stage. Doing so would amount to a material change and certification of a new, larger class.

### B. Plaintiff's Discovery Argument is a Red Herring.

During the September 9, 2024 status conference, Plaintiff's counsel argued that Plaintiff was not actually attempting to increase the size of the class from 57 to 142, but that Aetna's purportedly deficient document production prevented Plaintiff from identifying the class of 142. That argument is a red herring for several reasons: (1) the Court already considered this argument before certifying the class of "53 specifically identified individuals," (2) Aetna produced all documents ordered by the Court, and (3) because Plaintiff never revealed her latest position on the contours of the class until after discovery and after the class was certified, discovery could not have identified the new class of 142 for which Plaintiff is now advocating.

### 1. The Court Considered this Argument Before Certifying the Current Class.

Plaintiff's position that Aetna's class document production was somehow deficient (it is not) is not new. Rather, Plaintiff made and the Court considered the same argument in Plaintiff's initial motion for class certification. Specifically,

Plaintiff argued that the class was comprised of "at least 53 putative class members," but that "Defendant has not provided discovery regarding individuals outside of Pennsylvania covered by the same standard policy as Wolff as it did for individuals in Pennsylvania." (ECF 108, at Pages 16-17 of 26.) Despite Plaintiff's argument, the Court certified a class of "53 individuals," concluding that "any potential class members beyond the 53 specifically identified individuals cannot support a finding of numerosity." (ECF 126, at p.6-7.)

The Court's rejection of Plaintiff's discovery argument is consistent with case law in holding Plaintiff to her burden to establish the appropriateness of certifying a class. In *Sayles v. Allstate Ins. Co.*, 2024 U.S. Dist. LEXIS 41604 (M.D. Pa., March 8, 2024), Judge Mannion rejected this same argument by the same plaintiff's counsel in denying class certification. In doing so, the court concluded that a plaintiff cannot satisfy her burden in certifying a class by claiming deficient discovery responses after having failed to raise such purported deficiency within the class discovery period. *Id.*, at *4-6. The court explained:

> …. the plaintiff cites to Allstate's refusal to provide complete class related discovery responses as support for why Judge Carlson erred when he found that the class certification requirements were not met. While the plaintiff indicates that "[m]otions [for discovery] have been filed with the court", and she refers on occasion to Allstate's "outstanding" discovery responses, the window for additional class related discovery has closed.

> The plaintiff does not contend that it was anyone's burden
> but her own to show by a preponderance of the evidence
> that class certification was appropriate at the time she filed
> her motion to certify. Upon review of the record, the
> plaintiff had served Allstate with timely discovery
> requests. According to the plaintiff, Allstate did not
> provide adequate responses to those requests. Despite this,
> the plaintiff apparently did not follow up with Allstate for
> additional responses, nor did she seek assistance from the
> court in that regard. Instead, the plaintiff filed the instant
> motion to certify the class….. Thus, to the extent that the
> plaintiff relies in any way on the class discovery issue to
> support her objections to Judge Carlson's report, the
> plaintiff's objections are overruled.

*Id*.

Similarly, here, Plaintiff should not be permitted to now resurrect this meritless argument, three years later, to alter the composition and increase the size of the class.

## 2. **Aetna Produced All Documents.**

Because Plaintiff's claims were initially based on both the BOA Plan language and Pennsylvania statutory law, Aetna's initial class document production encompassed BOA Plan members in Pennsylvania and members of other employer-sponsored plans in Pennsylvania. (ECF 100, p.2-4.) This resulted in a class document production that included numerous long-term disability plans sponsored by numerous different employers, with differing "Other Income Benefits" language (such as the plans at Exhibits P, Q, R and S to Aetna's opposition to class certification), but applicable to plan members all of whom were in Pennsylvania.

On July 15, 2021, in ruling on Plaintiff's motion to compel discovery, the Court ordered Aetna to produce additional class discovery. (ECF 100, 101.) Specifically, because Plaintiff's claims were based on both the BOA Plan language and Pennsylvania statutory law, the Court ordered Aetna to produce additional class documents related to "*any* plan participant who was issued <u>this specific policy</u>." (ECF 100, p.2-4) (italic emphasis in original, underline emphasis added.)

Consequently, Aetna produced documents related to recoveries made from BOA Plan members nationwide, i.e.- those issued the "specific policy" that Plaintiff had. The "Other Income Benefits" language of other plans covering class members in Pennsylvania differed from the BOA Plan such that those plans were not Plaintiff's "specific policy." For example, the plans attached as Exhibits P, Q, R and S to Aetna's opposition to class certification included the "disability" and "other sources" language quoted above, which the BOA Plan did not. Moreover, even plans that omitted that language as the BOA Plan did, such as the plans attached as Exhibits N, O and T to Aetna's class certification opposition, had differing "Other Income Benefits" language such that those plans also were not Plaintiff's "specific policy." (ECF 112-1, at AETNA005876; ECF 112-2, at AETNA003579; ECF 112-7, at AETNA004798.)[5] Indeed, Plaintiff relied on the specific BOA Plan "Other

---

[5] The plans attached as Exhibits N, O and T to Aetna's class certification opposition include "Automobile no-fault wage replacement benefits required by law" as "Other Income Benefits," which the BOA Plan does not. (ECF 112-1, at AETNA005876;

Income Benefits" language in her Second Amended Complaint in moving to compel the additional production, which language was distinct from the language in the plans attached to Aetna's opposition to class certification. (ECF 97, at Pages 4-7 of 13, quoting ¶37 of the Second Amended Compl.)

Plaintiff subsequently abandoned any claims based on Pennsylvania law, 75 Pa.C.S. §1720, and instead relied solely on the language in her BOA Plan. (ECF 108, p.1 n.1.) Consequently, the sole reason for Aetna's production of the non-BOA Plan documents, the Pennsylvania statutory law that Plaintiff originally claimed also prohibited Aetna's overpayment recoveries, was no longer at issue after the BOA Plan language became the sole basis for Plaintiff's claims. Therefore, Plaintiff is wrong in the first instance that Aetna's document production was deficient.

### 3. **The Additional Production Would Not Identify the Class of 142.**

The alleged deficiencies Plaintiff now alleges would not even identify the new class of 142 persons for which Plaintiff now advocates.

---

ECF 112-2, at AETNA003579; ECF 112-7, at AETNA004798.) Moreover, the plan attached as Exhibit T to Aetna's opposition to class certification also contained a description of "other income benefits" in the "Recovery of Overpayments" section of the plan that is different than that in the BOA Plan: "Examples of other income benefits referred to in the preceding paragraph are: …. Disability payments which result from the act or omission of any person whose action caused your disability." (ECF 112-7, at AETNA004805.)

Plaintiff argues that Aetna should have produced documents related to persons nationwide with the same non-BOA plans that had previously been produced out of Pennsylvania (which were only produced because of Plaintiff's now-abandoned Pennsylvania law claims). However, doing so would not have identified the new class of 142 because it would have included persons nationwide with the plans attached as Exhibits P, Q, R and S to Aetna's class certification opposition, whom are, by definition, <u>excluded</u> from the proposed settlement class of 142. (*See* Ex. "4.") Therefore, Plaintiff cannot equate her purported discovery deficiency argument with her new proposed class of 142 persons. Rather, that new proposed class, which was discussed among the parties only for purposes of settlement, only came into the parties' contemplation long after class discovery had ended, long after the Court certified the class, and long after Plaintiff had represented to this Court and the Third Circuit that the class remained unchanged.

Moreover, Plaintiff cannot argue that Aetna should have produced the non-BOA Plan members nationwide after the Court included the non-BOA Pennsylvania-based plans in its May 25, 2022 and November 22, 2022 class certification decisions. By that time, Plaintiff was already shifting positions and attempting to alter the definition of the class, seeking to exclude persons who the Court had included, and to include additional persons.

Plaintiff's discovery dispute is, therefore, a red herring and does not change the fact that Plaintiff is advocating for a materially changed and larger class.

## III.    CONCLUSION.

The new class of 142 persons that Plaintiff is now demanding, which would substantively alter the scope of the current class, was never before presented to the Court and was revealed to Aetna for the first time only after the class was initially certified. Plaintiff's argument that alleged discovery deficiencies prevented discovery earlier is factually meritless, and even if true would only serve to highlight plaintiff's own failure to carry her burden prior to the close of discovery. Therefore, Aetna respectfully requests that the Court confirm that the class certified by the Court on May 25, 2022 and November 22, 2022 has not changed and consists of the 52 persons identified by Aetna on June 27, 2022, as altered by the Court's November 22, 2022 Order. Additionally, Aetna requests that the Court order Plaintiff to send the approved Class Notice.

To the extent the Court is inclined to grant Plaintiff's request to alter the scope of the class, Aetna respectfully requests argument.

Respectfully submitted,

/s/ Stewart J. Greenleaf, Jr.

Elliott Greenleaf, P.C.                    MARK J. SCHWEMLER
                                           JOHN P. ELLIOTT
                                           STEWART J. GREENLEAF, JR.
                                           925 Harvest Drive
                                           Blue Bell, PA  19422
                                           215-977-1000
                                           mjs@elliottgreenleaf.com
                                           jpe@elliottgreenleaf.com
DATED: October 11, 2024                    sjgjr@elliottgreenleaf.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOANNE WOLFF, individually and on behalf of a Class of Similarly Situated Individuals, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 4:19-cv-01596-MWB (Honorable Matthew W. Brann) |
| AETNA LIFE INSURANCE COMPANY, | |
| Defendant. | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on this date, I caused a true and correct copy of the foregoing to be served, via the Court's electronic filing and service system, on all counsel of record.

*/s/ Stewart J. Greenleaf Jr.*
STEWART J. GREENLEAF JR.

DATED: October 11, 2024